UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIDNEY GORDON,

Plaintiffs,

- v. -

SONAR CAPITAL MANAGEMENT LLC, NOAH FREEMAN, NEIL DRUKER, PRIMARY GLOBAL RESEARCH, LLC, THE JOHN DOE HEDGE FUND(S), and JOHN AND JANE DOES 1 THROUGH 100,

Defendants.

11-cv-9665 (JSR)

**MEMORANDUM OF LAW OF DEFENDANT NOAH FREEMAN IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

DECHERT LLP
Benjamin E. Rosenberg
benjamin.rosenberg@dechert.com
David S. Hoffner
david.hoffner@dechert.com
Jason O. Billy
jason.billy@dechert.com
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
*Attorneys for Defendant Noah Freeman*

# Table of Contents

Table of Authorities ..................... ii

Preliminary Statement ..................... 1

Statement of Facts ..................... 3

Argument ..................... 5

POINT I
THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION BY FREEMAN OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER ..................... 5

A. The Complaint Fails To Allege a Violation of Section 10(b) and Rule 10b-5 ..................... 5

B. Plaintiffs' Section 10(b) and Rule 10b-5 Claim Is Precluded by Section 20A of the Exchange Act ..................... 6

POINT II
COUNT II ALLEGING A VIOLATION BY FREEMAN OF SECTION 20A OF THE EXCHANGE ACT SHOULD BE DISMISSED ..................... 10

POINT III
COUNT III ALLEGING A VIOLATION BY FREEMAN OF SECTION 20(a) OF THE EXCHANGE ACT SHOULD BE DISMISSED ..................... 12

Conclusion ..................... 14

## Table of Authorities

**CASES**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y. 2008)....................13

*Banks v. Yokemick*,
214 F. Supp. 2d 401 (S.D.N.Y. 2002)....................13

*Brodzinsky v. FrontPoint Partner LLC*,
11 Civ. 10, 2012 WL 1468507 (D. Conn. Apr. 26, 2012)....................9, 10, 11

*Cohen v. Stevanovich*,
722 F. Supp. 2d 416 (S.D.N.Y. 2010)....................13, 14

*Elkind v. Liggett & Myers, Inc.*,
635 F.2d 156 (2d Cir. 1980)....................9

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................12

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
398 F. Supp. 2d 244 (S.D.N.Y. 2005)....................12

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................10

*In re Motel 6 Sec. Litig.*,
161 F. Supp. 2d 227 (S.D.N.Y. 2001)....................9

*In re Pfizer Inc. Sec. Litig.*,
584 F. Supp. 2d 621 (S.D.N.Y. 2008)....................11

*In re Stratosphere Corp. Sec. Litig.*,
1 F. Supp. 2d 1096 (D. Nev. 1998)....................8

*In re Take–Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011)....................6

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)....................8

*Moss v. Morgan Stanley Inc.*,
719 F.2d 5 (2d Cir. 1983)....................7

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,
940 F. Supp. 1101 (W.D. Mich. 1996) ....................................................8

*S.E.C. v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)....................................................12, 13

*S.E.C. v. Longoria, et al.*,
No. 11-cv-753 (JSR) (S.D.N.Y. Dec. 23, 2011) ....................................................9

*S.E.C. v. McCaskey*,
No. 98 Civ. 6153, 2002 WL 850001 (S.D.N.Y. Mar. 26, 2002) ....................................................11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlantic*,
552 U.S. 148 (2008)....................................................6

*T. Rowe Price New Horizons Fund, Inc. v. Preletz*,
749 F. Supp. 705 (D. Md. 1990)....................................................7, 8, 9

**STATUTES AND RULES**

15 U.S.C. § 78j.................................................... passim

15 U.S.C. § 78t.................................................... passim

15 U.S.C. § 78t-1 .................................................... passim

15 U.S.C. § 78t-1(a)....................................................1, 6, 10

15 U.S.C. § 78t-1(b)....................................................4, 7, 8, 9

15 U.S.C. § 78t-1(c)....................................................1, 6, 10

15 U.S.C. § 78t-1(d)....................................................8

17 C.F.R. 240.10b-5.................................................... passim

28 U.S.C. § 1658(b) ....................................................5

Fed. R. Civ. P. Rule 8 ....................................................13

Fed. R. Civ. P. Rule 9(b)....................................................10

Fed. R. Civ. P. Rule 12(b)(6) ....................................................1

Mass. Gen. Laws ch. 109A §§ 5, 6 ....................................................1

**OTHER AUTHORITIES**

H.R. Rep. No. 100-910 (1988), 1988 U.S.C.C.A.N. 6043 ....................................................7

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Noah Freeman ("Freeman"), by his undersigned counsel, Dechert LLP, respectfully submits this memorandum of law in support of his motion to dismiss the Amended Class Action Complaint in the above-captioned action (the "Complaint" or "Compl.").

**Preliminary Statement**

Plaintiffs Sidney Gordon ("Gordon") and Jeffrey Tauber ("Tauber") (collectively with Gordon, "Lead Plaintiffs") commenced this action purportedly on behalf of a class of all persons and entities who sold shares of Sigma Designs, Inc. ("Sigma" or the "Company") from July 13, 2007, through November 28, 2007. Compl. ¶ 82.

The Complaint alleges that Defendant Sonar Capital Management LLC ("Sonar") wrongfully purchased the publicly-traded securities of Sigma while in the possession of material non-public information regarding the Company. It further alleges that, as a result, Lead Plaintiffs and the other putative class members who, "contemporaneously" with Sonar's purchases, sold shares of Sigma were defrauded by selling such shares at an allegedly deflated price. Lead Plaintiffs, on behalf of themselves and all others similarly situated, seek an award of damages from (a) Sonar, (b) certain "John Doe Hedge Funds" affiliated with Sonar, (c) Neil Druker, Sonar's principal, (d) Freeman, a former Sonar employee, and (e) Primary Global Research LLC, pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j ("Section 10(b)") and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5 (Count I), Section 20A of the Exchange Act, 15 U.S.C. § 78t-1(a, c) (Count II), and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t (Count III).

In addition, the Complaint asserts state law claims (Count IV – Violation of Mass. Gen. Laws Ch. 109A §§ 5, 6; Count V – Unjust Enrichment) against certain former investors in the John Doe Hedge Funds (named as John and Jane Does 1 Through 100) (the "Investor

Defendants") in an effort to compel such investors to return to the putative Class any redemption distributions or payments they received from the John Doe Hedge Funds attributable to unlawful profits from alleged insider trading.

As detailed below, the Complaint fails adequately to state a claim against Freeman pursuant to Section 10(b) and Rule 10b-5. Notably, the Complaint does not and cannot allege that Freeman himself traded Sonar stock while in the possession of material non-public information. To the contrary, Lead Plaintiffs admit that all of the allegedly improper trades were made on behalf of the John Doe Hedge Funds and that Freeman merely facilitated such trading by providing Sonar with inside information regarding Sigma. Compl. ¶¶ 17, 41-45. Such conduct, at most, constitutes aiding and abetting a violation of Section 10(b), a claim as to which no private right of action exists. Count I of the Complaint should therefore be dismissed. *See* Point IA *infra*.

Even if, however, the Complaint could be deemed adequately to have alleged a primary violation by Freeman of Section 10(b) and Rule 10b-5, Count I should nevertheless still be dismissed as duplicative and/or preempted by the Complaint's assertion of a claim pursuant to Section 20A of the Exchange Act. Section 20A was enacted by Congress for the express purpose of providing a plaintiff who traded at roughly the same time as an insider trader (the "contemporaneous trader") with a remedy. Permitting the assertion of a separate stand-alone Section 10(b) claim by an alleged contemporaneous trader based solely on insider trading would improperly allow Lead Plaintiffs to do an end-run around the unique "limitations on liability" set forth in Section 20A(b)(1)-(2). *See* Point IB *infra*.

Lead Plaintiffs' claim pursuant to Section 20A also fails to state a claim and should be dismissed. Courts in this Circuit have held that, in order to constitute a "contemporaneous

trader," and thus have standing to assert a Section 20A claim, a plaintiff must have purchased shares of the relevant security within no more than five to seven days of the transactions by the alleged insider trader. Lead Plaintiffs have failed to meet this pleading burden. *See* Point II *infra*.

Finally, Count III, which alleges that Freeman is liable as an alleged "control person" of Sonar pursuant to Section 20(a) of the Exchange Act, should also be dismissed. Lead Plaintiffs admit that Freeman was a mere employee of Sonar and that he had no trading authority whatsoever. Indeed, the Complaint explicitly acknowledges that all decisions by Sonar as to whether to buy or sell securities were made exclusively by Neil Druker, Sonar's CEO and majority owner. In light of these allegations, the Complaint fails to plead adequately that Freeman was a "control person" of Sonar. Count III should therefore be dismissed. *See* Point III *infra*.

**Statement of Facts**

Plaintiff Sidney Gordon, a resident of Pennsylvania, alleges that, on September 28, 2007, he sold 500 shares of the common stock of Sigma. Compl. ¶ 10. Plaintiff Jeffrey Tauber, a resident of California, alleges that he collectively sold 47,400 shares of the common stock of Sigma on July 30, 2007, August 16, 2007, October 25, 2007 and November 15, 2007. Compl. ¶ 11.

Defendant Sonar, a limited liability corporation located in Boston, Massachusetts, is the investment manager of multiple hedge fund investment vehicles (the "Sonar Hedge Funds"). Compl. ¶ 13.

Defendant Neil Druker ("Druker"), at all relevant times, "was, and is, the Chief Executive Officer and primary manager of Sonar." Compl. ¶ 15. Druker is also "the founder of Sonar and owns a majority of the equity interests in Sonar." *Id*. Lead Plaintiffs acknowledge

that "all decisions as to whether the Sonar Hedge Funds should buy or sell securities were ultimately made by Druker, who was the only person at Sonar empowered to authorize securities transactions by the Sonar Hedge Funds." *Id.* ¶ 41; *see also id.* ¶¶ 42-43.

Defendant Freeman was a Managing Director of Sonar during the purported Class Period. Compl. ¶ 14. In February 2011, as a result of conduct arising out of his employment at Sonar, Freeman pled guilty before this Court to securities fraud and related criminal counts brought by the United States Attorney's Office. *Id.* ¶ 72.

Defendant Primary Global Research, LLC ("Primary Global") is a Delaware limited liability company headquartered in California. Compl. ¶ 16.

Defendants John Doe Hedge Funds are the subset of the Sonar Hedge Funds that Sonar allegedly caused to trade in Sigma stock while in the possession of inside information. Compl. ¶ 17. Defendants "John and Jane Does 1 through 100" are persons who invested in the John Doe Hedge Funds and who redeemed their equity interests in those funds or who received dividends or other disbursements from those funds after November 1, 2010. *Id.* ¶ 19.

The Complaint alleges that Druker and Freeman caused Sonar to pay Primary Global to recruit a disloyal Sigma employee to provide Sonar with material, non-public information regarding the Company and that, between July 13, 2007 and November 28, 2007, the John Doe Hedge Funds purchased shares of Sigma stock while in the possession of such "inside" information, obtaining realized and unrealized profits of approximately $13 million. Compl. ¶ 102.[1] The only days alleged in the Complaint on which any of the John Doe Hedge Funds is

---

[1] The Complaint also contains allegations with respect to allegedly unlawful trading by the Sonar Hedge Funds in Sigma stock in 2006. Compl. ¶ 51. Such trades are outside the Class Period and are not the subject of any substantive claim, but would, in any event, be barred by the applicable statute of limitations. *See* Section 20A(b)(4), 15 U.S.C. § 78t-

*(Continued . . .)*

alleged to have purchased Sonar stock are July 13, 2007, July 17, 2007 and September 18, 2007. Compl. ¶¶ 57, 59, 65.

The Complaint alleges, *inter alia*, that, as a result of such insider trading, Freeman is liable under Section 10(b) (Count I), Section 20A (Count II) and Section 20(a) (Count III) of the Exchange Act to Lead Plaintiffs and a putative class of other allegedly "contemporaneous traders" of the common stock of Sigma.

## **Argument**

## POINT I

## THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION BY FREEMAN OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10B-5 THEREUNDER

### A. The Complaint Fails To Allege a Violation of Section 10(b) and Rule 10b-5

Count I of the Complaint alleges that Freeman caused the Sonar Hedge Funds to purchase over one million shares of Sigma stock during the Class Period while in the possession of material, positive, inside, non-public information about Sigma. Compl. ¶¶ 89-92. According to Lead Plaintiffs, such conduct by Freeman constitutes a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. *Id.* ¶¶ 93-94.

The Complaint makes clear, however, that Freeman did nothing more than facilitate insider trading by the *Sonar Hedge Funds*. *See, e.g.*, Compl. ¶ 42 ("Freeman had the responsibility to obtain information about companies in which Sonar Hedge Funds owned stock or were considering purchasing stock and to determine whether to recommend to Druker that

---

*(. . . Continued)*

1(b)(4) ("No action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation."); 28 U.S.C. § 1658(b) (securities fraud complaint is timely if filed no more than 2 years after the discovery of the facts constituting the violation or 5 years after the violation).

Sonar Hedge Funds purchase or sell stock in those companies."); *id*. ¶ 43 ("The ultimate decisions that the John Doe Hedge Fund(s) should engage in the purchases (and sales) of Sigma stock described herein were made by Druker on behalf of Sonar"). Indeed, Freeman himself is not alleged to have purchased or sold a single share of Sigma.

As a result, the Complaint fails adequately to allege a Section 10(b) claim against Freeman. By allegedly providing his employer with inside information but not personally engaging in improper trades himself, Freeman merely aided and abetted Sonar's violation of Section 10(b), a claim as to which the Supreme Court of the United States has made clear no private right of action exists. *See Janus Capital Group, Inc. v. First Derivative Trader*s, 131 S. Ct. 2296, 2301-03 (2011) and *Stoneridge Inv. Partners, LLC v. Scientific-Atlantic*, 552 U.S. 148, 157-58 (2008). Count I as against Freeman should therefore be dismissed.

B. Plaintiffs' Section 10(b) and Rule 10b-5 Claim Is Precluded by Section 20A of the Exchange Act

Even if the Court were to conclude that a primary Section 10(b) violation has been stated as against Freeman, Count I should, in any event, be dismissed given the exclusive applicability here of Section 20A of the Exchange Act.

Significantly, Section 20A, which was enacted as part of the Insider Trading and Securities Fraud Enforcement Act of 1988 ("ITSFEA"), Pub. L. No. 100-704, 102 Stat. 4677, codified at 15 U.S.C. § 78t-1, provides "contemporaneous traders" with a specific remedy (subject to an extended five year statute of limitations) for the exact conduct as to which Freeman is alleged to have engaged. Specifically, ITSFEA amended the Exchange Act to provide "contemporaneous traders" with a private right of action making alleged "tippers," such as Freeman, who "communicat[ed] material, nonpublic information" to a contemporaneous insider trader, jointly and severally liable with the actual insider trader. 15 U.S.C. § 78t-1(a), (c).

In crafting such a unique right of action, however, Congress imposed an explicit limitation on liability, making clear that "[t]he total amount of damages imposed [in a private right of action based on contemporaneous trading] shall not exceed the profit gained or loss avoided in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b).

In creating a private right of action for contemporaneous traders, Congress was responding to rulings, in particular the decision of the Court of Appeals for the Second Circuit in *Moss v. Morgan Stanley Inc.*, 719 F.2d 5 (2d Cir. 1983), holding that a shareholder of a corporation has no implied right of action under Section 10(b) against an insider trader who owed no duty to the issuer and allegedly "misappropriated" the non-public information. *See* H.R. Rep. No. 100-910 at 26-27 (1988), 1988 U.S.C.C.A.N. 6043, 6063-64 ("the codification of a right of action for contemporaneous traders is specifically intended to overturn court cases which have precluded recovery for plaintiffs where the defendant's violation is premised upon the misappropriation theory. *See e.g., Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir. 1983)"; H.R. Rep. No. 100-910 at 38-39, 1988 U.S.CCA.N. at 6075-76 ("Subsection (a) of this Section would create a new Section 20A of the Exchange Act and provide express private rights… intended, in part, to overturn court cases which have precluded recovery by plaintiffs who were victims of misappropriation.").

In reliance on such legislative history, the District Court of Maryland in *T. Rowe Price New Horizons Fund, Inc. v. Preletz*, 749 F. Supp. 705, 709 (D. Md. 1990), concluded that, in creating an explicit Section 20A cause of action for contemporaneous traders, ITSFEA intended to preclude the assertion of a stand-alone Section 10(b) claim premised on the same trading. As

a result, the *Preletz* Court dismissed a Section 10(b) claim based on the same underlying trading that supported a Section 20A claim.[2]

In holding that Section 20A was not meant to preserve implied rights of action for contemporaneous traders under Section 10(b), the *Preletz* Court noted that allowing Section 10(b) and Section 20A claims to be pleaded together would be inconsistent as it would "undermine" the limitation on damages explicitly set forth in Section 20A(b), 749 F. Supp. at 710, which makes clear that the "total amount of damages imposed under [Section 20A] shall not exceed the profit gained or the loss avoided in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b). Accordingly, the Court held that, "[i]n keeping with the balance intended by Congress, Rule 10b-5 and § 20A cannot be pled alternatively in this case." 749 F. Supp. at 710. *See also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 (1991) (declining to apply the five-year statute of limitations in § 20A to all cases invoking § 10(b) holding that "[t]he language of § 20A makes clear that the 100th Congress sought to *alter* the remedies available in insider trading cases" but did not intend to alter those remedies in other cases") (emphasis added).[3]

The same result is warranted here. Allowing Lead Plaintiffs to assert a Section 10(b) claim seeking to recover from defendants the cumulative trading losses of the entire putative

---

2 Although the *Preletz* Court recognized that Section 20A(d) [15 U.S.C. § 78t-1(d)] provides that "[n]othing in this section shall be construed to limit or condition the right of any person to bring an action to enforce a requirement of [the Exchange Act] or the availability of any cause of action implied from a provision of [the Exchange Act]," the Court held that such language was "intended to preserve certain implied rights of action for persons *other than contemporaneous traders*, a category of plaintiff not addressed in § 20A." 749 F. Supp. at 709 (citing the House Committee Report) (emphasis added).

3 *But see, e.g., In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1121 (D. Nev. 1998) (allowing the pleading of Section 10(b) and Section 20A claims in the alternative); *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101 (W.D. Mich. 1996) (same).

Class would eviscerate ITSFEA's explicit limitations on liability and enable Lead Plaintiffs to do an end-run around Congressional intent.[4] Count I should therefore be dismissed.

Even if the Court concludes that a Section 10(b) claim may properly be asserted by a contemporaneous trader who did not directly trade with defendants, the "limitations on liability" set forth in Section 20A(b) should nevertheless be held applicable to such a claim. *See In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 233 (S.D.N.Y. 2001) (Keenan, J.) (implying that Section 20A's damage limitation provision applies to any Section 10(b) claim asserted by a contemporaneous trader); *Preletz*, 749 F. Supp. at 710 (holding that a Section 10(b) claim brought by a contemporaneous trader is "governed by the restrictions of § 20A, including §20A's limit on damages").[5]

Indeed, less than a month ago, in a case on all fours with the instant action, the District Court of Connecticut dismissed both a Section 10(b) claim and a Section 20A claim on the ground that the Plaintiffs' trades did not meet this Circuit's definition of "contemporaneous traders." *Brodzinsky v. FrontPoint Partner LLC*, 11 Civ. 10, 2012 WL 1468507, at *4-5 (D. Conn. Apr. 26, 2012). By applying Section 20A requirements to the Section 10(b) claim, the *FrontPoint* Court made clear that even, assuming *arguendo*, a Section 10(b) claim may be pleaded in tandem with a Section 20A claim, it nonetheless remains subject to all of the

---

4 Section 20A also contains a unique provision requiring that any damage award "be diminished by the amounts ... that such person may be required to disgorge, pursuant to a court order." 15 U.S.C. § 78t-1(b)(2). Notably, Freeman has been previously ordered by this Court to disgorge $833,480 to the United States Securities and Exchange Commission. *See* Final Judgment as to Defendant Noah Freeman, dated December 23, 2011, entered in *S.E.C. v. Longoria*, *et al.*, No. 11-cv-753 (JSR) (S.D.N.Y.). Accordingly, allowing Lead Plaintiffs to assert a Section 10(b) claim without such an off-set right would improperly denude ITSFEA on this basis as well.

5 Notably, even prior to the enactment of ITSFEA, the liability of an insider trader based on an implied Section 10(b) action was limited to the recovery of the insider trading profit. *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172-73 (2d Cir. 1980).

requirements and liability limitations of Section 20A. Accordingly, in the event the Court concludes that Count I may be pleaded in the alternative, it should nevertheless be dismissed for the reasons detailed in Point II *infra*.[6]

**POINT II**

**COUNT II ALLEGING A VIOLATION BY FREEMAN OF SECTION 20A OF THE EXCHANGE ACT SHOULD BE DISMISSED**

Count II of the Complaint, which alleges that Freeman is liable pursuant to Section 20A of the Exchange Act, 15 U.S.C. § 78t-1(a, c), fails adequately to state a claim and should be dismissed. In order to state a claim under Section 20A, a plaintiff must, *inter alia*, plead sufficient facts showing that the defendant traded the security at issue "contemporaneously" with the plaintiff and must meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *In re Take–Two Interactive Sec. Litig.,* 551 F. Supp. 2d 247, 310 n.50 (S.D.N.Y. 2008).

"[T]he weight of authority in this Circuit [is that] trades are contemporaneous if they occur within a reasonable period of time, usually limited to a few days, of one another." *Take–Two Interactive*, 551 F. Supp. 2d at 311. *See also In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011) ("five trading days appears to be a reasonable period of time within which sales and purchases will be considered

---

6 In opposition to the motion to dismiss in *FrontPoint*, the plaintiffs (represented by the same counsel as Lead Plaintiffs here) explicitly argued that they were entitled to assert "independent claims" under Section 20A and Section 10(b) and that the liability limitation provisions of Section 20A are not applicable to such an independent Section 10(b) claim. *See* Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss Second Amended Complaint, dated December 21, 2011, filed in *FrontPoint*, 11 Civ. 10 (D. Conn.) (Docket No. 132) ("*FrontPoint* Opposition"), 2011 WL 7660713, at *27-29. By dismissing both the Section 20A and Section 10(b) claims on the ground that plaintiffs did not constitute "contemporaneous traders," the *FrontPoint* Court plainly rejected such argument.

contemporaneous") (citing *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 642 (S.D.N.Y. 2008) (six days); *S.E.C. v. McCaskey*, No. 98 Civ. 6153, 2002 WL 850001, at *11 n.15 (S.D.N.Y. Mar. 26, 2002) (holding that a week was contemporaneous)).

Relying on these precedents, the District Court of Connecticut in *FrontPoint* recently granted a motion to dismiss Section 20A claims based on the elapse of two weeks between plaintiffs' and defendants' trades. *FrontPoint Partner LLC*, 2012 WL 1468507, at *4-5. The Section 20A claims asserted in the case at bar suffer from the same pleading deficiency and should also be dismissed.[7]

Notably, the Complaint here alleges only five days on which Lead Plaintiffs sold Sigma shares (July 30, 2007 (Tauber), August 16, 2007 (Tauber), September 28, 2007 (Gordon), October 25, 2007 (Tauber) and November 15, 2007 (Tauber) (Compl. ¶¶ 10-11)) and only three specific dates during the Class Period on which the John Doe Hedge Funds are alleged to have purchased Sigma stock (July 13, 2007, July 17, 2007 and September 18, 2007 (Compl. ¶¶ 57, 59, 65)). Significantly, a comparison of the dates reveals that none of Lead Plaintiffs' sales of Sigma stock were made less than ten days after the purchase dates of Sonar stock by the John Doe Hedge Funds alleged in the Complaint:

7 Counsel for Lead Plaintiffs here will no doubt argue, as it did to no avail in connection with its representation of plaintiffs in *FrontPoint*, that a plaintiff has standing as a "contemporaneous trader" if it traded at any time during the four month period in which the Sonar Hedge Funds were allegedly trading based on inside information and that a determination of standing to assert a Section 20A claim on behalf of a class should, in any event, be reserved for the trier of fact. *See FrontPoint Opposition*, 2011 WL 7660713, at *16-17. In holding that the *FrontPoint* Plaintiffs lacked standing as "contemporaneous traders," the *FrontPoint* Court rejected both of these arguments.

| **Dates of Alleged Purchases of Sigma Stock by the Sonar Hedge Funds** | **Dates of Alleged Sales of Sigma Stock by Lead Plaintiffs** |
|---|---|
| July 13, 2007 (Compl. ¶ 57) | |
| July 17, 2007 (Compl. ¶ 59) | |
| | July 30, 2007 (Tauber) (Compl. ¶ 11.a.) |
| | August 16, 2007 (Tauber) (Compl. ¶ 11.b.) |
| September 18, 2007 (Compl. ¶ 65) | |
| | September 28, 2007 (Gordon) (Compl. ¶ 10) |
| | October 25, 2007 (Tauber) (Compl. ¶ 11.c.) |
| | November 15, 2007 (Tauber) (Compl. ¶ 11.d.) |

As a result, Lead Plaintiffs have not adequately pleaded that they meet the definition of "contemporaneous sellers" required to have standing to assert a Section 20A claim. Count II should therefore be dismissed.

**POINT III**

**COUNT III ALLEGING A VIOLATION BY FREEMAN OF SECTION 20(a) OF THE EXCHANGE ACT SHOULD BE DISMISSED**

Count III of the Complaint alleges that Freeman is liable pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t ("Section 20(a)") as a "control person" of his former employer, Sonar. To state a Section 20(a) claim, however, the complaint must, among other things, plead facts "which support a reasonable inference that [Freeman] had the potential power to influence and direct the activities of the primary violator [Sonar]." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 205 (S.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005)).

Given the explicit acknowledgements in the Complaint as to Freeman's lack of control, Lead Plaintiffs have not and cannot meet this threshold pleading burden. *S.E.C. v. First Jersey*

*Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) ("Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise'"); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) ("the Section 20(a) defendant must not only have actual control over the primary violator, 'but have actual control over the transaction in question'").[8]

Significantly, the Complaint alleges that, "at all times relevant hereto, all decisions as to whether the Sonar Hedge Funds should buy or sell securities were ultimately made by Druker, who was the only person at Sonar empowered to authorize securities transactions by the Sonar Hedge Funds." Compl. ¶ 41. *See also id.* ¶ 42 ("[a]ccording to Freeman's testimony … the ultimate decision whether Sonar would make a securities transaction was made by Druker"); *id.* ¶ 43 ("The ultimate decisions that the John Doe Hedge Funds(s) should engage in the purchases (and sales) of Sigma stock described herein were made by Druker on behalf of Sonar"). Such admissions are consistent with the Complaint's acknowledgment that Druker was, at all relevant times, "the Chief Executive Officer and primary manager of Sonar" and the founder and owner of "a majority of the equity interests in Sonar" (*id.* ¶ 15), and, as "formal concessions in the pleadings, . . .. are binding upon the party making them." *Banks v. Yokemick*, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002).

---

8 A plaintiff asserting a Section 20(a) claim must, at minimum, meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and provide the defendant with "a short, plain statement that gives the defendant fair notice of the claim that the defendant was a control person and the ground on which it rests its assertion that a defendant was a control person." *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 231 (S.D.N.Y. 2008).

Accordingly, having alleged that Druker was the sole person with authority and control over Sonar's trading, Lead Plaintiffs' Section 20(a) claim against Freeman must fail as a matter of law. *Cohen*, 722 F. Supp. 2d at 435 (dismissing Section 20(a) claim against defendants where the plaintiffs did "not allege any facts to support the allegation that the [defendants] 'controlled' any primary violator of the securities laws").

**Conclusion**

For all of the foregoing reasons, the motion to dismiss should be granted and the Amended Class Action Complaint as against Freeman dismissed with prejudice.

Dated: New York, New York
May 15, 2012

Respectfully submitted,

DECHERT LLP

By: /s/ Benjamin E. Rosenberg

Benjamin E. Rosenberg
benjamin.rosenberg@dechert.com
David S. Hoffner
david.hoffner@dechert.com
Jason O. Billy
jason.billy@dechert.com
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
*Attorneys for Defendant Noah Freeman*

**CERTIFICATE OF SERVICE**

I hereby certify that I served the Memorandum of Law of Defendant Noah Freeman In Support of His Motion To Dismiss the Amended Class Action Complaint by first class mail on this 15th day of May, 2012, to:

| | |
|---|---|
| Edward F. Haber, Esq.<br>Michelle H. Blauner, Esq.<br>Charles E. Tompkins, Esq.<br>Ian J. McLoughlin, Esq.<br>Shapiro, Haber & Urmy LLP<br>53 State Street<br>Boston, MA 02109<br>*Attorneys for Plaintiff Sidney Gordon*<br>(also served by e-mail) | David A.P. Brower, Esq.<br>Brian C. Kerr, Esq.<br>Brower Piven<br>488 Madison Avenue<br>New York, NY 10022<br>*Attorneys for Plaintiff Jeffrey Tauber*<br>(also served by e-mail) |
| Mark Joseph Hyland, Esq.<br>Julia Claire Spivak, Esq.<br>Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>*Attorneys for Defendants Sonar Capital Management LLC and Neil Druker*<br>(also served by e-mail) | Primary Global Research, LLC<br>c/o Corporation Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br>*Defendant* |

/s/ Jason O. Billy
Jason O. Billy
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
(212) 698-3599 (Facsimile)
jason.billy@dechert.com
*Attorneys for Defendant Noah Freeman*