UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
SIDNEY GORDON,                                    :
        Plaintiffs,                              :   11-cv-9665 (JSR)
    -v.-                                          :
SONAR CAPITAL MANAGEMENT LLC, NOAH                :
FREEMAN, NEIL DRUKER, PRIMARY GLOBAL
RESEARCH, LLC, THE JOHN DOE HEDGE                 :
FUND(S), and JOHN AND JANE DOES 1
THROUGH 100 ,                                     :
        Defendants.                              :
---------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF
DEFENDANT NOAH FREEMAN IN FURTHER SUPPORT OF
<u>HIS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>**

Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Tel:  (212) 698-3500
Fax:  (212) 698-3599
*Attorneys for Defendant Noah Freeman*

**Table of Contents**

Preliminary Statement.................................................................................................................... 1

Argument ....................................................................................................................................... 2

POINT I
          PLAINTIFFS CANNOT STATE A SECTION 10(b)
          CLAIM AGAINST FREEMAN ........................................................................................ 2

          A.       Plaintiffs Have Failed To Plead A Primary
                   Violation By Freeman Of Section 10(b)............................................................... 2

          B.       Plaintiffs' Section 10(b) Claim Is Precluded
                   By Section 20A Of The Exchange Act .................................................................. 4

POINT II
          PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT
          THEIR TRADES WERE CONTEMPORANEOUS
          WITH THOSE OF THE SONAR HEDGE FUNDS ........................................................... 7

POINT III
          PLAINTIFFS CANNOT ALLEGE ADEQUATELY THAT
          FREEMAN WAS A CONTROL PERSON OF SONAR .................................................... 9

Conclusion ................................................................................................................................... 10

i

## Table of Authorities

**CASES**                                                         **PAGE(S)**

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ............................................................................................................ 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 8

*Brodzinsky v. FrontPoint Partner LLC*,
    11 Civ. 10, 2012 WL 1468507 (D. Conn. Apr. 26, 2012) ............................................ 2, 5, 6, 7

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ........................................................................................................ 3, 4

*H.A.B. Assoc. v. Hines*,
    No. 90 Civ. 0186, 1990 WL 170514 (S.D.N.Y. Oct. 26, 1990) ............................................ 8

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................................................. 7

*In re GPC Biotech AG Sec. Litig.*,
    No. 07 Civ. 06728 (S.D.N.Y. Feb. 13, 2009) ....................................................................... 8

*In re Motel 6 Sec. Litig.*,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) .............................................................................. 5, 6

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ................................................................................. 8

*In re Pfizer Inc. Sec. Litig.*,
    584 F. Supp. 2d 621 (S.D.N.Y. 2008) ................................................................................. 7

*In re Storage Tech. Corp. Sec. Litig.*,
    804 F. Supp. 1368 (D. Colo. 1992) ..................................................................................... 5

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ..................................................................................... 5

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................................. 7

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,*
    32 F.3d 697 (2d Cir. 1994) .................................................................................................. 9

*Janus Capital Group, Inc. v. First Derivative Traders*,
   131 S. Ct. 2296 (2011) ........................................................................................................3, 4

*Krim v. PCOrder.com,*
   402 F.3d 489 (5th Cir. 2005) ...................................................................................................9

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991) .................................................................................................................6

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
   940 F. Supp. 1101 (W.D. Mich. 1996) ....................................................................................5

*SEC v. Alexander*,
   160 F. Supp. 2d 642 (S.D.N.Y. 2001) ......................................................................................3

*SEC v. McCaskey,*
   No. 98 Civ. 6153, 2002 WL 850001 (S.D.N.Y. Mar. 26, 2002) .............................................7

*SEC v. Wyly*,
   788 F. Supp. 2d 92 (S.D.N.Y. 2011) .......................................................................................3

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   495 F.2d 228 (2d Cir. 1974) ....................................................................................................3

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001) ......................................................................................................4

*T. Rowe Price New Horizons Fund, Inc. v. Preletz*,
   749 F. Supp. 705 (D. Md. 1990) ..........................................................................................5, 6

**STATUTES & RULES**

15 U.S.C. § 78j ("Section 10(b)") ............................................................................... *passim*

15 U.S.C. § 78t ("Section 20(a)") .........................................................................................2, 10

15 U.S.C. § 78t(e) .......................................................................................................................3

15 U.S.C. § 78t–1 ("Section 20A") ............................................................................... *passim*

17 C.F.R. 240.10b-5 ("Rule 10b-5") .................................................................................3, 4, 6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................1

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Noah Freeman ("Freeman"), by his undersigned counsel, Dechert LLP, respectfully submits this reply memorandum of law in further support of his motion to dismiss the Amended Class Action Complaint in the above-captioned action.[1]  In addition to the arguments set forth below, to the extent applicable, Freeman expressly adopts and incorporates as if fully set forth herein the arguments set forth in the Reply Memorandum of Law In Further Support of Defendants Neil Druker and Sonar Capital Management LLC's Motion to Dismiss the Amended Class Action Complaint, dated June 12, 2012.

### Preliminary Statement

Plaintiffs' Opposition to Freeman's motion fails adequately to address Freeman's showing that the claims against him are defective and should be dismissed with prejudice.  As an initial matter, Plaintiffs have failed to rebut Freeman's showing that the allegations against him are insufficient to state a primary violation of Section 10(b) of the Exchange Act.  As an alleged non-trading tipper, Freeman merely aided and abetted alleged insider trading by the Sonar Hedge Funds and such conduct does not give rise to a private right of action.  On this basis alone, Count I as against Freeman should be dismissed with prejudice.  *See* Point IA *infra*.

Nor have Plaintiffs been able to rebut Freeman's showing that the Section 10(b) claim against him is preempted or subsumed by Plaintiffs' claim pursuant to Section 20A of the Exchange Act.  Indeed, Plaintiffs have failed to cite to a single decision from this Circuit supporting their baseless effort to do an end-run around the clearly applicable limitations on liability set forth in Section 20A.  Moreover, they conveniently ignore decisions from this Circuit

---

[1] All abbreviated terms have the meaning ascribed in the Memorandum of Law of Defendant Noah Freeman In Support of His Motion to Dismiss the Amended Class Action Complaint (the "Freeman Moving Memorandum").

(including *Brodzinsky v. FrontPoint Partner LLC*, 11 Civ. 10, 2012 WL 1468507, at *4-5 (D. Conn. Apr. 26, 2012)) that make clear that, even if a Section 10(b) claim brought by a "contemporaneous trader" may properly be asserted in the alternative, it remains subject to all of the additional requirements and limitations set forth in Section 20A.  *See* Point IB *infra*.

Plaintiffs' effort to demonstrate that their trades were sufficiently "contemporaneous" with the trades of the Sonar Hedge Funds to meet the requirements of Section 20A also fails. The clear weight of authority in this Circuit requires that trades be within 5 to 7 days of each other to be "contemporaneous."  Unable to meet this standard, Plaintiffs attempt to remedy their failure by engaging in a curious statistical analysis that they claim demonstrates that their claims are "plausible."  One cannot, however, meet one's pleading burdens by relying on mere probabilities.  *See* Point II *infra*.

Finally, Plaintiffs' effort to defend their claim that Freeman is liable pursuant to Section 20(a) of the Exchange Act as a "control person" of Sonar falls woefully short.  Having pleaded that Druker alone controlled Sonar and that Freeman had no trading authority, Plaintiffs have not and cannot salvage their claim.  *See* Point III *infra*.

## Argument

### POINT I

### PLAINTIFFS CANNOT STATE A SECTION 10(b) CLAIM AGAINST FREEMAN

A.   Plaintiffs Have Failed To Plead A Primary Violation By Freeman Of Section 10(b)

In his Moving Memorandum, Freeman demonstrated that Count I should be dismissed given Plaintiffs' failure to allege a primary violation by Freeman of Section 10(b).  In response, Plaintiffs do not dispute that Freeman is alleged only to have been a tipper and not to have personally engaged in any insider trading in Sonar stock.  Instead, in a baseless effort to expand the scope of primary liability, they (a) reference outdated case law, (b) cite to inapposite cases in

2

which the Securities and Exchange Commission was the plaintiff, and (c) ignore the Supreme Court's recent decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011). *See* Memorandum of Law In Opposition To Defendant Noah Freeman's Motion To Dismiss The Amended Class Action Complaint ("Opp. to Freeman") at 7-11.

Unable to cite to any clear authority subsequent to *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (which held for the first time that Section 10(b) does not authorize a private right of action for aiding and abetting a violation of the statute), Plaintiffs rely primarily on *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974), a case decided 20 years before that seminal decision at a time when the Court of Appeals for the Second Circuit would have had no reason to distinguish between primary and secondary liability under the statute. Accordingly, *Shapiro* offers no precedential support for Plaintiffs' contention that tippers are primarily liable under Section 10(b) and Rule 10b-5 thereunder.[2]

Plaintiffs' citations to *SEC v. Alexander*, 160 F. Supp. 2d 642, 650 (S.D.N.Y. 2001), and *SEC v. Wyly*, 788 F. Supp. 2d 92, 119 (S.D.N.Y. 2011) (Opp. to Freeman at 8), are also off the mark. Subsequent to *Central Bank*, Congress, pursuant to the Private Securities Litigation Reform Act of 1995, restored the SEC's authority to assert civil claims for aiding and abetting a violation of Section 10(b). 15 U.S.C. § 78t(e). Accordingly, the SEC's assertion of Section 10(b)

---

[2] Plaintiffs' reliance on *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 313 (1985), which also preceded *Central Bank* by many years, is similarly unavailing. Indeed, the quote proffered by Plaintiffs (Opp. to Freeman at 8) merely states that a tipper "shares responsibility" with a trading tippee for securities fraud. Prior to *Central Bank*, however, "sharing responsibility" would plainly include conduct that would only constitute aiding and abetting a primary violation.

claims against a non-trading tipper has no bearing on the right of private litigants, such as Plaintiffs, to bring such a claim.

Plaintiffs next contend that *Central Bank* itself supports their claim, arguing that the decision made clear that "all individuals, even so-called 'secondary actors,' who employ a manipulative device, are *primarily* liable." Opp. to Freeman at 9. *Central Bank*, however, said no such thing. It merely stated that a person or entity that employs a manipulative device "may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability are met. . . ." *Central Bank*, 511 U.S. at 191.

Here, however, given that Freeman is not alleged to have personally engaged in any unlawful trading or to have had any direct beneficial interest in the Sonar Hedge Funds, all of the requirements for primary liability are not met. Indeed, in *Janus*, the Supreme Court recently made clear that only the entity that had "ultimate authority" or "control" over the action can be a primary violator. *Janus*, 131 S. Ct. at 2302 ("If persons or entities without control . . . could be considered primary violators . . . then aiders and abettors would be almost nonexistent"). Here, however, the Complaint concedes that Freeman did not have "ultimate authority" or "control" over the allegedly unlawful trades made by the Sonar Hedge Funds. *See* Compl. ¶¶ 41-44.[3]

B.      Plaintiffs' Section 10(b) Claim Is Precluded By Section 20A Of The Exchange Act

Plaintiffs' effort to rebut Freeman's showing that the Section 10(b) claim is either preempted by or incorporated within their claim pursuant to Section 20A also falls short. Indeed,

---

[3]   Plaintiffs cite to *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 100-01 (2d Cir. 2001) (Opp. to Freeman at 10), claiming that the decision supports primary liability as to Freeman because he acted as an "agent[] of the alleged defrauder." The key fact in *Suez Equity Investors*, however, was that the bank defendants who claimed their conduct amounted to only aiding and abetting a Section 10(b) violation had "*in their own right*" made a fraudulent misrepresentation to plaintiffs by knowingly providing them with a forged report. *Id*. at 101. Here, however, Freeman did not engage in insider trading "in his own right."

4

Plaintiffs' Opposition fails to cite to a single decision from this Circuit supporting their contention that a Section 10(b) predicated on allegations of insider trading is not governed by the limitations on liability set forth in Section 20A. Nor do Plaintiffs even make an effort to distinguish the recent decision of the District Court of Connecticut in *Brodzinsky*, 2012 WL 1468507, at *4-5, or the decision of this Court in *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 233 (S.D.N.Y. 2001), both of which make clear that, to the extent a Section 10(b) claim premised on insider trading may be asserted in the alternative, it is subject to the additional pleading requirements and limitations on liability set forth in Section 20A.[4]

In addition to ignoring *Brodzinsky* and *Motel 6*, Plaintiffs fail (a) to address the legislative history of ITSFEA cited in the Freeman Moving Memorandum, (b) to explain why they contend the court's comprehensive decision in *T. Rowe Price New Horizons Fund, Inc. v. Preletz*, 749 F. Supp. 705 (D. Md. 1990), was "wrongly decided" (Opp. to Freeman at 11), and (c) to address the fact that allowing Section 10(b) and Section 20A claims premised on insider trading to be pleaded together would be inconsistent with and "undermine" the limitations on damages explicitly set forth in Section 20A(b). *Preletz*, 749 F. Supp. at 710).[5]

---

[4] The cases cited by Plaintiffs from outside the Second Circuit (Opp. to Freeman at 10-11, n.6) are distinguishable. Significantly, in *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1121 (D. Nev. 1998); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1131 (W.D. Mich. 1996), and *In re Storage Tech. Corp. Sec. Litig.*, 804 F. Supp. 1368 (D. Colo. 1992), the Section 10(b) claims at issue were asserted against corporate insiders based on allegedly false and misleading statements regarding the issuer. Here, however, the Section 10(b) and Section 20A claims are both premised exclusively on alleged insider trading. In such a circumstance, to allow an unrestricted Section 10(b) claim would be inconsistent with and "undermine" the limitations on damages explicitly set forth in Section 20A(b). *Preletz*, 749 F. Supp. at 710.

[5] In his Moving Memorandum, Freeman also cited to the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 (1991), noting that the Court stated that "[t]he language of § 20A makes clear that the 100th Congress sought to *alter* the remedies available in insider trading cases" but did not intend to alter those remedies in other

*(Continued . . .)*

Whether one views Section 20A as preempting a Section 10(b) claim premised on insider trading or simply modifying a Section 10(b) insider trading claim by grafting on to it the limitations on liability set forth in Section 20A(b), the results would be the same – an adherence to Congressional intent that an insider trader sued by a class of contemporaneous traders be potentially liable only for disgorgement of the profits resulting from the defendant's illegal trading and not for the losses or lost profits of the entire putative class. *Brodzinsky, Motel 6* and *Preletz* each recognize this by acknowledging that any Section 10(b) claim brought by a contemporaneous trader must satisfy the elements of Section 20A. *See Brodzinsky*, 2012 WL 1468507, at *4-5 (Section 10(b) claim predicated on insider trading must meet the contemporaneous trading requirements of Section 20A); *Motel 6*, 161 F. Supp. 2d at 233 (Section 10(b) claim predicated on insider trading subject to the limitations on liability set forth in Section 20A); *Preletz*, 749 F. Supp. at 710 (Section 10(b) claim brought by a contemporaneous trader is "governed by the restrictions of § 20A, including § 20A's limit on damages").[6] Count I should therefore be dismissed or, in the alternative, held subject to the

---

*(. . . Continued)*
cases") (emphasis added).  In response, Plaintiffs misconstrue the point arguing that the *Lampf* Court "did not hold that Section 10(b) and Rule 10b-5 are precluded by Section 20A." Opp. to Freeman at 11 n.5.  By stating, however, that Section 20A "*alter[ed]* the remedies available in insider trading cases," *Lampf* rebuts Plaintiffs' contention that a Section 10(b) claim brought by a contemporaneous trader is unaffected by ITSFEA.

[6]   Plaintiffs do not dispute that, even prior to the enactment of ITSFEA, the liability of an insider trader based on an implied Section 10(b) action was limited to the recovery of the insider trading profit.  Moving Memo. at 9 n.5 (citing *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172-73 (2d Cir. 1980)).  Thus, their contention that, after the enactment of ITSFEA, a Section 10(b) claim premised on insider trading has no limitations on liability is non-sensical.

requirements and limitations of Section 20A (and dismissed for the reasons set forth in Point II *infra*).[7]

## POINT II

## PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT THEIR TRADES WERE CONTEMPORANEOUS WITH THOSE OF THE SONAR HEDGE FUNDS

In response to Freeman's showing that the Complaint fails to allege adequately that their sales of Sigma stock were sufficiently "contemporaneous" with the purchases of Sigma stock by the Sonar Hedge Funds, Plaintiffs effectively ask this Court to reject "the weight of authority in this Circuit" that "trades are contemporaneous [only] if they occur within a reasonable period of time, usually limited to a few days, of one another." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 n.51 (S.D.N.Y. 2008). *See also Brodzinsky*, 2012 WL 1468507, at *4-5 ("district court decisions within the Second Circuit have tended to find that five or even seven days between the trades is a reasonable period"), *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423, 509 (S.D.N.Y. 2011) ("five trading days appears to be a reasonable period of time within which sales and purchases will be considered contemporaneous"), *In re Pfizer Inc. Sec. Litig.,* 584 F. Supp. 2d 621, 642 (S.D.N.Y. 2008) (six days), and *SEC v. McCaskey,* No. 98 Civ. 6153, 2002 WL 850001, at *11 n.15 (S.D.N.Y. Mar. 26, 2002) (holding that a week was contemporaneous). Instead, they ask this Court to take

---

[7]   Plaintiffs argue that "[t]he Court need not and should not resolve, at the motion to dismiss stage, the measure of damages to be applied." Opp. to Freeman at 11 n.6. Freeman is not, however, requesting that the Court prematurely opine on the proper *measure* of damages; he is simply seeking a determination as to which statutory scheme is applicable to Plaintiffs' Section 10(b) claim (in the event the Court concludes that such a claim may properly be asserted in addition to the Section 20A claim).

guidance from much older decisions that run counter to this Court's current jurisprudence. *See* Opp. to Freeman at 13-14.[8]

Recognizing that the "weight of authority" in this District does not support their claims, Plaintiffs next resort to arguing that, even if the identified trades were not contemporaneous, their claims should survive because there is a chance that additional trades made by the Sonar Hedge Funds on certain unknown dates might be sufficiently proximate.[9] Relying on a 4-page "probability analysis" supported by an algebra textbook, Plaintiffs bizarrely argue that "it is more likely than not, and hence of course 'plausible' that at least one, if not more, of Sonar's additional purchases of Sigma stock was contemporaneous with one of Plaintiffs' sales." Opp. to Freeman at 19-23.

This incredibly strained conjecture should be rejected out of hand. The "plausibility" standard to which Plaintiffs cite relates to the obligation to plead a "strong inference of scienter" in a securities fraud action; it has no bearing on a plaintiff's obligation pursuant to Section 20A to allege adequately that trades were "contemporaneous." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, even assuming Plaintiffs' "basic math" is correct,

---

[8] The one relatively recent decision relied on by Plaintiffs, *In re GPC Biotech AG Sec. Litig.*, No. 07 Civ. 06728, *26-28 (S.D.N.Y. Feb. 13, 2009), *vacated on other grounds*, 2009 WL 752111 (S.D.N.Y. Mar. 12, 2009) (Opp. to Freeman at 16), offers them little support. Although this unreported and vacated decision stated that "even ten days may be contemporaneous," it denied the motion to dismiss without prejudice to renewal on summary judgment and noted that "other courts in this district have concluded that trades *within* periods of up to six days are contemporaneous." *Id*. (emphasis added).

[9] Plaintiffs claim that *H.A.B. Assoc. v. Hines*, No. 90 Civ. 0186, 1990 WL 170514, *6 (S.D.N.Y. Oct. 26, 1990), and *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 254-56 (S.D.N.Y. 2007), support their contention that "so long as a plaintiff alleges facts that plausibly show that the plaintiff traded contemporaneously with the defendant, the court should allow the case to go forward." Opp. to Freeman at 15-16. Neither case supports this proposition. The *Hines* court did not even address the adequacy of plaintiff's allegations with respect to "contemporaneous" trades (1990 WL 170514, at *6) and nothing in *Openwave* makes clear that the plaintiff did not identify the dates of its trades. 528 F. Supp. 2d at 254-56.

8

accepting a statistical analysis in lieu of the pleading of actual contemporaneous trades would "impermissibly expand the statute's standing requirement." *Krim v. PCOrder.com,* 402 F.3d 489, 497 (5th Cir. 2005) (rejecting the use of a probability analysis to meet the traceability requirement of Section 11 of the Securities Act of 1933). As the Court of Appeals for the Fifth Circuit stated in *Krim*:

> The fallacy of Appellants position is demonstrated with the following analogy. Taking a United States resident at random, there is a 99.83% chance that she will be from somewhere other than Wyoming. Does this high statistical likelihood alone, assuming for whatever reason there is no other information available, mean that she can avail herself of diversity jurisdiction in a suit against a Wyoming resident? Surely not.

*Krim*, 402 F.3d at 497.

In sum, given Plaintiffs' inability to allege specifically that any of their sales of Sigma stock took place within seven days of purchases by the Sonar Hedge Funds, the Section 20A claim against Freeman should be dismissed for failure to meet the statute's contemporaneous trading requirement.[10]

## POINT III

### PLAINTIFFS CANNOT ALLEGE ADEQUATELY THAT FREEMAN WAS A CONTROL PERSON OF SONAR

Trapped by the admissions in their own Complaint that "all decisions as to whether the Sonar Hedge Funds should buy or sell securities were ultimately made by Druker, who was the only person at Sonar empowered to authorize securities transactions by the Sonar Hedge Funds" (Compl. ¶ 41), Plaintiffs struggle in vain to defend their claim that Freeman was a "control

---

[10] In order to plead a claim under Section 20A, a plaintiff must adequately plead a predicate violation of another provision of the Exchange Act. 15 U.S.C. § 78t–1(a); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 703 (2d Cir. 1994). As detailed in Point I *supra*, however, Plaintiffs have failed to allege adequately a primary violation by Freeman of Section 10(b). On this basis as well, Count II should be dismissed.

person" of Sonar and thus subject to liability pursuant to Section 20(a). Unable to allege any facts that support any standard definition of control, they argue that Freeman's title of Managing Director and his alleged participation in the insider trading scheme gave him "requisite control over Sonar in causing it to trade upon inside information concerning Sigma." Opp. to Freeman at 24.

In light, however, of the Complaint's acknowledgement that Druker had sole trading authority at Sonar, this argument falls flat. Given Plaintiffs' concession that Freeman had no authority to place a trade and that all management control resided with Sonar's principal, Druker, Plaintiffs cannot put the cat back into the bag and now contend that Freeman "caus[ed] [Sonar] to trade upon inside information concerning Sigma." Count III of the Complaint as against Freeman should therefore be dismissed.

## Conclusion

For all of the foregoing reasons, defendant Noah Freeman respectfully requests that his motion to dismiss be granted in its entirety and the Amended Class Action Complaint as against him be dismissed with prejudice.

Dated: New York, New York  
      June 12, 2012

Respectfully submitted,  
DECHERT LLP

By: /s/ David S. Hoffner  
    Benjamin E. Rosenberg  
    benjamin.rosenberg@dechert.com  
    David S. Hoffner  
    david.hoffner@dechert.com  
    Jason O. Billy  
    jason.billy@dechert.com  
1095 Avenue of the Americas  
New York, NY 10036  
Tel: (212) 698-3500  Fax: (212) 698-3599  
*Attorneys for Defendant Noah Freeman*