UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIDNEY GORDON,

        Plaintiff,

v.

SONAR CAPITAL MANAGEMENT LLC,
NOAH FREEMAN, NEIL DRUKER,
PRIMARY GLOBAL RESEARCH, LLC, THE
JOHN DOE HEDGE FUND(S), and JOHN AND
JANE DOES 1 THROUGH 100,

        Defendants.

11-cv-09665 (JSR)

## DEFENDANTS SONAR CAPITAL MANAGEMENT LLC'S AND NEIL DRUKER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR TO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

SEWARD & KISSEL LLP
Mark J. Hyland
Julia C. Spivack
Michael W. Broz
One Battery Park Plaza
New York, New York 10004
Tel. 212-574-1200

*Attorneys for Defendants
Sonar Capital Management
LLC and Neil Druker*

SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, N.Y. 10004

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Preliminary Statement | | 1 |
| Argument | | 2 |
| I. | Plaintiffs Fail to Satisfy The Causation And Reliance Elements of Their Claim | 2 |
| | A. Because Any Liability Ended On August 29, 2007, Gordon Has No Claim | 2 |
| | B. Tauber Does Not Allege Loss Causation Under *Dura* | 2 |
| | C. Tauber Fails To Allege Plausibly That He Relied On The Integrity Of The Market Price | 5 |
| II. | Plaintiffs Fail To Plead Fraud With Particularity Under Rule 9(b) and the PSLRA | 6 |
| | A. There Are No Particularized Allegations Concerning Post-August 29 Information | 6 |
| | B. Plaintiffs' Conclusory Allegations Concerning Druker's Scienter Fail To State A Claim | 7 |
| III. | Plaintiffs' 20A Claim Fails Because They Cannot Allege Contemporaneous Trades | 8 |
| IV. | Plaintiffs Fail To Allege Control Person Liability Against Druker | 9 |
| Conclusion | | 10 |

# TABLE OF AUTHORITIES

Page

# FEDERAL CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..............................2, 7, 8, 10

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ........................................................................1, 5

*In re Bearingpoint, Inc., Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006) ..............................................4

*Brodzinsky v. FrontPoint Partner LLC*, 11-cv-10, 2012 U.S. Dist. LEXIS 59152
   (D. Conn. Apr. 26, 2012) ..........................................................................................1, 8, 9

*In re Connetics Corp. Sec. Litig.*, C 07-2940, 2008 WL 3842938
   (N.D. Cal. Aug. 14, 2008) ..........................................................................................9

*In re CornerStone Propane Partners, L.P. Sec. Litig.*, No. C 03-2522,
   2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ..........................................................4

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ..............................................1, 2, 3

*Edison Fund v. Cogent Invest. Strategies Fund*, 551 F. Supp. 2d 201 (S.D.N.Y. 2008) ..............10

*Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36 (S.D.N.Y. 1975) ........................................................2

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) ..................................3

*In re GPC Biotech AG Sec. Litig.*, 597 F. Supp. 412 (S.D.N.Y. 2009), *vacated*
   2012 U.S. Dist. LEXIS 26259 (S.D.N.Y. Mar. 12, 2009) ..........................................................9

*Janbay v. Canadian Solar, Inc.*, 10 Civ. 4430, 2012 U.S. Dist. LEXIS 47125,
   (S.D.N.Y. Mar. 30, 2012) ..........................................................................................7-8

*Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615 (D.N.J. 2003) ..................................................5

*Kalnit v. Eichler*, 264 F.3d 131 (2d. Cir. 2001) ........................................................................7, 8

*In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) ......................10

*In re Motel 6 Sec. Litig.*, 93 Civ. 2183, 93 Civ. 2866, 1997 U.S. Dist. LEXIS 3909
   (S.D.N.Y. Apr. 2, 1997) ..........................................................................................9

*In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346
   (S.D.N.Y. Feb. 14, 2006) ..........................................................................................4

*In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236 (S.D.N.Y. 2007) ......................................9

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..............................................10

*Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance
   Corp.*, No. 08 CV 1713, 2012 U.S. Dist. LEXIS 24106 (E.D.N.Y. Feb. 23,
   2012) ..........................................................................................10

*Police & Fire Ret. Sys. v. SafeNet, Inc.*, 645 F. Supp. 2d 210 (S.D.N.Y. 2009) ......................10

Page

*Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009) .............................................. 4

*Roth v. Aon Corp.*, 238 F.R.D. 603 (N.D. Ill. 2006) ....................................................................... 4

*In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003) .......................................................... 5

*Schleicher v. Wendt*, No. 02-cv-1332, 2009 U.S. Dist. LEXIS 24810
    (S.D. Ind. Mar. 20, 2009) ........................................................................................................ 5-6

*SEC v. Obus*, No. 06 Civ. 3150, 2010 U.S. Dist. LEXIS 98895
    (S.D.N.Y. Sept. 20, 2010) ........................................................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................. 8

*In re Tronox Inc., Sec. Litig.*, 769 F. Supp. 2d 202 (S.D.N.Y. 2011) ............................................ 10

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................ 6

*Wexner v. First Manhattan Co.*, 902 F.2d 169 (2d Cir. 1990) ........................................................ 7

*Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744
    (S.D.N.Y. 2011) .......................................................................................................................... 6

*Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88 (2d Cir. 1981) ........................................... 2, 9

## STATUTES AND RULES

15 U.S.C. § 78u-4(b)(2) .................................................................................................................... 7

18 U.S.C. § 78t-1 .............................................................................................................................. 8

Fed. R. Civ. P. 9(b) .......................................................................................................................... 7

## Preliminary Statement[1]

Plaintiffs' Opposition may be more significant for what it does not say than for what it does. For example:

- Plaintiffs do not contest that they do not plead specific facts and simply assume Defendant Freeman must have told Druker that he, Freeman, had obtained material non-public information and that Druker caused Sonar to trade on the basis of it;

- Plaintiffs do not contest that the allegations concerning the 2006-June 2007 time frame (Am. Compl. ¶¶ 50-54) and those relating to another security (*id.* at ¶¶ 32-36) have nothing to do with the relief sought here, as the Amended Complaint identifies a class period of July 13-November 28, 2007;

- Plaintiffs do not contest that the pertinent allegations concerning the Sigma trades appear at Am. Compl. ¶¶ 55-69, and that Druker's name is not even mentioned; and

- Plaintiffs do not dispute that no breach of duty is alleged in respect of Am. Compl. ¶¶ 55-69, which constitutes the essence of the Amended Complaint.

Plaintiffs concede that the only factual basis for their allegations is the SEC Complaint – which they do not deny copying – and other publicly filed documents. Yet they do not and cannot point to any facts alleged in the SEC Complaint concerning Druker whatsoever. Instead, they fill in the gaps with conjecture masquerading as facts and repeat the old saw that whatever they say should be taken as true. The SEC never sued Sonar or Druker, nor did anyone else. The SEC Complaint simply provides no cover for Plaintiffs.

Plaintiffs also ignore key authorities raised in the Motion, like *Brodzinsky* (where Shapiro Urmy represented plaintiffs) and *Dura* that are fatal to their claims. Plaintiffs cannot establish standing because neither was a contemporaneous trader -- a requirement of Section 20A and Rule 10b-5 claims. Nor does Tauber allege reliance under *Basic* or loss causation under *Dura*. The

---

[1] References are to Defendants Sonar Capital Management LLC's and Neil Druker's Memorandum of Law in Support of Their Motion To Dismiss The Amended Class Action Complaint ("Motion") and Plaintiffs' Memorandum of Law in Opposition To Defendants Neil Druker and Sonar Capital Management LLC's Motion to Dismiss the Amended Class Action Complaint ( "Opposition" or "Opp.").

claims against Sonar and Druker should be dismissed with prejudice.

## Argument

### I. Plaintiffs Fail To Satisfy The Causation And Reliance Elements Of Their Claims

#### A. Because Any Liability Ended On August 29, 2007, Gordon Has No Claim

Plaintiffs concede that Sigma's public disclosure of its second quarter performance on August 29, 2007 ended any liability based on the July 2007 "tip." Opp. at 3; *see also Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y. 1975). Because there are no particularized factual allegations that PGR Agent provided positive material non-public information about Sigma to Freeman at any time after August 29, *see infra* II.A., Plaintiffs cannot state a claim for securities fraud based on any post-August 29 transactions. That makes Gordon's single September 28 sale non-actionable. To get around this flaw, Plaintiffs say that Freeman spoke or exchanged voicemails with PGR Agent some 20 times during the September – November 2007 period (Opp. at 3-4), and thus Gordon must have sold his Sigma shares while shenanigans were going on between Freeman and PGR Agent. But nowhere do Plaintiffs allege what was said, whether it violated a duty, whether it was positive or negative or whether Druker even knew about it. The vague allegations of post-August 29 events are exactly the wild shots in the dark that the heightened pleading rules are designed to prevent. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Gordon made his single sale on September 28, four weeks after the alleged violation ended and thus is not a contemporaneous trader and does not have standing to bring either a Section 10b, Rule 10b-5 or a Section 20A claim. *See Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 94 (2d Cir. 1981) (duty to abstain or disclose runs only to contemporaneous traders).

#### B. Tauber Does Not Allege Loss Causation Under *Dura*

Sonar and Druker focus on *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 342 (2005) in the Motion, but Plaintiffs ignore it entirely, arguing instead that it is premature to

2

evaluate Tauber's damages. This misses the point: *Dura* forecloses Tauber's loss causation argument because he was a net purchaser, buying an equal or greater number of Sigma shares than he sold on the same day or within a short time, and prior to the August 29 and November 28 "corrective disclosures" and thus he has no cognizable loss.

*Dura* instructs that when "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* at 342. Applying these principles, courts have found that "in and out" traders will not be able to prove loss causation because they exited their positions before the price correction caused a loss. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40-41 (2d. Cir. 2009). Here, Plaintiffs' theory is that they suffered a loss when they sold their shares into a market where, unbeknownst to them, the price was too low. Unlike the usual case where the issuer is accused of misrepresenting or concealing facts causing the stock price to be artificially inflated, here Plaintiffs are suing third parties who they contend knew positive information that the public did not know. Thus, Plaintiffs claim if the public knew what Defendants knew (even though the public should not have known it), the stock price would have been higher. Like a purchaser plaintiff who sells all his shares prior to a corrective disclosure, Tauber fully replaced (also at allegedly artificially depressed prices) all the Sigma shares he sold prior to both the August 29 and November 28 corrective disclosures. He exited the Class Period with more shares than he had entering the Class Period. He thus cannot show that the alleged artificial price deflation caused a loss.

Tauber cannot allege loss causation under *Dura* for *any* of his four sales, two of which – on August 16 and November 15 – occurred on the same day as he purchased an equal or greater number of Sigma shares, and the other two, on July 30 and October 25 occurred within seven and

3

13 trading days of an equivalent or greater purchase.[2]

Plaintiffs attempt to distinguish *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, C 03-2522, 2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006), claiming that it did not address in and out traders and "specifically distinguished cases like this one where Plaintiffs have the possibility of recovering some damages for the alleged injury. . ." Opp. at 7, n.2. But the cases *Cornerstone* distinguished were all pre-*Dura* and dealt with intra-class differences in damages calculation not, as here, a plaintiff who did not allege loss causation at all. Moreover, *Cornerstone* found that "under *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all," *id.* at *27, and thus is applicable here, where Tauber indisputably purchased more shares than he sold before any corrective disclosure. Plaintiffs' citations to *Bearingpoint, Ross,* and *In re NTL* are inapposite because in each case there were incremental disclosures; thus an in and out trader *may* be able to show loss causation because the market price could have been affected before full disclosure.[3] There are no such allegations here.

Plaintiffs criticize Defendants for not providing an "analysis comparing Mr. Tauber's trades to the timing of either the inside information about Sigma tipped by the Primary Global Agent to Defendants or the subsequent public disclosure of the same information by Sigma." Opp. at 5. But, as set forth below, other than the July 2007 conversations (*not* involving Druker) and the publication of such information on August 29, 2007 (Am. Compl. ¶¶56, 62), Plaintiffs provide no description of what or when "inside information" was shared at all. *See infra* Section II.A.

---

[2]  Tauber bought 9,000 Sigma shares on July 19 and then sold that exact amount seven trading days later on July 30. Similarly, Tauber's October 25 sale of 15,100 shares was completely offset by his purchase 13 trading days later on November 14 of 19,545 shares.

[3]  *See In re Bearingpoint, Inc., Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009); *In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. Feb. 14, 2006). *Roth v. Aon Corp.*, 238 F.R.D. 603 (N.D. Ill. 2006), also relied on by Plaintiffs, quoted *Bearingpoint* and thus is equally inapposite.

4

### C. Tauber Fails To Allege Plausibly That He Relied On The Integrity Of The Market Price

Plaintiffs deny that Tauber is a day trader or a short seller (Opp. at 9) but fail to explain his bizarre trading behavior or why he manically bought and sold Sigma at prices completely outside of the market range. In any event, Tauber is not entitled to the presumption of reliance afforded by a fraud on the market theory because he did not buy and sell Sigma at the market price.

Tauber argues that he is entitled to the *Basic* presumption of reliance because all investors rely on a market untainted by fraud. *Basic* instructs that "an investor who buys or sells stock *at the price set by the market* does so in reliance on the integrity of that price" (emphasis added) – meaning that "the market price of shares . . . reflects all publicly available information and, hence, all material misrepresentations." *Basic, Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988). The *Basic* presumption is rebuttable by "[a]ny showing that severs the link between the alleged misrepresentation and either the *price* received (or paid) by the plaintiff, or his decision to trade at *a fair market price*." *Id.* at 248 (emphasis added). Here, Tauber cannot obtain the *Basic* presumption because, on 113 of 114 transactions, he did not "buy[] or sell[] [Sigma] stock at the price set by the market" – rather, he transacted at prices significantly outside of the market range.

An investor, like a short seller or a day trader, who does not rely on the accuracy of the market price in making a trade fails to satisfy the reliance prong of a 10b-5 claim. *See Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 632-33 (D.N.J. 2003); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003).[4] Contrary to Plaintiffs' assertion, courts in the Southern District have not held otherwise, recognizing that the question of "whether short sellers can benefit

---

[4] *Jones* acknowledged that while a short seller is not entitled to the presumption of reliance, he can still allege reliance based on a fraud on the market theory by alleging that ". . . when making the covering purchase, he relied on the integrity of the market price of the stock; that is, he believed that the stock's price, at the time he covered, accurately reflected the stock's true value because he was ignorant of any fraud . . ." *Id.* at 632. *Schleicher v. Wendt*, No. 02-cv-1332, 2009 U.S. Dist. LEXIS 24810 (S.D. Ind. Mar. 20, 2009) is not inconsistent. *See Schleicher*, at * 27("the short seller can be

from the fraud on the market presumption is unsettled." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 586 n.65 (S.D.N.Y. 2011). Plaintiffs' reliance on *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744 (S.D.N.Y. 2011) is inapposite as the court simply acknowledged that the parties did not dispute the reliance allegations. *Id.* at 751.[5] Here, Tauber does not even allege he relied on the integrity of the market price, nor could he when he consistently bought at above market prices, and consistently sold at below market prices.[6]

Tauber's only reliance allegations are that he sold Sigma "relying upon the integrity of the market in which such shares trade, and/or the absence of material adverse information that was known by the Insider Trading Defendants but not disclosed by the Insider Trading Defendants." Am. Compl. ¶ 98. Plaintiffs' theory is that Defendants obtained material *positive* information, thus the claim that Plaintiffs relied on the absence of material *adverse* information is untenable. And alleging reliance on the integrity of the market does not allege reliance on the market price, nor can Tauber plausibly do so when he did not trade Sigma anywhere close to the market price.

## II. Plaintiffs Fail To Plead Fraud With Particularity Under Rule 9(b) and the PSLRA

### A. There Are No Particularized Allegations Concerning Post-August 29 Information

There is not one allegation after July 2007 where Plaintiffs describe with any particularity any material non-public information concerning Sigma provided by PGR Agent to

---

injured if she has to cover her position earlier than she wants, a decision that would be based on the allegedly inflated market price.").

[5] *Wilamowsky* went on to dismiss plaintiff's securities fraud claims for failure to allege loss causation -- Tauber's claim suffers from the same defect. *See supra*, Section I.B.

[6] Plaintiffs assert that "[r]eliance upon the integrity of market price is not synonymous with belief in their accuracy." Opp. at 10. This misconstrues *Basic*, which explains that the market price is the vehicle that transmits material publicly available information to the market and thus reflects the "competing judgments of buyers and sellers" of the true value of the security. An investor who thinks the market price is inaccurate necessarily does not rely on the market price to reflect the true value of the stock and thus does not obtain the presumption of reliance.

Freeman, whether it was positive or negative, or when such communication supposedly occurred.[7] And Druker is not tied to any of it. This is plainly insufficient to state a claim here. *See Kalnit v. Eichler*, 264 F.3d 131, 138 (2d. Cir. 2001) (quoting Fed. R. Civ. P. 9(b)) ("in all averments of fraud . . . the circumstances constituting fraud . . . should be stated with particularity.").

Plaintiffs beg that the allegations be "taken as a whole" and "in context" to arrive at the inference that the alleged September – November conversations between PGR Agent and Freeman reflected information concerning Sigma's "better than expected sales and third quarter financial results." Opp. at 4. But Plaintiffs fail to point to any non-conclusory facts in their pleading that allege this. Whether one looks at the Amended Complaint as a whole or at individual allegations, Plaintiffs' allegations lack any semblance of particularity. *ATSI Commc'ns, Inc.*, 493 F.3d at 99.

### B. Plaintiffs' Conclusory Allegations Concerning Druker's Scienter Fail To State A Claim

Plaintiffs also fail to "state with particularity facts giving rise to a strong inference that [Druker] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The only "facts" alleged in the Amended Complaint are derived from the SEC Complaint and other public filings, all of which are silent as to Druker. *Compare* SEC Compl. ¶¶121 - 128 *to* Am. Compl. ¶¶45 - 69. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (information and belief allegations must still adduce specific facts supporting a strong inference of fraud). Druker is vaguely accused of wrongdoing in the introduction to the Amended Complaint (¶¶1-5), but afterwards, the pleading fizzles. These prefatory allegations cannot support a claim.

A strong inference of scienter may be satisfied "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Janbay v. Canadian Solar,*

---

[7] While the Sonar Defendants do not concede that the purported initial July tip contained material nonpublic information, they observe that the description of such information in ¶ 55 is of a different quality than that in ¶¶ 63 - 68.

7

*Inc.*, 10 Civ. 4430, 2012 U.S. Dist. LEXIS 47125, at *9 (S.D.N.Y. Mar. 30, 2012) (citing *ATSI*, 493 F. 3d at 99). Plaintiffs fail to show either.[8] The circumstantial facts on which Plaintiffs infer scienter are the allegations that only Druker had authority to trade, and that Sonar paid PGR Agent. Opp. at 16. Based on those facts, multiple plausible non-culpable inferences quickly come to mind – including that Freeman concealed from Druker that he had obtained material non-public information about Sigma. The court is *required* to weigh "plausible, nonculpable explanations for the defendant's conduct" against Plaintiffs' conjecture. *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323-24 (2007). Plaintiffs' proffered inference is fatally undermined by their failure to allege with specificity *what* or *when* Freeman told Druker anything about Sigma.[9]

### III. Plaintiffs' 20A Claim Fails Because They Cannot Allege Contemporaneous Trades

Because Plaintiffs fail to allege a predicate insider trading violation, they have no 20A claim. Even if they could, neither Plaintiff alleges contemporaneous trades, and thus does not have standing to bring a 10b-5 or 20A claim. Further, they do not dispute that Druker never traded himself, so he cannot be liable under 20A. *See* 18 U.S.C. § 78t-1; *see also infra* Section IV.

Plaintiffs do not and cannot dispute that the weight of Second Circuit precedent instructs that transactions more than five to seven days apart are *not* contemporaneous. *Brodzinsky v. FrontPoint Partner LLC*, 11 CV 10, 2012 U.S. Dist. LEXIS 59152, at *14 (D. Conn. Apr. 26, 2012) (collecting cases). The Sharpiro Urmy firm represented plaintiffs in *Brodzinsky,* Defendants cite it in their moving briefs, but amazingly, Plaintiffs do not address it. Plaintiffs nevertheless argue that there is no bright line rule on what constitutes a contemporaneous trade. *Brodzinsky*

---

[8] Plaintiffs do not allege motive and opportunity, thus they "must allege a degree of scienter approaching a knowledgeable participation in the fraud or a deliberate and conscious disregard of facts," *Janbay*, 2012 U.S. Dist. LEXIS 47125, at *28 (internal quotations omitted), and "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.

[9] This is particularly so when Plaintiffs must allege that Druker obtained information *and* that he "subjectively believe[d] that the information received was obtained in breach of a fiduciary duty." *SEC v. Obus*, 06 Civ. 3150, 2010 U.S. Dist. LEXIS 98895 at *27-28 (S.D.N.Y. Sept. 20, 2010).

8

rejected this theory, dismissing plaintiffs' 10b-5 and 20A claims when there were about two weeks between plaintiff's alleged purchase and defendants' sales. *Id.* at *13-14.[10]

Plaintiffs argue that it is plausible that Plaintiffs traded contemporaneously and they should be permitted to seek discovery to determine whether their allegations are true. But because Section 20A claims are premised on fraud, they are subject to the heightened pleading standards of Rule 9(b) and the PSLRA and Plaintiffs must allege with particularity that their sales were contemporaneous with the Insider Trading Defendants' purchases – the *Twombly* "plausibility" standard is inapplicable. *See In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 255 n.10 (S.D.N.Y. 2007) (noting that "Second Circuit has not yet confronted this issue, but it would appear that under Second Circuit law the heightened pleading requirements of the PSLRA and Rule 9(b) would apply to claims brought under Section 20A."). Plaintiffs allege three dates on which the Insider Trading Defendants allegedly purchased Sigma stock, none of which are contemporaneous with Plaintiffs' sales. Nor may Plaintiffs meet their heightened pleading requirement by alleging that the Insider Trading Defendants purchased Sigma shares at some point during a two or three month period. *See Wilson*, 648 F.2d at 94-95 (declining to extend liability to entire period of nondisclosure). Plaintiffs should not be able to obtain discovery to see if they even have a claim.[11]

### IV. Plaintiffs Fail To Allege Control Person Liability Against Druker

Because Plaintiffs fail to allege any facts that adequately allege culpable conduct on the

---

[10] The only Second Circuit case Plaintiffs cite (in the Freeman Opposition) that suggests that trades up to 10 days *may* be contemporaneous, *In re GPC Biotech AG Secs. Litig.*, 597 F. Supp. 2d 412 (S.D.N.Y. 2009) was later vacated. 2009 U.S. Dist. LEXIS 26259 (S.D.N.Y. Mar. 12, 2009).

[11] *In re Motel 6 Sec. Litig.*, 93 Civ. 2183, 93 Civ. 2866, 1997 U.S. Dist. LEXIS 3909 (S.D.N.Y. Apr. 2, 1997) and *In re Connetics Corp. Sec. Litig.*, C 07-2940, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) (Opp. at 19) is misplaced. *Motel 6* rejected the argument that the proposed class representatives were not contemporaneous traders, stating defendants should have raised that in a motion to dismiss, but found that plaintiffs had adequately pled standing in any event – a plaintiff had alleged the specific dates on which it transacted. In *Connetics*, the court dismissed 20A claims against three defendants where plaintiffs failed to allege the dates on which those defendants traded, and because standing cannot be based on unnamed class member's trades.

part of Druker (*see supra* Section II.B), their 20(a) claim fails. Plaintiffs suggest, based on two decisions by Judge Kaplan, that "culpable participation" is not a 20(a) pleading requirement but rather an affirmative defense.[12] This is not the view of the majority of courts in the Second Circuit, nor consistent with Second Circuit precedent. *See Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) ("weight of well-reasoned authority" in the Second Circuit finds culpable participation is an element of a 20(a) claim); *ATSI*, 493 F. 3d at 108.[13]

## Conclusion

For all the foregoing reasons, Defendants Sonar and Druker respectfully request that their motion to dismiss the Amended Complaint be granted in its entirety, and for such further relief as the Court deems just and proper.

New York, New York  
June 12, 2012

Respectfully submitted,

SEWARD & KISSEL LLP

By: _____s/ Mark J. Hyland_____  
Mark J. Hyland  
Julia C. Spivack  
Michael W. Broz  
One Battery Park Plaza  
New York, New York 10004  
(212) 574-1200

*Attorneys for Defendants Sonar Management LLC and Neil Druker*

---

[12] Plaintiffs rely on *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258 (S.D.N.Y. 2011) and *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) to assert that a plaintiff need not allege culpable participate to state a 20(a) claim, but that it is an affirmative defense. This is not the majority view. Plaintiffs' other cases either arise under Section 15 and are inapposite or confirm that culpable participation is an essential element of a 20(a) claim. *See Police & Fire Ret. Sys. v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 227, 241 (S.D.N.Y. 2009) (dismissing 20(a) claims for failure to allege culpable participation); *Plumbers' & Pipefitters' Local #562 Supp. Plan & Trust v. J.P. Morgan Acceptance Corp.*, No. 08 CV 1713, 2012 U.S. Dist. LEXIS 24106, *64 (E.D.N.Y. Feb. 23, 2012) (culpable participation is required on a Section 20(a) claim); *In re Tronox, Inc., Sec. Litig.*, 769 F. Supp. 2d 202, 207 (S.D.N.Y. 2011).

[13] Because Plaintiffs fail to state a securities fraud claim against Sonar and Druker, the fraudulent transfer and unjust enrichment claims necessarily fail and should be dismissed. It makes little sense to permit Plaintiffs to proceed with a claim that is doomed to fail.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2012, I caused to be served upon counsel of record listed below by e-mail and by electronic filing on the PACER system a true and correct copy of Defendants Sonar Capital Management LLC's and Neil Druker's Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Class Action Complaint and further served hard copies via first class mail on the parties below:

Edward F. Haber, Esq.
Shapiro Haber & Urmey LLP
53 State Street
Boston, MA 02109
(617) 439-3939

*Attorneys for Plaintiff Sidney Gordon*

David A.P. Brower, Esq.
Brower Piven, P.C.
488 Madison Avenue, 8th Floor
New York, New York 10022
(212) 501-9000

*Attorneys for Plaintiff Jeffrey Tauber*

Benjamin R. Rosenberg, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendant Noah Freeman*

Primary Global Research, LLC
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

                                     s/ Julia C. Spivack
                                           Julia C. Spivack

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
(212) 574-1200
spivack@sewkis.com

*Attorneys for Defendants Sonar Capital Management, LLC and Neil Druker*