UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY GORDON,<br><br>                                Plaintiff,<br><br>                    v.<br><br>SONAR CAPITAL MANAGEMENT LLC,<br>NOAH FREEMAN, NEIL DRUKER,<br>PRIMARY GLOBAL RESEARCH, LLC, THE<br>JOHN DOE HEDGE FUND(S), and JOHN AND<br>JANE DOES 1 THROUGH 100,<br><br>                                Defendants. | 11-cv-09665 (JSR) |


# DEFENDANTS SONAR CAPITAL MANAGEMENT LLC'S AND NEIL DRUKER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED PARTIAL CLASS ACTION SETTLEMENT


SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, N.Y. 10004

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 5

ARGUMENT ................................................................................................................... 7

I.   PLAINTIFFS MUST ESTABLISH THEIR RIGHT TO PROCEED WITH
     THEIR CLAIMS BASED ON THE EXTANT AMENDED COMPLAINT ................. 7

     A.   To Delay A Ruling On The Motion To Dismiss Until After The Partial
          Settlement Is Effective Contravenes The PSLRA ............................................ 7

     B.   Any Amendment Based On Freeman's Cooperation Information Would
          Be Futile ........................................................................................................... 10

II.  THE MOTION TO DISMISS SHOULD BE DECIDED BEFORE THE COURT
     CONSIDERS THE MOTION FOR PRELIMINARY APPROVAL ............................ 11

     A.   Before Any Partial Class Settlement May Be Approved, The Court Must
          Determine, For Settlement Purposes, That Plaintiffs Meet the
          Requirements of Rule 23 .................................................................................. 11

     B.   Gordon And Tauber Are Subject to Unique and Dispositive Defenses That
          Doom The Amended Complaint And Their Ability To Represent The
          Putative Class ................................................................................................... 12

          1.   Gordon Does Not Have Standing Because His Single Sale
               Occurred After the Corrective Disclosure ............................................. 14

          2.   Tauber Does Not Have Standing Because He Was An In-And-Out
               Trader, A Net Purchaser, and Because He Does Not Sufficiently
               Allege Reliance ...................................................................................... 14

          3.   Neither Gordon Nor Tauber Are Contemporaneous Traders ................... 16

          4.   Gordon and Tauber Are Both Subject to Unique Defenses And
               May Not Be Appointed Class Representatives ........................................ 17

III. THE SETTLEMENT AGREEMENT SHOULD NOT IMPAIR ANY OF THE
     SONAR DEFENDANTS' RIGHTS TO DISCOVERY ................................................ 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Bank of Am. Corp. Securities, Derivative & ERISA Litig.*, No. 09 MD 2058, 2011 U.S. Dist. LEXIS 84831 (S.D.N.Y. July 29, 2011) ............................................15

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ...................................................15, 16

*In re Bausch & Lomb Inc. Securities Litig.*, 244 F.R.D. 169 (W.D.N.Y. 2007) ...........................17

*Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011) ........................................17

*In re Bisys Securities Litig.*, 496 F. Supp. 2d 384 (S.D.N.Y. 2007), *aff'd* 305 Fed. Appx. 742 (2d Cir. 2009)..............................................................................................8, 9

*Brodzinsky v. FrontPoint Partner LLC*, 11-c 2012, U.S. Dist. LEXIS 59152 (D. Conn. Apr. 26, 2012) ...........................................................................................................16

*In re CornerStone Propane Partners, L.P. Securities Litig.*, No. C 03-2522, 2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ...........................................................15

*Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005)........................................................14

*Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36 (S.D.N.Y. 1975) .......................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011)..............18

*In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29 (2d Cir. 2009) ............12, 15, 18

*In re Herald, Primeo & Thema Securities Litig.*, 09 Civ. 289, 2011 U.S. Dist. LEXIS 105015 (S.D.N.Y. Sept. 15, 2011) ....................................................................11

*In re IMAX Securities Litig.*, 272 F.R.D. 138 (S.D.N.Y. 2010) ...............................12, 17

*Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615 (D.N.J. 2003)..........................................16

*Kreindler v. Sambo's Restaurant, Inc.*, No. 79 Civ. 4538, 1981 U.S. Dist. LEXIS 15445 (S.D.N.Y. Sept. 23, 1981) ...........................................................................16

*Medhekar v. United States District Court for the N. District of Cal.*, 99 F.3d 325 (9th Cir. 1996) ...............................................................................................................8

*In re Moody's Corp. Securities Litig.*, 274 F.R.D. 480 (S.D.N.Y. 2011) ...................................17

*Savitsky v. Mazzella*, 210 Fed. Appx. 71 (2d Cir. 2006) ...................................................10

*In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003)..........................................16

*Shapiro v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 70 Civ. 3653, 1975 U.S. Dist. LEXIS 14923 (S.D.N.Y. Dec. 9, 1975).............................................................14

*In re SMART Techs. Inc. Shareholder Litig.*, 11 Civ. 7673, 2013 U.S. Dist. LEXIS 4717 (S.D.N.Y. Jan. 11, 2013)..........................................................................................18

*Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88 (2d Cir. 1981)...............................17

## FEDERAL STATUTES

15 U.S.C. § 78u-4(b)(3)(B) (2012)....................................................................................7, 8

Fed. R. Civ. P. 15(a) ..........................................................................................................10

Fed. R. Civ. P. 23(a) ..........................................................................................................12

## MISCELLANEOUS

MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2012) ........................................11

Defendants Sonar Capital Management, LLC ("Sonar") and Neil Druker ("Druker" and, together with Sonar, the "Sonar Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion For Preliminary Approval of Proposed Partial Class Action Settlement (the "Motion for Preliminary Approval").[1]

## PRELIMINARY STATEMENT

The non-settling Sonar Defendants take no position on the "fairness" of Co-Lead Plaintiffs Sidney Gordon's ("Gordon") and Jeffery Tauber's ("Tauber" and together with Gordon, "Plaintiffs") proposed settlement with defendant Noah Freeman ("Freeman") as set forth in the Stipulation and Agreement of Partial Class Settlement dated January 18, 2013 (the "Stipulation"). However, to the extent that Plaintiffs' proposal -- baked into the terms of their settlement agreement with Freeman -- seeks to defer the Court's determination of the *sub judice* motion to dismiss the Amended Complaint until <u>after</u> the final settlement hearing on the proposed partial settlement, which would take not place for many months, it should be rejected. Instead, the Sonar Defendants' motion to dismiss should be decided before the Motion for Preliminary Approval.

Knowing that the Amended Complaint is doomed, and without hope of pleading a legally cognizable claim at this point, Plaintiffs seek a lengthy deferral, *sine die*, on a ruling on the motion to dismiss (*see* Stipulation § 8.1). Plaintiffs do this so they can try to obtain discovery in the meantime from Freeman (a convicted felon whose credibility already has been

---

[1]     References are to Plaintiffs' Memorandum of Law in Support of the Motion for Preliminary Approval of Proposed Partial Class Action Settlement ("Pl. Mem."), and the Declaration of Brian C. Kerr in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Partial Class Action Settlement ("Kerr Dec.").

shattered at an earlier trial) to manufacture a third complaint.[2] At that stage, many months from now, Plaintiffs would then move the Court to amend their complaint yet again. This proposed arrangement contravenes the letter and the spirit of the Private Securities Litigation Reform Act ("PSLRA"), which prohibits discovery while a motion to dismiss is pending because a securities class action must rise or fall based on the knowledge that plaintiffs possess at the time of the pleading. In this action, the discovery stay is in effect, extensive briefing has taken place on the motions to dismiss the already-amended complaint, the motions were fully argued on June 19, 2012 and the Sonar Defendants are entitled to a decision on their motion, which they contend should be granted with prejudice.

Plaintiffs are also well aware that a decision granting the Sonar Defendants' motion to dismiss threatens their ability to be designated as class representatives. No class settlement can be approved until the Court first finds that the Plaintiffs are adequate and typical class representatives and not subject to unique defenses. But the same infirmities that doom Gordon's and Tauber's claims in the Amended Complaint – their inability to allege loss causation, contemporaneous trading or, in Tauber's case, reliance – inherently disqualify Gordon and Tauber as class representatives. Each is subject to unique defenses, and each has claims that are not typical of the class they purport to represent.

Plaintiffs' request to delay a decision on the fully briefed and argued motion is simply an improper maneuver to sidestep an adverse ruling on the motion to dismiss and shoulder through a class settlement that would otherwise never meet the requirements of Rule 23. By delaying a decision on the motion to dismiss until after the settlement is approved,

---

[2]     The Sonar Defendants note that while the Stipulation provides that Freeman will seek to have the Court defer a ruling on his motion to dismiss, Plaintiffs have evinced an intent to seek a

Plaintiffs not only deprive the Sonar Defendants of the decision they are entitled to receive on their motion but ask the Court to engage in a feat of legal fiction by deciding that Gordon and Tauber are adequate class representatives.

As set forth fully in the Sonar Defendants' motion to dismiss, neither Gordon nor Tauber – who seek to represent an unusual putative class of sellers of Sigma Designs, Inc. ("Sigma") stock[3] – can sustain a claim arising from the purported insider trading in Sigma as alleged in the Amended Complaint. The Plaintiffs allege that defendant Freeman obtained positive material non-public information about Sigma's second quarter performance, and that Freeman's employer, Sonar, then purchased Sigma stock. When Sigma publicly disclosed its performance on August 29, 2007, its stock price jumped. (*See infra* at 13-15.) Gordon and Tauber claim that they sold shares of Sigma while the stock price was artificially deflated (because the positive inside information was, quite properly, not disclosed to the market) and thus were harmed.

But the timing and nature of Gordon's and Tauber's trades in Sigma stock reveal that, as a matter of law, neither suffered a cognizable loss due to any purported violation of a duty to abstain or disclose material, non-public information about Sigma. Gordon made his

---

deferral of Sonar Defendants' motion as well. *See* Affidavit of Mark J. Hyland, sworn to February 1, 2013 ("Hyland Aff."), Ex. A.

[3]     It is extremely unusual for a class of purported sellers of a publicly traded stock to assert insider trading claims. The usual class action, of course, involves the concealment of bad news that should have been made public by insiders, and results in a buyer class that purchased at artificially higher prices and were harmed when the market price dropped after the bad news was revealed. The Plaintiffs here allege the class was harmed when they sold shares at prices they allege were artificially deflated because the market was unaware of material positive non-public information, which later was revealed. In such a case, as here, the market behaved as it should, *i.e.*, unaware of the good news that properly was not made public. In the case of buyer claims, the market does not behave as it should – the stock is priced at an artificially high price and thus the buyer class really is harmed. Even if this case somehow could proceed beyond a motion to

single sale of 500 shares of Sigma stock four weeks <u>after</u> the August 29, 2007 corrective

disclosure.  Tauber, in contrast, was a hyperactive "in-and-out" trader, buying and selling tens of

thousands of Sigma shares throughout the purported class period, and ending the class period as

a net purchaser owning 15,790 <u>more</u> shares of Sigma than he began with.  (*See infra* at 14.)

Tauber's bizarre trading activity also reveals that on all but one of his 114 trades, he did not buy

or sell Sigma at or near the market price at all, and thus he cannot obtain the presumption of

reliance on the market price to make out his securities fraud claim.  (*See infra* at 15-16.)

       Furthermore, the Amended Complaint fails to allege that either Gordon or Tauber

made any sales of Sigma stock within five to seven days of a Sonar purchase, and thus cannot

allege they were contemporaneous traders under Second Circuit precedent.  Because of these

fatal defects, as well as other pleading deficiencies, neither Gordon nor Tauber can state a claim

and the extant Amended Complaint should be dismissed with prejudice.  And, for these very

same reasons, neither Gordon nor Tauber may be deemed an adequate or typical class

representative because they are each subject to unique defenses that threaten to become the focus

of this litigation.

       Therefore, Sonar Defendants respectfully request that the instant motion for

preliminary approval be denied, or in the alternative, deferred until the Court issues a ruling on

the pending motion to dismiss.  Furthermore, to the extent that certain provisions of the

Stipulation purport to impair the Sonar Defendants' ability to obtain discovery in this action,

they should be stricken.

---

dismiss, the Plaintiffs would have a host of problems proving loss causation at a hearing on the
merits.

## PROCEDURAL HISTORY

Plaintiff Sidney Gordon filed the initial Class Action Complaint in this action on December 29, 2011. On March 2, 2012, plaintiff Gordon filed a motion to be appointed lead plaintiff. On March 5, 2012, Jeffery Tauber also filed a motion to be appointed lead plaintiff. Gordon and Tauber then submitted an Amended Motion to be Appointed Co-Lead Plaintiffs on March 16, 2012. After a March 29, 2012 hearing on the motion (*see* March 29, 2012 Transcript (Hyland Aff. Ex. B)), the Court appointed Gordon and Tauber Co-Lead Plaintiffs. *See* April 5, 2012 Order at 4 (Hyland Aff. Ex. C).

On April 24, 2012, Plaintiffs filed an Amended Complaint alleging securities law violations under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, Section 20A of the Exchange Act, Section 20(a) of the Exchange Act, as well as state law claims of fraudulent transfer and unjust enrichment. On May 15, 2012, the Sonar Defendants and Freeman filed their motions to dismiss the Amended Complaint.[4] On June 19, 2012, the Court heard oral argument on the motions to dismiss (*see* June 19, 2012 Transcript (Hyland Aff. Ex. D)), and the motions have been *sub judice* since that date.

On January 2, 2013, Plaintiffs' counsel contacted counsel for the Sonar Defendants and informed them that they had reached a settlement with defendant Freeman. Plaintiffs' counsel also represented that they planned to move for preliminary approval of the settlement, and "to request that the Court defer any action on the pending motions to dismiss the

---

[4]      References are to the Sonar Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint ("Sonar Mem.") (Docket No. 43), the Affidavit of Mark J. Hyland sworn to May 15, 2012 ("May 15, 2012 Hyland Aff.") (Docket No. 44), and the Sonar Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Class Action Complaint ("Sonar Reply") (Docket No. 51); and to the Memorandum of Law of Defendant Noah Freeman in Support of His Motion to Dismiss the Amended Class Action Complaint ("Freeman Mem.") (Docket No. 41).

Consolidated Amended Complaint until after the court acts on the Motion for Preliminary Approval and on a motion to amend the complaint which Co-Lead Plaintiffs would plan to file shortly after the Motion for Preliminary Approval is allowed." Hyland Aff. Ex. A.

Pursuant to a briefing scheduled established during a conference call with Chambers, on January 18, 2013, Plaintiffs filed the instant Motion for Preliminary Approval. As set forth in the Stipulation, the terms of the settlement include a payment caused to be made by Freeman of $550,000 and his agreement to provide Plaintiffs with information about trading in Sigma and the allegations in the Amended Complaint, including documents and making himself available for interviews. Because no class has been certified in this action, Plaintiffs now ask the Court to certify, for settlement purposes, a class consisting of

> all Persons (other than those Persons who timely and validly request exclusion from the Settlement Class) who sold shares of Sigma common stock from July 13, 2007 through and including November 28, 2007, but excluding from this definition the (1) Defendants; (2) members of the immediate family of the Individual Defendants; (3) any subsidiaries or affiliates of the Defendants; (4) any person or entity who is, or was during the Settlement Class Period, an investor in or partner, officer, director, employee or controlling person of the Defendants; (5) any entity in which any of the Defendants has a controlling interest; and (6) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified above.

Pl. Mem. at 3-4; *see also* Stipulation at § 1.23 (Kerr Dec. Ex. A).

As part of the Stipulation, Freeman has agreed to ask the Court to postpone a determination of his motion to dismiss until the Settlement Hearing. *See* Stipulation at § 8.1. The Stipulation further provides, among other things, that "[i]n the event this Stipulation does not receive Preliminary Approval from the Court, Lead Counsel and Plaintiffs shall be required promptly to return <u>and/or destroy</u> any Cooperation Information and shall be precluded from using any Cooperation Information . . ." (emphasis added). *Id.* at § 2.9.

# ARGUMENT

## I.

## PLAINTIFFS MUST ESTABLISH THEIR RIGHT TO PROCEED WITH THEIR CLAIMS BASED ON THE EXTANT AMENDED COMPLAINT

### A. To Delay A Ruling On The Motion To Dismiss Until After The Partial Settlement Is Effective Contravenes The PSLRA

As part of the Stipulation, Freeman has agreed to ask the Court to postpone a determination of his motion to dismiss until the final Settlement Hearing. *See* Stipulation at § 8.1. In their communications with the Sonar Defendants, Plaintiffs have stated that they will also seek to stay all of the proceedings on the motion to dismiss – which would include the Sonar Defendants' motion as well – until after the settlement is approved. *See* Hyland Aff. Ex A. This would amount to a delay of many months. Under the Proposed Order appended to the Stipulation, notice of the settlement would be sent to the putative class within 60 days. *See* Stipulation, Ex. A ¶ 8(b) (Kerr Dec., Ex. A). Then the class members would have 120 days in which to file any objections or opt out of the settlement class. *Id.* at ¶¶ 11, 13, 15. Thereafter, a full settlement hearing would be held. For the settlement terms to become effective, Freeman would have to complete all cooperation requirements under the Stipulation (presumably to Plaintiffs' counsels' satisfaction), the Court would have to enter judgment approving the partial class settlement and the judgment would have to become final. *See* Stipulation at § 7. All told, this process will take six months to a year.

Plaintiffs propose these procedures because they want, and it would give them, free one-way discovery from Freeman, a convicted felon, after which they would seek to amend the Amended Complaint yet again to try to concoct new claims against the Sonar Defendants. But this would turn the PSLRA's discovery stay, and the Congressional intent behind it, on its head. *See* 15 U.S.C. § 78u-4(b)(3)(B) (2012). Under the PSLRA, "all discovery and other

proceedings shall be stayed during the pendency of any motion to dismiss . . . " *Id.* (emphasis added); *see also* June 19, 2012 Tr. at 43 (Hyland Aff. Ex. D).   "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by defendants after the action has been filed." *Medhekar v. United States Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996). Indeed, as this Court has acknowledged, "the PSLRA effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's *scienter* prior to obtaining discovery."   *In re Bisys Secs. Litig.*, 496 F. Supp. 2d 384, 387 (S.D.N.Y. 2007) (Rakoff, J.), *aff'd sub nom. Pub. Emps. Ret. Ass'n of N.M. v. PricewaterhouseCoopers LLP*, 305 Fed. Appx. 742 (2d Cir. 2009). Here, Plaintiffs cannot meet this burden, as demonstrated in the Sonar Defendants' motion to dismiss.

> *In re Bisys* is instructive.   There, plaintiffs commenced a securities class action asserting claims against Bisys, its current and former officers and directors, and its independent auditor PricewaterhouseCoopers ("PwC").   Defendants moved to dismiss.   PwC's motion to dismiss the complaint was granted with prejudice, but the case continued with respect to Bisys and the other defendants.   Discovery took place and ultimately a settlement was reached with the remaining defendants.   Plaintiffs then sought to amend the complaint to reassert claims against PwC based upon the evidence it had discovered after PwC was dismissed from the action.   This Court, in denying plaintiffs' request, found that

> > . . . to reinstate the claims against PwC under these circumstances would defeat one of the central aims of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737 (1995).   Specifically, that legislation, in an effort to "filter out strike suits" and reduce the litigation burden for defendants, imposed more stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court.   In so doing, the PSLRA effectively shifted the

burden to plaintiffs to acquire particularized knowledge of a party's scienter prior to obtaining discovery. . . .

It would wholly defeat this policy to allow plaintiffs who failed as to a given defendant to sustain their pleading burden at the outset of the case to wait until all discovery in the rest of the case was completed and then add that defendant back into the case. If plaintiffs could not allege fraud with specificity as to PwC, they should not have included PwC as a defendant in the original complaint. They chose to do so anyway, thereby running the risk that their claims would be dismissed, which is exactly what happened. Having precipitously tried to pluck the fruit from the tree of knowledge when it was not yet ripe, they are in no position to now demand a second bite at the apple.

*Id.* at 387 (internal citations and quotations omitted).

Here, Plaintiffs have commenced a defective action, and they have used the threat and risks of continued litigation to get Freeman to give them the "information" they would have had no way to obtain. To be sure, Plaintiffs' case against Freeman is fundamentally different from the case against the Sonar Defendants. Freeman was a rogue and dishonest trader who now stands convicted and whose credibility was shattered at an earlier trial. And he also seems to have shielded his assets, as the proposed settlement payment appears to be coming from a trust, making the ultimate success of obtaining a recovery in this action against him more difficult. *See* Stipulation §§ 1.18 ("'Released Parties' means . . . any trust as to which Freeman is the trustee, settlor or beneficiary"); 2.1 ("Freeman shall pay or cause to be paid . . ."). He thus seeks to further shield his substantial assets by agreeing to tell a story about the Sonar Defendants. But the Court here should decide in the first instance whether Plaintiffs have in their second pleading stated a claim. If the Court finds that the Amended Complaint is fundamentally flawed such that it may not be repleaded – as the Sonar Defendants urge it to do – then the Amended Complaint should be dismissed with prejudice. The extant Amended Complaint must stand or fall on its own now -- not six months or more from now after Plaintiffs maybe get "discovery" that the

9

PSLRA prohibits.  Thus, to the extent that Plaintiffs are seeking to delay a decision on the Sonar Defendants' motion to dismiss until after the settlement is approved, such a request is invalid and should be rejected.

### B.   Any Amendment Based On Freeman's Cooperation Information Would Be Futile

Plaintiffs' request for a *sine die* deferral on a decision on the motion to dismiss here is tantamount to a motion for leave to amend that does not meet the requirements of Fed. R. Civ. P. 15(a).  "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile."  *Savitsky v. Mazzella*, 210 Fed. Appx. 71, 72 (2d Cir. 2006) (internal citations omitted).  Here, any amendment would be futile.  Even if Freeman were to provide Plaintiffs with all sorts of salacious details about his purported misconduct, no information Freeman can provide can change the nature and timing of Gordon's and Tauber's trading activity during the class period.  No feat of legal craftsmanship can alter the fact that Gordon made his single sale four weeks <u>after</u> the August 29, 2007 corrective disclosure, when the market had jumped to absorb the good news that Plaintiffs say the Sonar Defendants had used to trade.  Nor can any information residing in Freeman's head change the fact that Tauber was a net buyer, a hyperactive in-and-out trader, and transacted in Sigma shares at prices well outside of the market range.  Sonar Mem. at 11.  He surely cannot represent a class of sellers.  Because Plaintiffs' flaws are incurable, no delay in determining the motion is justified.

## II.

### THE MOTION TO DISMISS SHOULD BE DECIDED BEFORE THE COURT CONSIDERS THE MOTION FOR PRELIMINARY APPROVAL

**A.  Before Any Partial Class Settlement May Be Approved, The Court Must Determine, For Settlement Purposes, That Plaintiffs Meet the Requirements of Rule 23**

In considering the Motion for Preliminary Approval of this pre-discovery, pre-certification partial class settlement, the Court must satisfy itself with a "higher degree of scrutiny" that "there are no grounds to doubt [the settlement agreement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys), and [that] the settlement appears to fall within the range of possible approval." *In re Herald, Primeo & Thema Secs. Litig.*, 09 Civ. 289, 2011 U.S. Dist. LEXIS 105015 at *23-24 (S.D.N.Y. Sept. 15, 2011) (internal citations omitted).  And where, as here, "a settlement in a class action does not completely dispose of the action, the Court should scrutinize it closely regarding its effects on the future course of the litigation and the remaining parties." *Id.* at *24 (internal quotations omitted).

As part of their Motion for Preliminary Approval, Plaintiffs seek certification of a class for settlement purposes.  Pl. Mem. at 8-9.  In evaluating a motion for preliminary approval prior to class certification, the Court must satisfy itself that the requirements of Rule 23 are met. *See* MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2012).  Under Fed. R. Civ. P. 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative

11

parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (emphasis added).

The Sonar Defendants do not take a position on whether the terms of the partial class settlement are fair to the purported class and reserve all of their rights and arguments in respect of any future class certification motion, but observe, as set forth *infra* Section II.B, that Plaintiffs cannot be deemed adequate class representatives for settlement purposes or otherwise.

### B. Gordon And Tauber Are Subject to Unique and Dispositive Defenses That Doom The Amended Complaint And Their Ability To Represent The Putative Class

To satisfy the typicality requirement and be named class representative, Gordon and Tauber each must show "that [their] claims are typical of the claims of the class, and that [they are] 'not subject to any unique defenses which threaten to become the focus of the litigation.'" *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) ((quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009)). Gordon and Tauber cannot come close to meeting this standard, even for settlement purposes, and indeed Plaintiffs give it nothing but lip service in their brief. *See* Pl. Mem. at 11-12.

Plaintiffs summarily assert that Gordon and Tauber satisfy the typicality and adequacy requirements of Rule 23, and ask that the Court enter an order confirming as much. *See* Proposed Order at ¶ 3 (Kerr Dec. Ex. A). Tellingly, Plaintiffs conspicuously ignore the Sonar Defendants' arguments on the motion to dismiss that Gordon and Tauber lack standing and cannot show loss causation and reliance. Sonar Mem. 10, 12, 22. These defects are relevant not only on a motion to dismiss, but also in determining whether Gordon and Tauber are appropriate class representatives.

Plaintiffs know that they would never be able to get approved as class representatives after an adverse ruling on the motion to dismiss. So they seek to distract the

Court with a $550,000 payment to the class (which would see only approximately $366,000 after Plaintiffs' counsel pay themselves), hope to gain free discovery in the process, effectively end-running the PSLRA. They are not entitled to that relief. The Amended Complaint is under attack by a *sub judice* motion to dismiss that the Sonar Defendants contend should be granted with prejudice. The Sonar Defendants have already demonstrated that each Plaintiff simply cannot plead a securities fraud claim and that each as a matter of law is subject to unique defenses that cannot be overcome. No class settlement can be approved until the Court first finds that the Plaintiffs are adequate and typical class representatives and not subject to unique defenses. By delaying a decision on the motion to dismiss, the Plaintiffs ask the Court to ignore the Sonar Defendants' fully briefed and argued motion and engage in a feat of legal fiction by deciding that Gordon and Tauber somehow are adequate class representatives.[5] The Court should not set the pending motion to the side so that Plaintiffs can push through a partial settlement that they may not even have the authority to make on behalf of the putative class.

As fully set forth in the Sonar Defendants' motion to dismiss, neither Gordon nor Tauber have standing to bring their individual claims here because they do not allege they suffered a loss, do not allege that they were contemporaneous traders with Sonar and, in the case of Tauber, do not sufficiently allege that he relied on the market price of Sigma stock.[6] These defects are fatal to their claims, as well as their ability to represent a putative class.

---

[5]     For the avoidance of doubt, the Sonar Defendants contend that any decision on the Motion for Partial Approval should be without prejudice to all of their rights and defenses on any current and any future motions, including but not limited to the motion to dismiss, summary judgment, class certification or otherwise.

[6]     The Sonar Defendants' arguments on the motion to dismiss are set forth fully in their moving papers and are summarized, in pertinent part, below.

1.   **Gordon Does Not Have Standing Because His Single Sale Occurred After the Corrective Disclosure**

Plaintiff Gordon sold his Sigma stock on September 28, 2007 -- four weeks *after* Sigma publicly disclosed on August 29, 2007 its better than expected second quarter results (*compare* Am. Compl. ¶¶ 10, 62 *and* 98) and after the price of Sigma shares had further increased. *See* Sonar Mem. at 6. The August 29, 2007 "corrective disclosure" ended any purported violation of the duty to abstain or disclose the July 2007 inside tip. *See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 70 Civ. 3653, 1975 U.S. Dist. LEXIS 14923, * 10 (S.D.N.Y. Dec. 9, 1975) ("the public [was] restored to its position of equal access by circulation of the material information, [and] the duty to abstain or disclose [was] abrogated. The breach which occurred with the first disobedient sale likewise terminate[d]."); *see also Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y. 1975). Because Gordon does not allege that he sold Sigma during a period where any of Defendants were in violation of a duty to abstain or disclose, he cannot allege any losses arising from an alleged securities law violation and thus cannot sustain a claim. Sonar Mem. at 10-11.

2.   **Tauber Does Not Have Standing Because He Was An In-And-Out Trader, A Net Purchaser, and Because He Does Not Sufficiently Allege Reliance**

In contrast to Gordon, plaintiff Tauber bought and sold tens of thousands of Sigma shares between July and November 2007, ending the purported class period as a net purchaser owning 15,790 more Sigma shares than he sold. *See* May 15, 2012 Hyland Aff. ¶ 2; Sonar Mem. at 11.

Tauber is what is known as an "in and out" trader and, under the Supreme Court's ruling in *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336 (2005), he did not suffer any losses because he completely offset his sales with equal or greater purchases of Sigma stock on the same day or within a short amount of time and before any price correction. Sonar Mem. at 11-

12.   Applying these principles, courts have found that "in and out" traders, like Tauber, will not be able to prove loss causation because they exited their positions before the price correction caused a loss.  *See, e.g., In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d at 41; *In re Bank of Am. Corp. Secs., Derivative & ERISA Litig.*, No. 09 MD 2058, 2011 U.S. Dist. LEXIS 84831 at *52-54 (S.D.N.Y. July 29, 2011) (plaintiff did not dispute that it "cannot satisfy the loss causation standard of Section 10(b) because it sold its shares prior to BofA's issuance of corrective disclosures"); *In re CornerStone Propane Partners, L.P. Secs. Litig.*, No. C 03-2522, 2006 U.S. Dist. LEXIS 25819 at *27-28 (N.D. Cal. May 3, 2006) ("[u]nder *Dura* there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to [the corrective] disclosure, and thus these plaintiffs may not recover at all.").  Thus, Tauber cannot state a claim, and no feat of legal craftsmanship can save him.

Furthermore, on all but one of his 114 trades, Tauber transacted at prices well outside the market range and, on multiple occasions, bought at prices higher than the market and sold at prices lower than the market.  *See* Sonar Mem. at 6-7, 11, 13; May 15, 2012 Hyland Aff. ¶¶ 2, 6-7.  That pattern – buying higher than the market and selling lower than the market – is irrational.

Because Tauber completely ignored the market price in trading Sigma shares, he is not entitled to the presumption of reliance on the integrity of the market price as articulated in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).  Under *Basic*, an investor who buys or sells stock *at the price set by the market* is presumed to have relied on the integrity of that market price, *i.e.*, that the market price reflects all publicly available information and, hence, all material misrepresentations.  *Id.* at 247.  But, "[a]ny showing that severs the link between the alleged misrepresentation and . . . the price received (or paid) by the plaintiff," annuls the presumption

because "the basis for finding that the fraud had been transmitted through market price would be gone." *Id.* at 248. Because Tauber's trading activity demonstrates that he did not rely on the market price in deciding to buy or sell Sigma, he is not entitled to a presumption of reliance based on the integrity of the market price. *See, e.g., Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 632-33 (D.N.J. 2003) (short sellers, who assume that the market price does *not* reflect the true value of the stock, are not entitled to the presumption of reliance provided by the fraud on the market theory); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (day traders, who typically focus on technical price movements rather than price, do not get the benefit of the reliance presumption). Because there are no other allegations of reliance here (*see* Am. Compl. ¶ 98), Tauber cannot state a claim.

### 3.      Neither Gordon Nor Tauber Are Contemporaneous Traders

Neither Plaintiff alleges that he sold Sigma stock contemporaneously with Sonar's alleged purchases of Sigma shares on July 13 and 17 and September 18, 2007. Am. Compl. ¶¶ 57, 59, 65. Gordon's single sale of Sigma on September 28, 2007 occurred 10 days after the alleged September 18, 2007 Sonar purchase. Sonar Mem. at 21-22. And the closest Tauber can get is 13 days between his July 30, 2007 sale and Sonar's July 17, 2007 purchase. *Id*. at 22. Courts in the Second Circuit require trades to be made within a five to seven day period to constitute a contemporaneous trade under Section 20A. *See Brodzinsky v. FrontPoint Partner LLC*, 11-cv-10, 2012 U.S. Dist. LEXIS 59152, *11-12 (D. Conn. Apr. 26, 2012) (noting that "district court decisions within the Second Circuit have tended to find that five or even seven days between the trades is a reasonable period" and finding that two weeks' difference between trades not contemporaneous); *Kreindler v. Sambo's Rest., Inc.*, No. 79 Civ. 4538, 1981 U.S. Dist. LEXIS 15445, *12-13 (S.D.N.Y. Sept. 23, 1981) (purchase seven trading days after defendant's sale not contemporaneous). Because "[a]ny duty of disclosure is owed only to those investors

trading contemporaneously with the insider; non-contemporaneous traders do not require

protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading

with someone who has superior access to information." *Wilson v. Comtech Telecomms. Corp.*,

648 F.2d 88, 94-95 (2d Cir. 1981).  Because neither Gordon nor Tauber alleges he

contemporaneously traded with Sonar, neither has standing to bring a claim under Section 20A.

Freeman himself made this "standing" argument a lynchpin of his own motion to dismiss.  *See*

Freeman Mem. at 10-12.

### 4.     Gordon and Tauber Are Both Subject to Unique Defenses And May Not Be Appointed Class Representatives

Gordon's and Tauber's failure to allege loss causation, reliance and standing to

bring their various securities law claims not only requires dismissal of their claims, but also

demonstrates that they are subject to unique defenses that preclude them from representing the

putative class as class representatives under Rule 23.  Courts routinely find that in-and-out

traders or net sellers (in a purchaser class) are inadequate class representatives because they are

subject to unique defenses.  *See, e.g., In re Moody's Corp. Secs. Litig.*, 274 F.R.D. 480, 487-88

(S.D.N.Y. 2011) (lead plaintiffs who were in-and-out traders cannot serve as class

representatives); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011)

(denying in-and-out trader's application to be appointed lead plaintiff because it is subject to

unique adequacy and typicality defenses that render it an inadequate class representatives); *In re

Bausch & Lomb Inc. Secs. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (denying lead

plaintiff application by net seller because it potentially benefited from the alleged securities fraud

and thus presented a unique defense that would render it inadequate to represent the class (citing

cases)).  Furthermore, courts have found that a plaintiff who cannot establish loss causation is

subject to unique defenses and cannot be certified as class representative.  *See In re IMAX Secs.*

*Litig.*, 272 F.R.D. at 155 ("In sum, because we find that Snow Capital cannot establish loss

causation -- and, at a minimum, is subject to unique defenses which may threaten to become the

focus of the litigation . . . we cannot certify a class with it as class representative.").[7]

      In fact, this is precisely why Gordon and Tauber decided to team up as Co-Lead

Plaintiffs and not to oppose each other's lead plaintiff motion.[8]  *See* April 5, 2012 Order at 4

---

[7]      The Supreme Court's decision in *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) does not insulate Plaintiffs here.  In *Halliburton*, the Court found that plaintiffs did not need to prove loss causation for purposes of a class certification motion. *Halliburton* rejected the Fifth Circuit's position that a plaintiff had to prove loss causation before obtaining the fraud on the market presumption of reliance as articulated in *Basic*.  *Halliburton* does not, however, require the court to ignore the fact that the proposed class representatives are subject to unique defenses, even when those defenses relate to issues of loss causation or reliance.  Indeed, acknowledging that a plaintiff is subject to an atypical defense relating to loss causation does not require an inquiry into the merits of the loss causation argument itself.  *In re SMART Techs. Inc. S'holder Litig.*, 11 Civ. 7673, 2013 U.S. Dist. LEXIS 4717, *25, n.15 (S.D.N.Y. Jan. 11, 2013) (*Halliburton* does not preclude the court from finding that in-and-out purchasers are subject to a unique defense on a class certification motion, excluding in-and-out purchasers from the class); *see also In re Flag Telecom.*, 574 F.3d at 39-40 (". . .whether or not Plaintiffs here have met their burden in establishing that the in-and-out traders will be able to show loss causation is relevant to Rule 23(a) for reasons that do not implicate either predominance or *Basic*.  Since the lower court appointed Hunter, an in-and-out trader, as Class Representative, Judge Conner was required to find, by a preponderance of the evidence, that he is both an adequate and typical representative of the class and not subject to any 'unique defenses which threaten to become the focus of the litigation.'").

[8]      Indeed, as Plaintiffs' counsel explained to the court:

> "in this case, there are going to be competing – between the defendants and the plaintiffs – competing legal theories as to how to measure compensation to [the] class. . . The plaintiff's [sic] believe . . . [that] to air those arguments in the context of a lead plaintiff motion where many of the issues that would be raised by the parties in arguing who is bigger, would basically are merits issues that would, . . . in most cases, be questions of first impression for the Court. . . . To have the plaintiffs take positions in order to win the day on the [lead] plaintiff motion . . . [would] give the defendants a preview or, in fact, educate them over what kind of arguments they should make . . . (March 29, 2012 Tr. 33:13-34:9 (Hyland Aff. Ex. B)).

> . . .

> if we had come here today as adversaries, each trying to get you to appoint our respective client as lead plaintiff, it became perfectly apparent that we would be doing the defendant's [sic] job for them in front of you and that we would be

(Hyland Aff. Ex. C ("at the hearing on the motion, plaintiffs' counsel suggested, albeit coyly, that arguments that might be made by defendants as to whether one or the other of the proposed lead plaintiffs was inadequate to represent the entire class would be mooted by their joint representation.")).

Any ruling that Gordon and Tauber can serve as class representatives – even for settlement purposes only – would require the Court to completely ignore the arguments made on the pending motion to dismiss, which it should not do.  The Motion For Preliminary Approval thus should be denied or, in the alternative, delayed until the motion to dismiss is decided.

## III.

### THE SETTLEMENT AGREEMENT SHOULD NOT IMPAIR ANY OF THE SONAR DEFENDANTS' RIGHTS TO DISCOVERY

In addition to the procedural infirmities of the Motion for Preliminary Approval, certain provisions of the Stipulation have the potential to interfere with the Sonar Defendants rights to discovery.  For example, Section 2.9 provides that "[i]n the event this Stipulation does not receive Preliminary Approval from the Court, Lead Counsel and Plaintiffs shall be required promptly to return and/or destroy any Cooperation Information and shall be precluded from using any Cooperation Information . . ." (emphasis added).  To the extent this provision requires the destruction of documents that relate to this action, it is tantamount to an agreement to spoliate evidence and should be stricken.  The Sonar Defendants' ability to obtain discovery to support its defenses in this case should not be impaired.

---

taking positions that, regardless of . . . whose client ultimately prevailed and became appointed co-lead plaintiff would then regret that there would be this transcript of this hearing where we would have been taking legal positions that were no longer in the interest of the plaintiff in the class. (*Id.* at 37:15-24.)

19

## CONCLUSION

For all the foregoing reasons, the Sonar Defendants respectfully request that the Court deny Co-Lead Plaintiffs' Motion For Preliminary Approval of the Partial Class Settlement or, in the alternative, defer a decision on the motion until after the Court has ruled on the Sonar Defendants' motion to dismiss, currently *sub judice*, and award such other relief as the Court deems just and proper.

New York, New York
February 1, 2013

Respectfully submitted,

SEWARD & KISSEL LLP

By: _____
Mark J. Hyland
Julia C. Spivack
Michael W. Broz

One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Defendants Sonar Capital
Management LLC and Neil Druker*

SK 22189 0004 1351878 v6

20