UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SIDNEY GORDON,                          :
                                        :        11 Civ. 9665 (JSR)
        Plaintiff,                      :
                                        :        OPINION AND ORDER
                                        :
        -v-                             :
                                        :
SONAR CAPITAL MANAGEMENT LLC, NOAH      :
FREEMAN, NEIL DRUKER, PRIMARY GLOBAL,   :
RESEARCH, LLC, THE JOHN DOE HEDGE       :
FUND(S), and JOHN AND JANE DOES 1       :
THROUGH 100,                            :
                                        :
        Defendants.                     :
----------------------------------------x



JED S. RAKOFF, U.S.D.J.

On December 29, 2011, plaintiff Sidney Gordon filed this class

action, bringing federal securities law claims and related state law

claims on behalf of a putative class of shareholders of Sigma

Designs, Inc. ("Sigma") who sold shares between July 13, 2007, and

November 28, 2007. On April 9, 2012, the Court appointed Gordon and

Jeffery Tauber as co-lead plaintiffs of the proposed class, see Mem.

Order, No. 11 Civ. 9665, ECF No. 34 (S.D.N.Y. Apr. 9, 2012), and the

co-plaintiffs filed an Amended Class Action Complaint (the

"Complaint") on April 24, 2012.

According to the Complaint, defendant Primary Global Research

("PGR"), while holding itself out as an "independent investment

research firm," was actually in the unlawful business of paying

persons with access to the confidential, non-public information of

publicly traded corporations to illegally disclose that information

1

to PGR's customers. Compl. ¶ 27.[1] The Complaint further alleges that defendant Noah Freeman, a managing director of defendant Sonar Capital Management, LLC ("Sonar"), obtained in 2006 and 2007 material, non-public information about Sigma from a tipper working for PGR, who in turn obtained that information from a relative who worked at Sigma. Id. ¶¶ 45-46. On the basis of this information, Freeman recommended Sigma's securities to defendant Neil Druker, Sonar's Chief Executive Officer and portfolio manager, who then purchased shares of Sigma on behalf of numerous hedge funds affiliated with Sonar (the "John Doe Hedge Funds"), which have also been named as defendants in this suit. Id. ¶¶ 41-42. In exchange for the information, Freeman and Druker caused Sonar to pay the PGR tipper $5,000 per month. Id. ¶ 47.

Based on these allegations, the Complaint asserts claims that (a) Freeman, Druker, Sonar, and the John Doe Hedge Funds engaged in insider trading in violation of sections 10(b) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t-1, and Rule 10b-5, 17 C.F.R. § 240.10b-5; and (b) Freeman and Druker controlled Sonar and the John Doe Hedge funds in connection with their unlawful insider trading activity, in violation of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The Complaint also alleges state law claims of unjust enrichment and fraudulent transfers.

---

[1] PGR eventually filed for bankruptcy protection, so all proceedings in this case against PGR have been stayed. See 11 U.S.C. § 362(a).

On May 15, 2012, defendants Druker and Sonar jointly, and Freeman separately, moved to dismiss the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. By "bottom-line" Order dated February 8, 2013, the Court granted the defendants' motions to dismiss, without prejudice to repleading.[2] See Order, No. 11 Civ. 9665, ECF No. 63 (S.D.N.Y. Feb. 8, 2013). This Opinion and Order explains the reasons for that decision and directs the scheduling of any further pleadings and proceedings.

On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Mere conclusory statements in a complaint and "formulaic recitation of the elements of a cause of action" are insufficient. Twombly, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] Around the same time as the Court issued its bottom-line Order granting the motions to dismiss, plaintiffs and Freeman announced a proposed settlement of the class's claims against Freeman in exchange for Freeman's providing information and assistance to the class. See Order Granting Preliminary Approval of Partial Settlement, Granting Conditional Class Certification, and Providing for Notice, No. 11 Civ. 9665, ECF No. 65 (S.D.N.Y. Mar. 8, 2013). As a result, all claims against Freeman have now been dismissed. See Final Judgment and Order of Dismissal as to Defendant Freeman, No. 11 Civ. 9665, ECF No. 73 (S.D.N.Y. June 7, 2013).

alleged." Id.

To state a private civil claim under section 10(b), a plaintiff must allege: (1) that the defendant made a material misrepresentation or omission, (2) with scienter, i.e., a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or omission and thereby (5) suffered economic loss that was (6) caused by the misrepresentation or omission. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

In securities fraud cases, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "specify each statement [or omission] alleged to have been misleading, the reason or reasons why the statement [or omission] is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Rule 9(b) of the Federal Rules of Civil Procedure, which applies to allegations of fraud, requires much the same. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Finally, an insider trading case based, as this one is, on a "Dirks" theory of liability is an "omission" case, because it posits that the recipient (a "tippee") of material, non-public information from an insider (a "tipper") of a public company assumes the insider's fiduciary duty not to trade on the information at the

4

expense of the public company's shareholders unless the information is first disclosed. See Dirks v. SEC, 463 U.S. 646, 654-55 (1983). In such a case, the plaintiffs must show that: (1) the tipper possessed material, nonpublic information about his company; (2) the tipper in violation of a duty of trust and confidence owed by him to his company disclosed this information to the tippee; (3) the tippee traded in the tipper's company's securities while in possession of that non-public information; (4) the tippee knew or should have known that the tipper violated a relationship of trust or confidence by providing the non-public information; and (5) the tipper benefitted by the disclosure to the tippee. SEC v. Warde, 151 F.3d 42, 47 (2d Cir. 1998).

Defendants' first argument is directed at the last of the foregoing requirements. Specifically, defendants argue that the Complaint fails to state a claim for liability under Dirks because the Complaint fails to adequately allege that PGR provided a benefit to the Sigma source. As to this issue, the Complaint principally alleges that PGR conducted its business by seeking out company insiders and providing their non-public "tips" to its customers. See id. ¶ 27 ("[A] primary activity of Primary Global and its employees was to locate persons who had access to confidential or proprietary, non-public information about publicly traded corporations and to induce those persons to disclose that information to Primary Global's customers, in breach of their fiduciary duty . . . ."). But the only factual details that the Complaint proffers in support of

this allegation are those that relate to the information that the

PGR tipper obtained from an otherwise unidentified "relative" at

Sigma, and there is no statement of what benefit that relative

received, if anything, in return. See id. ¶ 45. Accordingly, the

section 10(b) claim, and the section 20(a) claim derived therefrom,

must be dismissed on the present pleading. However, as is customary,

such dismissal is in these circumstances without prejudice to

repleading. See Fed. R. Civ. P. 15(a)(2) ("The court should freely

give leave [to replead] when justice so requires."); Gissin v.

Endres, 739 F. Supp. 2d 488, 504 (S.D.N.Y. 2010) (noting that it is

"the usual practice upon granting a motion to dismiss to allow leave

to replead"). Indeed, given the arrangements now reached between

plaintiffs and Freeman, many specifics may now be available to

plaintiffs of which they were previously unaware.

Although the deficiency in the Complaint discussed above is

sufficient in itself to warrant dismissal of plaintiffs' federal

claims, it may be useful to all concerned to discuss some of the

other objections to the federal claims raised in the motions of the

remaining current defendants, Druker and Sonar.

Druker and Sonar next argue that the plaintiffs fail to plead

with the requisite specificity that their losses were caused by

Sonar's alleged insider trading in Sigma stock. See Dura Pharm., 544

U.S. at 345 (stating that the Securities Exchange Act seeks "not to

provide investors with broad insurance against market losses, but to

protect them against those economic losses that misrepresentations

6

[or, here, omissions] actually cause"). Here, plaintiffs' theory of liability is that the defendants purchased from the plaintiff class shares of Sigma stock at artificially deflated prices, as Sonar was in possession of material, non-public information indicating that Sigma's stock was undervalued at the time of the sale. For example, the Complaint alleges that in early July 2007, PGR "informed Freeman and Sonar that Sigma had entered into a contract to manufacture a computer chip for use by an American telecommunications company and that this was going to result in Sigma's 2007 second quarter sales and revenues to be significantly greater than expected by market analysts." Compl. ¶ 55.

These allegations, the Court finds, when combined with allegations that Sonar traded in shares of Sigma shortly after Freeman consulted with the tipper, id. ¶¶ 56-61, and that Sonar paid the PGR tipper, id. ¶ 47, are sufficient to plead loss causation up to August 29, 2007, when Sigma issued its second quarter earnings. Id. ¶ 62; see Elkind v. Ligget & Myers, Inc., 66 F.R.D. 36, 42 (S.D.N.Y. 1975) (noting that a tippee's liability "begins at the time 10b-5 is violated . . . and continues until the non-public material information . . . is effectively publicly disseminated"). The putative class, however, includes Sigma shareholders who sold shares between July 13, 2007, and November 28, 2007. Compl. ¶ 82. For the period after August 29, 2007, though, the Complaint only alleges a non-particularized claim that PGR "repeatedly and consistently communicated with Freeman and Sonar and provided them

7

with material, non-public information about Sigma." Id. ¶ 64. This allegation -- compared with the above-quoted, factually-specific allegation regarding what information was conveyed by the Sigma insider to PGR and then from PGR to Freeman in July 2007 -- lacks the specificity required, not only under the heightened pleading requirements of Rule 9(b) and the PSLRA, but also under the general requirements of Twombly and Iqbal. See Twombly, 550 U.S. at 555 (disregarding conclusory allegations in determining plausibility of a claim on a motion to dismiss). Even though the Complaint alleges that Freeman and the PGR tipper spoke on at least twenty occasions in this time period and that Sonar's trading in Sigma coincided with those communications, id. ¶¶ 64, 65, without more the Complaint provides insufficient particulars to give rise to an inference, sufficiently specific under the PSLRA, that the substance of those conversations entailed the passing of material, non-public information that caused specific trades. See 15 U.S.C. § 78u-4(b)(1) (requiring a securities plaintiff to "specify each statement [or omission] alleged to have been misleading [and] the reason or reasons why the statement [or omission] is misleading").

Because, moreover, co-plaintiff Gordon sold shares of Sigma only on September 28, 2007, Compl. ¶ 10, his claims relate only to the insufficiently pled time period of September-November 2007, and the Complaint's federal claims brought by Gordon must therefore be dismissed on this additional basis, albeit without prejudice to repleading. Likewise, to the extent that co-plaintiff Tauber relies

8

on his sales of stock after August 2007, see id. ¶ 11 (alleging, inter alia, sales on October 25, and November 15, 2007), those claims must also be dismissed, though again without prejudice.

As to the period prior to August 29, 2007, defendants argue that co-plaintiff Tauber has, even as to that period, failed to show loss causation as a matter of law because he in fact suffered no loss during the pre-disclosure period. Specifically, defendants have offered evidence (which the Court may consider under Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002), as integral to the Complaint) that Tauber purchased 15,790 more Sigma shares than he sold, and thus profited rather than lost from the allegedly artificially deflated stock price during the pre-disclosure period. Aff. of Mark J. Hyland dated May 15, 2012 ¶¶ 2-3; see In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 40 (2d Cir. 2009) ("[I]n order to prove loss causation, any plaintiff who sold their stock prior to . . . disclosure must prove that the loss they suffered was both foreseeable and caused by the 'materialization of the concealed risk.'").

It is not clear to the Court that Tauber's status as a "net buyer" necessarily precludes him from proving that Sonar's trading caused him to sell his shares at a deflated value. It is possible that the market-distorting "effect of a misrepresentation might well diminish over time, even without a corrective disclosure, and thus in-and-out traders in this circumstance would be able to prove loss causation." In re BearingPoint, Inc. Sec. Litig., 232 F.R.D. 534,

9

544 (E.D. Va. 2006). Indeed, the Second Circuit has held that "it may be 'premature for courts to attempt to determine whether in-and-out traders have suffered losses at the class certification stage of the game,'" Flag Telecom Holdings,, 574 F.3d at 39 (citation omitted), a fortiori supporting the notion that it would be premature to make this determination on a motion to dismiss. However, since, overall, the Complaint must be dismissed in any event, but without prejudice to repleading, resolution of this issue is appropriately deferred until the time of any such repleaded complaint.

This also applies to defendants' further argument that because Tauber traded at prices that fell outside the market range, he could not avail himself of the presumption that insider trading defrauds the market as a whole and thus has failed to allege reliance on the market price of Sigma stock. See Basic Inc. v. Levinson, 485 U.S. 224, 249 (1988) ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."). Defendants suggest that Tauber's frequent trading outside of the market range indicate that he may have been a short seller or a day trader disentitled to such a presumption.

That Tauber traded outside the market range does not, however, necessarily imply that he did not rely on the assumption that the market price reflected all available information. See Basic, 485

10

U.S. at 246-247 ("It has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'" (quoting Schlanger v. Four-Phase Sys. Inc., 555 F. Supp. 535, 538 (S.D.N.Y. 1982))); cf. Schleicher v. Wendt, No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *9 (S.D. Ind. Mar. 20, 2009) (applying the Basic presumption to short sellers on the ground that the sellers' "decisions about the value of the stock . . . can still be based on the integrity of the market price"). Moreover, the factual context in which Tauber traded is unclear: in addition to the defendants' assertion that Tauber may have been a day-trader or a short-seller, plaintiffs' counsel suggests that Tauber regularly traded after hours, so the prices at which he traded might in fact be within the market price range if after-hours prices were included. See Tr. of June 19, 2012 at 29:3-8. Accordingly, this issue may be revisited once any amended pleading is filed.

The remaining current defendants, Druker and Sonar, raise another important objection that may be addressed at this time, at least in part, viz., the claim that the Complaint fails to allege with adequate specificity that Druker and Sonar acted with scienter. See Dura Pharm., 544 U.S. at 345 (requiring that a complaint, to plead section 10(b) liability, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"). For an inference to qualify as sufficiently strong, "a reasonable person" must find it "at least as

11

strong as any opposing inference." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 326 (2007). Specifically, Druker and Sonar claim that plaintiffs fail to allege that they, as opposed to Freeman, actually knew that the information on which they traded was non-public information obtained in violation of the tipper's fiduciary duty. Druker and Sonar note in this regard that the SEC's February 8, 2011 complaint against Freeman, on which the Complaint relies for many of its factual allegations, mentioned neither Druker nor Sonar. They further argue that the Complaint fails to specifically allege that Freeman shared with Druker the information from PGR, that such information was non-public, or that it was received in violation of a fiduciary duty, rather than merely advising Druker as to which stocks to purchase.

As to Druker, the objection is well taken, subject, of course, to repleading. In particular, the Complaint alleges as to Druker only that Druker made final trading decisions after receiving recommendations from Freeman, Compl. ¶ 42, and that Druker caused Sonar to purchase large amounts of Sigma stock after Freeman received inside information, id. ¶ 65, but not that Druker had actual knowledge that Freeman's recommendations were based on inside information. In the absence of greater particularity from which it could be reasonably inferred that Druker knew that Freeman's recommendations were based on inside information, the Complaint's bare-bones allegations are insufficient to raise a strong inference of scienter as to Druker.

12

By contrast, the allegations are sufficient to impute scienter to Sonar, since Freeman concededly had such scienter and was a managing director of Sonar acting for its benefit. See Compl. ¶¶ 14, 42, 45.

Turning to the claim under section 20A, to state such a claim plaintiffs must "(1) plead a predicate insider trading violation of the Exchange Act . . . and (2) allege sufficient facts showing that the defendant traded the security at issue 'contemporaneously' with the plaintiff." In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (internal citations and quotation marks omitted). Given the foregoing discussion about the deficits in the section 10(b) claim, the section 20A claim must also be dismissed, without prejudice, for failure to meet the first element.

As to the second element, the Complaint alleges that plaintiff Tauber sold shares of Sigma on July 30 and August 16, 2007, Compl. ¶ 11, while defendant Sonar purchased shares of Sigma on July 13 and July 17, 2007. Id. ¶¶ 57, 59. The Complaint further alleges that Sonar purchased an additional $3.5 million in Sigma shares at unspecified times between July 13 and August 13, 2007. Compl. ¶¶ 57-61.

"Within the Second Circuit, courts have considered as contemporaneous trades that occurred within a reasonable period of time, usually within a few days of each other." Brodzinsky v. FrontPoint Partner LLC, No. 3:11cv10, 2012 WL 1468507, at *4 (D. Conn. Apr. 26, 2012). Defendants claim that, considering only the

13

actual dates alleged in the Complaint, Tauber's sales of Sigma stock were not conducted "within a few days" of Sonar's purchases, and therefore the Complaint fails to allege contemporaneous transactions for purposes of section 20A. Given the sparseness of the Complaint's allegations in this respect, the Court finds that the question of whether plaintiffs have satisfied the second element of their section 20A claim is best deferred to after the filing of any amended pleading.

The Court, however, rejects even now defendants' alternative argument that the Court should dismiss the section 20A claim as duplicative of the section 10(b) claim, or vice versa. Section 20A explicitly provides that "[n]othing in this section shall be construed to limit or condition the right of any person to bring an action to enforce a requirement of this chapter or the availability of any cause of action implied from a provision of this chapter." 15 U.S.C. § 78t-1(d); see also Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1131 (W.D. Mich. 1996) ("[R]emedies available under § 20A are cumulative to remedies available under § 10(b)."). Thus, plaintiffs may plead both claims, and section 20A places no "limit or condition" on the plaintiffs' right to damages under section 10(b).[3]

_____

[3] Defendants alternatively argue that section 20A's limitations, including the requirement of contemporaneous trading, should be applied to limit plaintiffs' section 10(b) claims, even if section 20A does not entirely preempt such claims. Although the Second Circuit has applied to both section 10(b) and section 20A claims the rule that "[a]ny duty of disclosure is owed only to those investors

14

Finally, as to the state law claims, the Complaint alleges that, after suspicions emerged that Sonar had engaged in insider trading, investors in the John Doe Hedge Funds ("John and Jane Does 1 Through 100") sought to redeem their investments. See Compl. ¶¶ 6, 77-81. Sonar honored those requests in full, failing to account for any potential liability to Sigma's shareholders and in effect liquidating Sonar's hedge funds, "including the profits obtained upon inside information in Sigma stock." Id. ¶ 6. In this way, the Complaint alleges that the investors' redemptions constituted fraudulent transfers, or, in the alternative, the investors received "illicit insider trading profits," which the plaintiff class claims should be returned to them under a theory of unjust enrichment. Id. ¶ 7.

Defendants Druker and Sonar challenge the sufficiency of these claims against the unidentified investor-defendants. To the extent the defendants rely on the dismissal of the plaintiffs' other claims to require dismissal of the fraudulent transfer claims – since there could be no need to reserve funds for litigation in the absence of viable claims – the Court finds this argument to have merit.

---

trading contemporaneously with the insider" Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 94-95 (1981), this issue is largely irrelevant at this point since the Court, as discussed above, dismissed plaintiffs' 10(b) claims on other grounds; but the issue can be revisited on repleading.

However, the amended pleading, if any, may cure this defect in part or in whole.[4]

Based on the foregoing reasons, the Court on February 8, 2013 granted defendants' motions to dismiss the Complaint, without prejudice to repleading. The parties are instructed to jointly call Chambers by no later than June 18, 2013 to set a schedule for any further pleadings and proceedings.

SO ORDERED.

Dated: New York, NY
June 12, 2013

JED S. RAKOFF, U.S.D.J.

---

[4] The Court however, rejects the moving defendants' other arguments for dismissal of the state law claims, as these defendants lack standing to attack the sufficiency of the claims that proceed only against the unnamed "John Doe" defendants. See Dover Ltd. v. A.B. Watley, Inc., No. 04 Civ. 7366, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (holding that, because defendant "has not been named as a defendant in any claim for relief other than Count I," he "lacks standing to attack the legal sufficiency of those other counts").