UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY GORDON and JEFFREY TAUBER,<br><br>                                                  Plaintiffs,<br><br>v.<br><br>SONAR CAPITAL MANAGEMENT LLC;<br>NOAH FREEMAN; NEIL DRUKER;<br>PRIMARY GLOBAL RESEARCH, LLC; SONAR<br>PARTNERS, LP; SONAR INSTITUTIONAL<br>FUND, LP; SONAR OVERSEAS FUND, LTD.;<br>and JOHN AND JANE DOES 1 THROUGH 100,<br><br>                                                  Defendants. | 11-cv-09665 (JSR) |

**DEFENDANTS SONAR CAPITAL MANAGEMENT LLC'S AND NEIL DRUKER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, N.Y. 10004

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................................... 1

Argument ..................................................................................................................................... 2

    A.    Plaintiffs Do Not Plead Reliance By Defendant Tauber And Loss Causation ................................................................................................................. 2

        1.    The Allegations in the SAC Are False ........................................................ 2

        2.    Plaintiffs Have Not Alleged That Tauber Could Have Suffered A Loss .................................................................................................................. 3

    B.    No Facts Show That The Disloyal Sigma Employee Was A Nguyen Relative ........................................................................................................................ 5

    C.    Plaintiffs Allegations Relating To The Seller Class Claims Are Patently Insufficient .................................................................................................................. 6

        1.    Plaintiffs Still Cannot Provide Particularized Information About The Purported Third Quarter Tips .............................................................. 6

        2.    The Purported MNPI Was Publicly Disseminated On August 28 and 29, 2007 ............................................................................................... 7

        3.    Plaintiffs' Conclusory Allegations Concerning Druker's Scienter Fail ............................................................................................................ 7

    D.    Plaintiffs' New Buyer Class Claims are Time Barred and Unsupportable ............ 8

        1.    The New Buyer Class Claims Do Not "Relate Back" ............................... 8

        2.    Plaintiffs Fail to Sufficiently Allege Actionable Tips .............................. 9

    E.    Plaintiffs Fail To Allege Control Person Liability Against Druker ..................... 10

Conclusion ................................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Ainbinder v. Kelleher*, 92 Civ. 7315, 1997 U.S. Dist. LEXIS 10832, *23, 27 (S.D.N.Y. July 25, 1997), *aff'd* 1998 U.S. App. LEXIS 15221 (2d Cir. 1998) .................. 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ........................................................................................ 10

*In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006) .................................... 4

*Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 214-17 (2d Cir. 2010) .............................. 8

*Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y. 1975) ............................................... 7

*Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516-17 (S.D.N.Y. 2005) .................................... 2

*Feiner Family Trust v. VBI Corp.,* 352 Fed. App'x 461, 463 (2d Cir. 2009) ................................. 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40-41 (2d Cir. 2009) ........................ 4

*GE Investors, Ret. Plan v. Gen. Elec. Co.*, 447 Fed. App'x 229, 231 (2d Cir. 2011) ............................................................................. 7

*Greenfield v. Heublein, Inc.*, 742 F.2d 751, 764 (3d Cir. 1984) ....................................................... 4

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ......................................... 5

*McIntire v. China Mediaexpress Holding, Inc.*, 11 Civ. 804, 2013 U.S. Dist. LEXIS 28592, *36 (S.D.N.Y. Feb. 28, 2013) ............................................................................... 10

*In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346, *33 (S.D.N.Y. Feb. 14, 2006) ........................................................................................................................ 4

*Rochester v. Sixth Precinct Police Station,* No. 09-0630, 2010 U.S. App. LEXIS 6127, *3-4 (2d Cir. Mar. 25, 2010) ............................................................................. 8-9

*Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 458 (S.D. Ohio 2009) .................................... 4

*Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006) ................................................................ 4

*Schuler v. NIVS Intellimedia Tech. Group, Inc.*, No. 11 Civ. 2484, 2013 U.S. Dist. LEXIS 34200, *32, 36-38 (S.D.N.Y. Mar. 12, 2013) ........................... 4, 9

*SEC v. Conradt*, No. 12 Civ. 8676 (JSR), 2013 U.S. Dist. LEXIS 78381, *17-18 (S.D.N.Y. June 4, 2013) ........................................................................................... 6

*SEC v. Gad*, No. 07 Civ. 8385, 2007 U.S. Dist. LEXIS 92172, *3-4, 6-7 (S.D.N.Y. Dec. 17, 2007) ........................................................................................................... 6, 7

Page

*SEC v. Heider*, No. 90 Civ. 4636, 1990 U.S. Dist. LEXIS 16246, *9-10 (S.D.N.Y. Dec. 3, 1990) ................................................................................................................ 6

*SEC v. Lambert*, 38 F. Supp. 2d 1348, 1352 (S.D. Fla. 1999) .......................................... 6

*SEC v. Obus*, 693 F.3d 276, 289 (2d Cir. 2012) .............................................................. 6

*SEC v. Steffes*, 805 F. Supp. 2d 601, 614 (N.D. Ill. 2011) ............................................... 7

*Slayton v. Am. Express. Co.*, 460 F.3d 215, 228-29 (2d Cir. 2006) ................................. 9

*Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85-86 (2d Cir. 1999) ............................. 8

*Stevens v. O'Brien Envtl. Energy, Inc.*, Civ. No. 94-4577, 1999 U.S. Dist. LEXIS 6660, *17 (E.D. Pa. May 10, 1999) ..................................................................... 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627, 637 (2008) ............................................ 3

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) ....... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ................................................................................... 8

*U.S. v. Goffer*, 721 F.3d 113, 124-26 (2d Cir. 2013) ....................................................... 6

*In re U.S. Foodservice Inc. Pricing Litig.*, No. 07-md-1894, 2009 U.S. Dist. LEXIS 117403, *61-64 (D. Conn. Dec. 15, 2009) .......................................................... 9

Page

**STATUTES AND RULES**

15 U.S.C. § 78u-4(b)(4) ..................................................................................................... 3

Fed. R. Civ. P. 15(c)(1)(B) ................................................................................................ 8

## Preliminary Statement[1]

Twenty months after the Amended Complaint was filed, Plaintiffs now state that the trade data they present – and which Tauber certified as accurate in his lead plaintiff motion – is wrong.[2] In their initial motion to dismiss the Amended Complaint in May 2012, Sonar and Druker challenged Tauber because the prices at which he claimed he traded were significantly outside of market prices. (Docket No. 43 at 6-7, 11-13). The point was hotly debated at argument. Indeed, in its Opinion, the Court noted that "plaintiffs' counsel suggests that Tauber regularly traded after hours, so the prices at which he traded might in fact be within the market price range. Accordingly, this issue may be revisited once any amended pleading is filed." Op. at 11. After the Second Amended Class Action Complaint ("SAC") pleaded the same trade data, Defendants demonstrated in the instant motion that Tauber's trades were well outside even the after-hours market prices. Def. Mem. at 10-11, 22. Only then did Plaintiffs bother to look at the data, which they now claim reflects "settlement" dates – not the "trade" dates. After leading the Court and Sonar to believe otherwise on four occasions (First Amended Complaint, opposition to first motion to dismiss, oral argument and SAC), Plaintiffs now purport to list the true trade dates and prices in their brief, without any affidavit or documentation to support this new story. Not only have Plaintiffs wasted this Court's time and prejudiced Defendants, Plaintiffs concede, as they must, that their third attempt at pleading fails to adequately allege any of Tauber's trades, because the trades

---

[1] References are to Defendants Sonar Capital Management LLC's and Neil Druker's Memorandum of Law in Support of Their Motion To Dismiss The Second Amended Class Action Complaint ("Def. Mem."), the Affidavit of Mark J. Hyland, sworn to August 30, 2013 ("Hyland Aff."), Plaintiffs' Memorandum of Law in Opposition To Defendants Sonar Capital Management LLC's and Neil Druker's Motion to Dismiss the Second Amended Class Action Complaint ("Opposition" or "Opp."), the Court's Opinion and Order dated June 12, 2013 ("Opinion" or "Op.").

[2] In fact, Exhibit A to the Opposition includes a sale of 3,000 shares on October 22, 2007 that appears nowhere in Tauber's Certification – another error. Opp. Ex. A; *compare* Hyland Aff., Ex. D.

pleaded in the SAC were not even made.  Tauber's claims should be dismissed on this ground alone.

Plaintiffs also ignore other inconvenient facts.  Plaintiffs do not dispute that the centerpiece of their new story, Tai Nguyen, was never charged with wrongdoing relating to Sigma and indeed denied passing material non-public information other than regarding Abaxis, Inc. ("Abaxis"). Plaintiffs fail to set forth factual allegations to support Freeman's assumption – based on people named Nguyen employed by Sigma – that Nguyen and the phantom Sigma tippee are relatives. And even with Freeman's help, they cannot allege requisite details of the purported conversations between Freeman and Nguyen and Freeman and Druker.

## Argument

A.   **Plaintiffs Do Not Plead Reliance By Defendant Tauber And Loss Causation**

   1.   **The Allegations in the SAC Are False**

After providing incorrect trading data four times, 16 months after being expressly challenged on the point and 15 months after giving a different explanation to the Court and Defendants, Plaintiffs now claim in their Opposition that the trade dates alleged in the SAC are actually the "settlement" dates for Tauber's trades.  Opp. at 6, 21.  Reversing field, Plaintiffs assert that Tauber's trades were within *regular market* ranges – and not in the after-hours market as Plaintiffs' counsel had represented to the Court.  *Id.*; *see* Op. at 11.  Plaintiffs thus concede that the allegations in the SAC (and Tauber's Certification) are wrong, but now seek to use their brief to amend their pleading – *for the third time* – without so much as an affidavit or a single record, to support their contentions.  Opp. at 21, Ex. A.  This is disallowed.[3]  *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516-17 (S.D.N.Y. 2005) (pleadings cannot be amended through briefs).

Plaintiffs' counsels' repeated failure to get their story straight reminds the parties of the Court's admonition to Tauber and Gordon from the outset: they must actively oversee Plaintiffs' counsel and participate in each step of litigating this case.[4] The admonition was ignored. Tauber gave wrong information, Sonar challenged it, the Court questioned it, his attorney gave an erroneous response, the Court relied on that erroneous response (Op. at 11) and so did Sonar, and Plaintiffs then filed the SAC containing the very *same* incorrect information. Now, after four misrepresentations we get a different story in the Opposition.

### 2.     Plaintiffs Have Not Alleged That Tauber Could Have Suffered A Loss

Even if the Court were to consider the trade data as represented in the Opposition, Tauber cannot state a claim. Defendants do not seek to turn this Motion into a "mini-trial on damages" as Plaintiffs suggest, but rather to show that Plaintiffs cannot establish that Tauber could have suffered *any* loss – an essential element of their claims. Indeed, during oral argument on the first motion, the Court stated that, "[i]f, on a motion to dismiss as a matter of law on his allegations [Tauber] could not establish damages, then . . . your adversary would be entitled to dismissal." Transcript of Hearing on Original Motion at 30-31 (Docket No. 52).

Plaintiffs must allege that Tauber suffered a loss caused by Defendants' acts. 15 U.S.C. § 78u-4(b)(4); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627, 637 (2008) (elements of private securities fraud claim). They cannot because he bought more shares than he sold during the period when Sigma's share price purportedly was

---

[3] Because Plaintiffs admit that Tauber's trade dates are incorrect, they concede that the SAC does not allege contemporaneous trades, thus barring Tauber's claims under Section 20A. *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008).

[4] Transcript of Lead Plaintiff Hearing at 17 (Docket No. 37) (Congress passed the PSLRA "to create the situation where the client would really be overseeing what happens. Because historically, the lawyers ran the show. . . I just want to make sure that you understand if I appoint you, that I am relying on you to take that initiative at every stage, and not allow your counsel to submit something

artificially deflated.  Hyland Aff. ¶ 6.  Plaintiffs ignore that in a recent case the court dismissed claims by in-and-out traders for failure to allege damages.  *See Schuler v. NIVS Intellimedia Tech. Group, Inc.*, No. 11 Civ. 2484, 2013 U.S. Dist. LEXIS 34200, *32, 36-38 (S.D.N.Y. Mar. 12, 2013) (plaintiff could not tie his losses to the corrective disclosure when he sold his shares before it occurred).  In the class certification context an "in and out" plaintiff, who sells the shares before the truth of prior misstatements is revealed to the market, cannot establish loss causation.  *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 40-41 (2d Cir. 2009).  Plaintiffs attempts to distinguish *Flag* by reference to cases where there <u>were</u> incremental disclosures, where the market price <u>could</u> have been affected before full disclosure, are inapposite.[5]  There are no such allegations here.

Desperate to save their claim, Plaintiffs now argue that the "tips" themselves constituted "leakage," relying (incorrectly) on the dissent of a nearly thirty year old decision from the Third Circuit.  *Greenfield v. Heublein, Inc.*, 742 F.2d 751, 764 (3d Cir. 1984).  Insider trading requires trading while one is in possession of material *non-public* information.  If tipping MNPI constituted an "incremental disclosure" there could be no insider trading violation in the first place, and thus the act of tipping simply does not constitute an incremental disclosure to the public or "leakage" to the market that causes a price adjustment.[6]

---

to the Court that either, as in the case of the declarations, were just two virtually identical declarations down to the very words used.").

[5]   *See In re Bearingpoint, Inc., Sec. Litig.*, 232 F.R.D. 534, 544 (E.D. Va. 2006); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 458 (S.D. Ohio 2009); *In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 U.S. Dist. LEXIS 5346, *33 (S.D.N.Y. Feb. 14, 2006).  *Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006), also relied on by Plaintiffs, quoted *Bearingpoint* and thus is equally inapposite.

[6]   Plaintiffs now argue that netting purchases and sales is irrelevant because they are seeking disgorgement instead of out-of-pocket damages.  Opp. at 20.  Plaintiffs forget that they seek both traditional compensatory damages *and* disgorgement.  *See* SAC at 52.  But the nature of the remedy is irrelevant where, as here, they cannot plead loss causation as an element of their claim.

**B.     No Facts Show That The Disloyal Sigma Employee Was A Nguyen Relative**

Plaintiffs admit neither they nor Freeman know who the Disloyal Sigma Employee is. They do not allege that Nguyen told Freeman who his source was, let alone that it was a relative. Freeman's purported "understanding" that the Disloyal Sigma Employee was a relative of Nguyen, or that information that Nguyen obtained was in violation of a duty, is indeed a wild shot in the dark. Plaintiffs conspicuously ignore that Nguyen (1) was never charged with any wrongdoing relating to Sigma (Hyland Aff., Ex. J); (2) unconditionally states in his sentencing memorandum that he "never had any MNPI other than that he obtained six times form his sister [at Abaxis]…" (Hyland Aff., Ex. K); and (3) is an extraordinarily common surname, and that there were multiple individuals named Nguyen at Sigma is probative of nothing. Def. Mem. at 14. Where a complaint's factual allegations are contradicted by more specific allegations or documentary evidence, they need not be assumed to be true. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). In its Opinion, the Court observed

> the only factual details the [Amended] Complaint proffers . . . are those that relate to the information that the PGR tipper obtained from an otherwise unidentified "relative" at Sigma, and there is no statement of what benefit that relative received, if anything, in return.

Op. at 5-6. Despite Freeman's cooperation, Plaintiffs still have not alleged the identity of the Disloyal Sigma Employee, nor have they alleged any personal benefit.

Plaintiffs claim that they are excused from identifying the original tipper because Druker "knew enough about the Disloyal Sigma Employee to invest tens of millions of the Sonar Hedge Funds' money." Opp. at 10. But Sonar traded Sigma from the day Sonar was launched, years before Freeman was even employed there. (Plaintiffs know this, as they got Sonar's stolen records, from Freeman.) Courts will excuse plaintiffs from pleading the identity of the tipper only when

5

there are clear indications the defendants knew they had obtained MNPI in violation of a duty.[7] Despite Freeman's help, not a single piece of paper, an email, memo or letter has been identified. Plaintiffs' generic allegations that Freeman regularly discussed with Druker "the nature of the unlawful information Nguyen provided," does not adequately plead that Druker knew the nature of information. *See also infra*, Section C.3, D.3. *SEC v. Obus*, 693 F.3d 276, 289 (2d Cir. 2012).

### C.  Plaintiffs Allegations Relating To The Seller Class Claims Are Patently Insufficient

#### 1.  Plaintiffs Still Cannot Provide Particularized Information About The Purported Third Quarter Tips

Even with Freeman's "cooperation," Plaintiffs fail to cure fatal deficiencies regarding the alleged "tips" received by Freeman during Sigma's third quarter 2007. Plaintiffs provide no numbers, no dollar amounts, no specificity at all concerning the alleged "tips." Vague allegations that Nguyen provided information concerning the size of the Motorola order (without stating what that information was) (SAC ¶¶ 87-88), that the Motorola order was "large" (*Id*. ¶ 102), and that financial estimates were shared (*Id*. ¶¶ 66-68, 101), cannot pass muster, particularly because Plaintiffs have access to Freeman. This is not a case where the information is peculiarly within the

---

[7] The cases Plaintiffs rely on do not help them. In *SEC v. Conradt*, No. 12 Civ. 8676 (JSR), 2013 U.S. Dist. LEXIS 78381, *17-18 (S.D.N.Y. June 4, 2013), there were numerous, documented "red flags" alleged that the tippee knew the information was illegally obtained (*e.g.*, instant messages discussing potential prosecution). In *U.S. v. Goffer*, 721 F.3d 113, 124-26 (2d Cir. 2013), there were phone calls, emails, and significant changes in trading activity, showing that the defendant knew the information was illegally obtained. In *SEC v. Heider*, No. 90 Civ. 4636, 1990 U.S. Dist. LEXIS 16246, *9-10 (S.D.N.Y. Dec. 3, 1990) there was "extraordinary trading activity" – an increase in total trading volume of 1962%. In *SEC v. Lambert*, 38 F. Supp. 2d 1348, 1352 (S.D. Fla. 1999), plaintiff alleged with requisite specificity the "where, when and how of the tip," and a narrow group of individuals that could have been the tipper. In *Stevens v. O'Brien Envtl. Energy, Inc.*, Civ. No. 94-4577, 1999 U.S. Dist. LEXIS 6660, at *17 (E.D. Pa. May 10, 1999) details of the tip and "extraordinary trading activity" were alleged (defendant unloaded its entire position hours before a negative disclosure). In *SEC v. Gad*, No. 07 Civ. 8385, 2007 U.S. Dist. LEXIS 92172, *3-4 (S.D.N.Y. Dec. 17, 2007), the specificity of the allegations in the complaint, including the content, a specific date, the means of communication, and times of the calls down to the minute, supported an inference that the tippee knew the information had been illegally obtained. Plaintiffs cannot even identify the dates of the purported conversations, let alone the times and specific information shared.

6

knowledge of defendants – it is the opposite. *See SEC v. Steffes*, 805 F. Supp. 2d 601, 614 (N.D. Ill. 2011) ("the SEC need not 'plead the specific content and circumstances of [the] insider tips' because that information is "'peculiarly within the knowledge of defendants.'"). If anyone has it, Plaintiffs do, through Freeman. Because Plaintiffs still fail to plead with particularity the "who, what, where, and when" elements of their fraud claim – a conspicuous failure given that they have exclusive access to the person with first hand knowledge – they plead no factual basis to conclude that any MNPI was obtained in breach of a fiduciary duty. *See GE Investors, Ret. Plan v. GE*, 447 Fed. App'x 229, 231 (2d Cir. 2011) (stating Rule 9(b)'s pleading standard)

### 2. The Purported MNPI Was Publicly Disseminated On August 28 and 29, 2007

With the foundation of their case crumbling, Plaintiffs try to downplay the August 28 and 29, 2007 public disclosures of the Motorola contract. Plaintiffs' contentions that the purported MNPI remained non-public despite the public report in Barron's that Sigma "apparently has won a big order from Motorola for IPTV chips which is not reflected in current expectations"[8] and Sigma's disclosure that it was "in volume shipments" to Motorola and expected over 20% growth in net revenues for the third quarter, are nonsense. Opp. at 13; Hyland Aff., Exs. R, S, T. Because the MNPI was disclosed, the violation ended. *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y. 1975).[9]

### 3. Plaintiffs' Conclusory Allegations Concerning Druker's Scienter Fail

The scienter allegations in the SAC are conclusory, apparently because Freeman could not provide specific details about the substance of his conversations with Druker about the Sigma

---

[8] Plaintiffs term this a "rosy analyst report" (Opp. at 13), yet not only was it published in a widely circulated and respected financial journal, it reflected the exact content of the purported July tip.

[9] Plaintiffs claim that the court should not consider whether certain public information constituted a full or partial disclosure at the motion to dismiss stage. Opp. at FN4. Plaintiffs's reliance on *Gad*, 2007 U.S. Dist. LEXIS 92172, *6-7, is misplaced, as *Gad* dealt with whether press reports reflecting

7

information. This is insufficient to establish the requisite "strong inference" of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *accord Feiner Family Trust v. VBI Corp.,* 352 Fed. App'x 461, 463 (2d Cir. 2009).[10]

The more compelling competing inference is that Druker did not know of the MNPI. *Id*. at 324. Sonar's trading activity – selling 525,211 Sigma shares days before the revelation of the purported MNPI, forfeiting nearly a million dollars in profits – is hopelessly inconsistent with Plaintiffs' theory.[11] Conspicuous by its omission is that the SAC does not allege Freeman ever told Druker in 2007, during the time of the trades in question that the source of his Sigma information was Nguyen. (*Compare* SAC ¶¶ 87-122 (repeated allegations that Nguyen told Freeman, and thus Freeman and "Sonar" (not Druker) knew the information was MNPI) *with* SAC ¶¶ 55-56). And Plaintiffs concede that Sonar had multiple sources of information about Sigma. There is thus ample support for the competing (and true) inference that Druker did not know that Freeman had obtained MNPI. SAC ¶ 69, 87, 90, 92, 95, 101, 103, 105, 108.

**D.      Plaintiffs' New Buyer Class Claims are Time Barred and Unsupportable**

**1.      The New Buyer Class Claims Do Not "Relate Back"**

Plaintiffs fail to address the critical issue: whether the original pleading put Defendants on notice of the newly asserted claims. Fed. R. Civ. P. 15(c)(1)(B); *Rochester v. Sixth Precinct Police*

---

a general downturn in the stock market rendered immaterial exact financial information that had been tipped, not full versus partial disclosure. *Id*.

[10] *See also Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 214-17 (2d Cir. 2010) (Where a plaintiff seeks to satisfy the scienter element through circumstantial evidence, the facts must strongly establish evidence of conscious misbehavior or recklessness).

[11]   *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85-86 (2d Cir. 1999), is distinguishable. In *Stevelman*, the plaintiff alleged the company repeatedly made positive misstatements of its financials, keeping its stock price artificially inflated. *Id*. During that time, Bingham, a company director *sold* shares, knowing that the share price would soon decrease. *Id*. The court held that the plaintiff adequately pled scienter despite Bingham's argument that he also sold shares *before* the alleged misstatements. *Id*. Defendants here sold Sigma shares when, if knowingly in possession of MNPI that share prices would increase, they would have been *buying*. Def. Mem. at 18-19.

8

*Station,* No. 09-0630, 2010 U.S. App. LEXIS 6127, *3-4 (2d Cir. Mar. 25, 2010). It did not, nor could it have, because Plaintiffs did not know about the underlying facts until they spoke with Freeman. The Buyer Class claims are based on completely different facts at a time beyond that included in the Amended Complaint. Plaintiffs' claims are on behalf of a different class of plaintiffs and not "the same parties" as Plaintiffs contend (Opp. at 22). This new class was not "accidentally omitted or wrongly identified" because it was not known to Plaintiffs. *Ainbinder v. Kelleher*, No. 92 Civ. 7315, 1997 U.S. Dist. LEXIS 10832, *27 (S.D.N.Y. July 24, 1997). And, like in *Ainbinder*, the Buyer Claim is based on trades that occurred months after the trades in the original complaint. *Id.* at 23 (finding claims time barred).[12]

### 2. Plaintiffs Fail to Sufficiently Allege Actionable Tips

Plaintiffs cannot allege details of the purported negative MNPI shared between Nguyen and Freeman. Plaintiffs allege only general date ranges of Nguyen — Freeman calls, and that Nguyen provided Freeman with "a numerical range of Sigma's revenues" without identifying actual ranges. SAC ¶ 66. This case is unlike *In re U.S. Foodservice Inc. Pricing Litig.*, No. 07-md-1894, 2009 U.S. Dist. LEXIS 117403, at *61-64 (D. Conn. Dec. 15, 2009), where the court deemed general allegations of fraud based on predicate acts involving thousands of invoices over a six year period sufficient so as not to lard the complaint with voluminous minutia. Plus, Plaintiffs' theory that Nguyen tipped that Sigma would miss its fourth quarter earnings estimates also fails because Sigma did not miss estimates, it exceeded them. Def. Mem. at 24. Plaintiffs' answer that Sigma missed market estimates (Opp. at 24, n.12) is wrong – Sigma's earnings beat both company and market estimates. *See* Hyland Aff., Ex. W. Without a corrective disclosure, there is no loss

---

[12] In *Slayton v. Am. Express. Co.*, 460 F.3d 215, 228-29 (2d Cir. 2006), the Second Circuit held that allegations in an amended complaint related back to the original complaint where the newly asserted allegations were, in fact, simply amplifying or clarifying the original allegations. Not so here.

9

causation and no claim.  *Schuler*, 2013 U.S. Dist. LEXIS 34200 at *36-38.  The flimsy allegations that Freeman "promptly conveyed" information from Nguyen to Druker fail to create a strong inference of scienter, particularly when Sonar's trading history refutes any such finding.  It makes no sense that Sonar possessed MNPI in December 2007 that Sigma's share price would drop, yet slowly sold off its shares over a three month period, missing out on significant profits as the price steadily declined.

E.     **Plaintiffs Fail To Allege Control Person Liability Against Druker**

The "weight of well-reasoned authority" in the Second Circuit finds culpable participation is an element of a 20(a) claim – which, as noted, Plaintiff do not plead with respect to Druker. *McIntire v. China Mediaexpress Holding, Inc.*, 11 Civ. 804, 2013 U.S. Dist. LEXIS 28592, *36 (S.D.N.Y. Feb. 28, 2013); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

## Conclusion

Based on the foregoing, the SAC should be dismissed with prejudice.

| | |
|---|---|
| New York, New York<br>September 20, 2013 | Respectfully submitted,<br><br>SEWARD & KISSEL LLP<br><br>By: ____s/ Mark J. Hyland____<br>     Mark J. Hyland<br>     Julia C. Spivack<br>     Michael W. Broz<br><br>One Battery Park Plaza<br>New York, New York 10004<br>(212) 574-1200<br><br>*Attorneys for Defendants Sonar Capital Management LLC and Neil Druker* |