UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SIDNEY GORDON and JEFFREY TAUBER,    :
                                     :
     Plaintiffs,                     :
                                     :
                                     :     11-cv-9665 (JSR)
          -v-                        :
                                     :     MEMORANDUM
SONAR CAPITAL MANAGEMENT LLC; NOAH   :
FREEMAN; NEIL DRUKER; PRIMARY GLOBAL :
RESEARCH, LLC; SONAR PARTNERS, LP;   :
SONAR INSTITUTIONAL FUND, LTD.; SONAR:
OVERSEAS FUND, LTD.; and JOHN AND    :
JANE DOES 1 THROUGH 100,             :
                                     :
     Defendants.                     :
------------------------------------x

8/1/14

JED S. RAKOFF, U.S.D.J.

On December 29, 2011, plaintiff Sidney Gordon filed this putative class action alleging violations of the federal securities laws, as well as related state-law claims for unjust enrichment and the avoidance of fraudulent transfers. Specifically, Gordon sued defendants Sonar Capital Management LLC, Noah Freeman, Neil Druker, and Primary Global Research ("PGR") for securities fraud in violation of sections 10(b) and 20A of the Securities Exchange Act of 1934 ("Exchange Act") and for control-person liability under section 20(a) of that Act. His other claims were brought against unidentified investors in Sonar's hedge funds, who allegedly received the profits of the named defendants' securities fraud. After the Court granted plaintiffs' motion to have Jeffrey Tauber serve as co-lead plaintiff with Gordon, the plaintiffs filed an Amended Class Action Complaint on April 24, 2012, ECF No. 39.

1

On May 15, 2012, defendants moved to dismiss the Amended Class Action Complaint. By "bottom-line" Order dated February 8, 2013, the Court granted the motions to dismiss without prejudice to repleading, explaining its reasons for doing so in an Opinion and Order filed on June 13, 2013. See ECF Nos. 63, 76. (Familiarity with that Opinion and Order is here presumed, and the Court includes in this Memorandum only those facts relevant to the instant motion.) In June 2013, plaintiffs settled with defendant Freeman, see ECF No. 73, who thereafter served as a source of allegations in the Second Amended Complaint ("SAC") filed on July 22, 2013, see ECF No. 79. The SAC names as additional defendant Sonar Partners, LP, Sonar Institutional Fund, LP, and Sonar Overseas Fund, Ltd (collectively with Sonar Capital Management LLC, "Sonar"). The SAC also alleges a new class of plaintiffs: a "Buyers' Class" of those who were buying Sigma Designs, Inc. ("Sigma") while Sonar was in possession of negative, material non-public information and unloading its long positions and going short on Sigma.[1]

Defendants moved to dismiss the SAC on August 30, 2013, ECF No. 82 ("Defs.' Mem."), plaintiffs filed an opposition, ECF No. 86 ("Pls.' Opp'n"), and defendants a reply brief, ECF No. 87 ("Defs.' Reply Mem."). After oral argument on September 26, 2013, the Court, by "bottom-line" Order dated October 31, 2013, denied defendants'

---

[1] Defendants complain that plaintiffs have not published the new "Buyers' Class" to the public pursuant to applicable requirements. Defs.' Mem. at 23 n.20. This objection will be resolved in further proceedings hereinafter.

2

motion to dismiss. See ECF No. 90. This Memorandum sets forth the reasons for that decision.

After summarizing the key additions to the SAC, the Court will examine the four arguments that defendants raise in their motion and reply: (1) that the SAC fails to allege causation and reliance for Tauber;[2] (2) that the Buyer Class is time-barred because it does not relate back to the initial complaint; (3) that the SAC does not adequately plead scienter for Druker; and (4) that, even assuming that plaintiffs have adequately pleaded a primary violation by Sonar, they have failed to show control-person liability. For the reasons that follow, these arguments fail.

The SAC adequately addresses the deficiencies in the prior complaint outlined in the Opinion and Order. With respect to identification of the tipper and the benefit afforded him, the SAC not only identifies the tipper as "Disloyal Sigma Employee," and alleges that this person was a relative of Tai Nguyen (the intermediary Sonar paid for inside information about Sigma), see SAC ¶¶ 5, 49-58, 71-126, but also alleges that the Disloyal Sigma Employee was then compensated by Nguyen or provided the information to him as a gift from one family member to another. Id. ¶¶ 59-61. See SEC v. Obus, 693 F.3d 276, 291-92 (2d Cir. 2012) (defining "personal benefit" as inclusive of "making a gift of information to a friend" or relative).

---

[2] This argument was made previously but left unresolved in the Opinion and Order. See ECF No. 76 at 7-8.

3

With respect to the allegations of fraud beyond Sigma's third quarter of 2007, the SAC alleges that the Disloyal Sigma Employee told Nguyen, and Nguyen told Sonar, about the Motorola contract in September 2007, which was not fully disclosed in the August 2007 quarterly reporting statement. See SAC ¶¶ 100-02. After two phone calls from Nguyen, Sonar purchased more than $21 million in undervalued Sigma stock in September 2007. Id. ¶¶ 104-05. Moreover, the SAC alleges numerous other conversations between Nguyen and Sonar about Sigma's lucrative third quarter, including through late November 2007, causing Sonar to purchase another $6 million of Sigma stock the day before Sigma announced revenues far higher than anticipated. Id. ¶¶ 107-109, 112-114. Upon publication of the third-quarter information, Sigma's stock rose more than 10.64% by November 29, 2007, netting Sonar more than $10 million. Id. ¶¶ 113-114.

With respect to Druker's scienter, which was previously inadequately pleaded, the SAC alleges that: Freeman and Druker vetted Nguyen together and Druker met Nguyen in person, id. ¶ 54; Druker and Freeman discussed Sonar's payoffs to Nguyen, id. ¶ 59; Druker demanded of Freeman extensive details of every conversation with Nguyen, down to his tone of voice, id. ¶ 57; more generally, Druker never made trades in Sigma without Freeman telling him everything he had learned from Nguyen, id. ¶¶ 39-41; Sonar made huge trades shortly after specific phone calls between Nguyen and Sonar, id. ¶¶ 88-93, 104-105; and Druker directed Freeman to store his inside information on a spreadsheet on a UBS drive rather than on

4

the Sonar computers, and shredded printouts of the spreadsheets, id. ¶¶ 44-47.

To state a claim under section 10(b) of the Exchange Act, a plaintiff must allege: (1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, (5) injury, i.e., economic loss, and (6) loss causation. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). The Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Similarly, Rule 9(b) of the Federal Rules of Civil Procedure requires a "securities fraud complaint based on misstatements [to] (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

As mentioned, defendants advance four arguments in support of their motion to dismiss the SAC. Defendants first contend that plaintiffs have not and cannot allege loss causation for co-lead plaintiff Tauber. The Exchange Act seeks "not to provide investors with broad insurance against market losses, but to protect them

5

against those economic losses that misrepresentations actually cause." Dura, 544 U.S. at 345. Defendants argue that Tauber purchased more shares than he sold during the Seller Class period, and thus profited rather than lost from the deflated stock price. See Dura, 544 U.S. at 342 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Plaintiffs contend, however, that courts frequently reject the claim that individuals in Tauber's position have no damages as a matter of law. See In re CIGNA Corp. Sec. Litig., 459 F. Supp. 2d 338, 350 (E.D. Pa. 2006) (identifying cases that "have refused to allow alleged gains to cancel out purported losses, and [that] have rejected arguments that a plaintiff who was a 'net seller' and made money during the class period could not proceed with claims under federal securities laws"). Moreover, plaintiffs argue that determining whether Tauber suffered losses as an "in-and-out trader" asks the Court to prematurely determine factual issues on a motion to dismiss. See In re Flag Telecom Hldgs., Ltd. Sec. Litig., 574 F.3d at 39 ("[I]t may be 'premature for courts to attempt to determine whether in-and-out traders have suffered losses at the class certification stage of the game.'" (citation omitted)). Accordingly, the Court will allow parties to conduct discovery concerning that potential loss and, in the meantime, deny this prong of the motion, without prejudice.

Defendants similarly argue that Tauber fails to allege reliance because he traded at prices that fell outside the market range and therefore cannot avail himself of the theory of fraud on the market. See Basic Inc. v. Levanon, 485 U.S. 224, 249 (1988) ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."). Defendants note that courts have found that day traders may have difficulty showing reliance, and thus cannot serve as lead plaintiffs, because they "typically focus[] on technical price movements rather than price." In re Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003).

Plaintiffs respond that this argument again requires analysis of factual issues that are not properly before the Court on a motion to dismiss. Specifically, they contend that the fact that Tauber traded at prices outside the market range does not mean that he did not rely on the market's integrity. See Basic, 485 U.S. at 246-247 ("It has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'" (internal citation omitted)).[3] In their reply brief, defendants press again that the Basic presumption is available only to those who buy and sell at the

---

[3] Plaintiffs also claim that this argument is moot because they previously misstated the dates of Tauber's trades, confusing the trade date and settlement date. See Sept. 26, 2013 Hr'g Tr. 11:13-19.

7

market price. See id. at 247 ("An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." (emphasis supplied)). The Court finds that the language of Basic is broader than defendants suggest. See, e.g., Schleicher v. Wendt, No. 02-cv-1332, 2009 WL 761157, at *9 (S.D. Ind. Mar. 20, 2009) (applying Basic presumption to short sellers who think the market has overvalued a stock, on the ground that "[t]heir decisions about the value of the stock, however, can still be based on the integrity of the market price"). Accordingly, defendants' claim that Tauber fails to allege reliance lacks merit. Of course, defendants may later show lack of reliance or loss causation as a matter of fact at summary judgment.[4]

In their second argument, defendants contend that the new Buyer Class is time-barred because it does not relate back to the initial complaint. The question of relating back under Rule 15(c) of the Federal Rules of Civil Procedure is "liberally construed." Siegel v. Converters Transp., Inc., 714 F.2d 213, 216 (2d Cir. 1983). Here, plaintiffs allege that these new claims covering the fourth quarter of 2007 relate to the third-quarter and second-quarter claims in every important way: same activity (insider trading), same parties (defendants), same company (Sigma), same source (Disloyal Sigma

---

[4] Although the Supreme Court's recent decision, Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398 (2014), was decided after the October 31, 2013 "bottom-line" Order, it does nothing to alter the conclusion explained in this Memorandum.

8

Employee), same path (Nguyen). See Pls.' Opp'n at 22. The only real difference is that the insider tip was materially negative instead of positive. With the help of Freeman's information, plaintiffs allege that the 2007 fourth quarter involved negative, material non-public information, viz., that Motorola abruptly cut off its contract that had caused the previous sharp increases in revenue. SAC ¶ 116. Plainly, therefore, "'there is a core of operative facts linking the amendments and the original complaint.'" Oliner v. McBride's Indus., Inc., 106 F.R.D. 9, 12 (S.D.N.Y. 1985). Accordingly, the Court finds that the new Buyer Class claims relate back to the original complaint.

Defendants' third argument is that plaintiffs failed to adequately allege scienter. In insider-trading cases, a plaintiff must allege not only that the original tipper violated a duty of trust, but also that those who traded on the tip conferred a benefit on the tipper in exchange for the information. See Dirks v. SEC, 463 U.S. 646, 662 (1983). Because the SAC alleges only that Nguyen obtained non-public financial information from a "Disloyal Sigma Employee," defendants contend that it does not satisfy Rule 9(b). Defendants note, for example, that the SAC never alleges that Freeman told Druker about the inside information he obtained and that the operative paragraphs of the SAC contain no mention of Druker. See Defs.' Mem. at 15-16. Instead, they argue, the SAC relies entirely on the allegation that, while Freeman researched securities and made recommendations, Druker made all decisions about

9

what securities to buy and sell. Id. Defendants further argue that plaintiffs' allegations that Druker had authority merely to make trading decisions and that Sonar paid Nugyen cannot supply the "strong inference" of scienter that the PSLRA requires. See Defs.' Reply Mem. at 8.

Plaintiffs contend that the tips discussed in the SAC — specifically the allegation that Nguyen disclosed non-public information about Sigma's second-quarter financial results — satisfy even the demanding requirements of Rule 9(b). Plaintiffs cite authority that "dates, times, and places need not be pleaded with absolute precision, so long as the allegations sufficiently put the defendant on notice as to the circumstances of the charged misrepresentations." In re U.S. Foodservice Inc. Pricing Litig., No. 07-md-1894, 2009 WL 5064468, at *18 (D. Conn. Dec. 15, 2009). With respect to the benefits received by the tipper, the SAC specifically alleges that Freeman and Druker caused Sonar to pay Nguyen $5,000 each month, satisfying Dirks's personal-benefit element. Plaintiffs also alleged that Druker made final trading decisions after receiving recommendations from Freeman, that Freeman had inside information, and that Sonar purchased large amounts of Sigma stock after Freeman received that information. Pls.' Opp'n at 15. The Court agrees with plaintiffs that the strongest inference one can draw from these allegations is that Freeman communicated the inside information he had discovered to Druker and that Druker then caused Sonar to trade based on that information.

10

In their final argument, defendants assert that, even assuming that plaintiffs have adequately pleaded a primary violation by Sonar, they failed to show that Druker knew that Sonar traded on the basis of inside information. See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) ("[T]o establish a prima facie case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." (internal quotation marks omitted)). But here, for the reasons discussed, the SAC contains detailed factual allegations that more than adequately allege Druker's knowledge and control.

Accordingly, for the foregoing reasons, the Court, by its Order of October 31, 2013, denied defendants' motion to dismiss.

Dated: New York, NY
July 31, 2014

JED S. RAKOFF, U.S.D.J.