**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SIDNEY GORDON and JEFFREY TAUBER,

      Plaintiffs,

           v.

SONAR CAPITAL MANAGEMENT LLC; NEIL
DRUKER; PRIMARY GLOBAL RESEARCH, LLC;
SONAR PARTNERS, LP; SONAR INSTITUTIONAL
FUND, LP; SONAR OVERSEAS FUND, LTD.;
AURORA HEDGED EQUITY LP; AURORA
HEDGED EQUITY OFFSHORE FUND, LTD.;
AURORA LIMITED PARTNERSHIP; AURORA
OFFSHORE FUND LTD. II.; AZIMUTH
DIVERSIFIED FUND, LLC; AZIMUTH SELECT
FUND, LLC; BARFIELD NOMINEES LIMITED A/C
18818; CHICAGO PATRIOT, LLC; CONTINENTAL
CASUALTY COMPANY; DAVID E. SEMMEL;
DELOS FUND, LTD; DELOS FUND II, LTD.;
DOREL, LLC; FQR ALTERNATIVES II, LP;
JOANNE MACKINNON; JOCELYN BOWIE; IFC
(A) TRUST; IFC (E) TRUST; LESLIE SEMMEL;
LOEWS CORPORATION; MWV EMPLOYEE
RETIREMENT PLAN GROUP TRUST; THE
ORRINGTON FUND, LTD.; THE ORRINGTON
FUND, LP; THE ORRINGTON PLUS MASTER
FUND, LTD.; PANGAEA PARTNERS, LP; PAROS
FUND TRUST; Q-BLK ALPHA ENGINE, LTD.; Q-
BLK EQUITY EDGE PORTFOLIO, LP; Q-BLK
EQUITY EDGE PORTFOLIO, LTD.; QIP LTD.; QPA
LTD.; ROBECO-SAGE CAPITAL
INTERNATIONAL II, LTD.; ROBECO-SAGE
CAPITAL, LP; ARDEN SAGE MULTI-STRATEGY
FUND, LLC; ARDEN SAGE TRITON FUND, LLC;
ROBECO-SAGE UNIT TRUST; SEMMEL FAMILY
TRUST; STEINBERG FAMILY INVESTMENTS,
LTD.; THE WEATHERLOW FUND, LP,

      Defendants.

Case No. 11-CV-9665 (JSR)


JURY TRIAL DEMANDED

---

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES,
AND APPOINTMENT OF CLASS COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS .................................................................................. 3

       A.    SUMMARY OF THE ACTION ................................................................ 3

       B.    THE PROPOSED CLASS REPRESENTATIVE ..................................... 5

III.   ARGUMENT ..................................................................................................... 6

       A.    THE REQUIREMENTS OF RULE 23 .................................................... 7

       B.    RULE 23(a) IS SATISFIED ..................................................................... 7

             1.    EACH CLASS IS SO NUMEROUS THAT JOINDER OF ALL
                   MEMBERS IS IMPRACTICABLE ............................................... 7

             2.    THERE ARE QUESTIONS OF LAW AND FACT COMMON TO
                   MEMBERS OF THE CLASS ......................................................... 9

             3.    PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLAIMS OF
                   THE OTHER CLASS MEMBERS ............................................... 10

             4.    PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT
                   THE CLASSES' INTERESTS ..................................................... 12

       C.    THIS ACTION MEETS THE REQUIREMENTS OF RULE 23(b)(3) ............... 13

             1.    COMMON QUESTIONS OF LAW AND FACT
                   PREDOMINATE ........................................................................ 13

             2.    CLASS MEMBERS ARE ENTITLED TO A PRESUMPTION OF
                   RELIANCE UNDER *BASIC V. LEVINSON* ............................. 14

             3.    CLASS MEMBERS ARE ALSO ENTITLED TO A
                   PRESUMPTION OF RELIANCE UNDER *AFFILIATED UTE* ............. 20

             4.    A CLASS ACTION IS THE SUPERIOR METHOD OF
                   ADJUDICATION ........................................................................ 21

       D.    CLASS COUNSEL SHOULD BE APPROVED PURSUANT TO RULE
             23(g) ......................................................................................................... 23

i

IV.     CONCLUSION ............................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154 (1972)..................................20, 21

*Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (U.S. 1997).......................................................14

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95, 1197 (2013)........7, 16

*Andrada v. Atherogenics, Inc.*, 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777,
    at *17 n.2 (S.D.N.Y. Apr. 18, 2005)..........................................................................................6

*Basic Inc. v. Levinson*, 485 U.S. 224, 241-242, 247 (1988) ......................................................1, 15

*Billhofer v. Flamel Tech., S.A.*, 281 F.R.D. 150, 159-60 (S.D.N.Y. 2012) ............................16, 17

*Black v. Finantra Capital, Inc.,* 418 F.3d 203, 209 (2d Cir. 2005) ...............................................20

*Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).................................................................14

*In re Blech Sec. Litig.*, 187 F.R.D. 97, 102-104, 107 (S.D.N.Y. 1999) ...........................2, 8, 9, 21

*Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992) ..................................................................20

*Califano v. Yamasaki*, 442 U.S. 682, 690 (1979) .........................................................................21

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291, 293 (2d Cir. 1999) .......................11

*Cammer v. Bloom*, 711 F. Supp. 1264, 1285, 1286, 1287 (D.N.J. 1989) .........................16, 17, 18

*Catholic Health Care West v. US Foodserv.*, 729 F.3d 108, 118 (2d Cir. 2013),
    *cert. denied*, 134 S. Ct. 1938 (2014) ....................................................................................14

*In re Celestica Inc. Sec. Litig.*, 07 Civ. 0312 (GBD), 2014 U.S. Dist. LEXIS 116562,
    at *14 n.3 (S.D.N.Y.  Aug. 20, 2014) ..................................................................................12

*In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350 (E.D. Pa. 2006) ...................................6

*Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ................................................8

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156, 157-58 (S.D.N.Y. 2008) ...............9, 11, 12

*Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) ..............................................................2

*In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992) ...................................12

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)..........................14

*Ebin v. Kangadis Family Mgmt. LLC*, 14-cv-1324 (JSR), 2014 U.S. Dist. LEXIS 132129,
   at *10 n.3 (S.D.N.Y. Sept. 18, 2014) .......................................................................14

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014)......................2, 8, 11, 12

*Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172 (2d Cir. 1980)....................................6

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 529 F. Supp. 2d 644, (S.D. Tex. 2006) ..............23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007) ................11

*In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 37 (2d Cir. 2009)...........................22

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176, 179-80 (2d Cir. 1990) ................................................................1, 11

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982) ...........................................11

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ..............................................21

*Griffin v. GK Intelligent Sys.*, 196 F.R.D. 298, 303-304 (S.D. Tex. 2000) ...................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408, 2416 (2014)................15, 16

*In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 & n.9 (D. Conn. 2006)............................6

*Jones v. Ford Motor Credit Co.*, No. 00-CV-8330, 2005 U.S. Dist. LEXIS 5381,
   at *81 (S.D.N.Y. Mar. 31, 2005) .......................................................................23

*Krogman v. Sterritt,* 202 F.R.D. 467, 476, 478 (N.D. Tex. 2001).....................................17, 18, 19

*Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 187 (S.D.N.Y. 2008) ......................................21

*Levinson v. Basic Inc.*, 871 F.2d 562 (6th Cir. 1989) ....................................................1

*Marisol A. v. Giuliani*, 126 F.3d 372, 376, 378 (2d Cir. 1997) ................................................9, 12

*McIntire v. China Mediaexpress Holdings, Inc.*, 11-cv-0804 (VM),
   2014 U.S. Dist. LEXIS 113446, at *31, *33 (S.D.N.Y. Aug. 15, 2014) .........16, 17, 18, 19

*Megason v. Starjem Restaurant Corp.,* 12 Civ. 1299 (NRB), 2014 U.S. Dist. LEXIS 3910,
   at *19 (S.D.N.Y.  Jan. 13, 2014).......................................................................7

*Merino v. Beverage Plus America Corp.*, 10 Civ. 0706 (JSR) (RLE),
      2011 U.S. Dist. LEXIS 94015, at *5, *7-8 (S.D.N.Y. Apr. 12, 2011) ...................8, 11, 12

*In re NetBank, Inc.*, 259 F.R.D. 656, 671-72 (N.D. Ga. 2009).....................................................18

*Pa. Ave. Funds v. Inyx Inc.*, 08 Civ. 6857 (PKC), 2011 U.S. Dist. LEXIS 72999,
      at *28 (S.D.N.Y. July 5, 2011) ...................................................................................19

*Pidcock v. Sunnyland Am., Inc.*, 854 F.2d 443, 446 (11th Cir. 1988) .............................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
      229 F.R.D. 395, 415 (S.D.N.Y. 2004) ...................................................................................6

*In re Prudential Sec. Inc. Ltd.. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995).................14

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 101,
      105-106, 109, 120-121 (S.D.N.Y. 2011) ................................................................... *passim*

*Robidoux v. Celani*, 987 F.2d 931, 935, 936-37 (2d Cir. 1993) ...............................................8, 11

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) ............................11

*Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS 11931,
      at *10-11 (S.D.N.Y. Aug. 17, 2000)..............................................................................6, 8

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 200
      (2d Cir. 2008).............................................................................................................16, 17

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200-201 (S.D.N.Y. 1992) ......................11, 21

*In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006)........................11

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139-41 (2d Cir. 2001)...........14, 22

*In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83-84 (S.D.N.Y. 2007)..........................8

## STATUTES AND RULES

FED. R. CIV. P. RULE 23 ...................................................................................................... *passim*

## I.   INTRODUCTION

Lead Plaintiffs Sidney Gordon and Jeffrey Tauber ("Plaintiffs") respectfully move

pursuant to Fed. R. Civ. P. 23(a) and (b)(3) to certify the following two Classes[1]:

> **The Seller Class**[2]:  All persons and entities who sold shares of Sigma Designs, Inc. ("Sigma") on any day, during the period from July 13, 2007 through November 28, 2007, listed on Schedule A hereto (the "Seller Class Period").[3]

> **The Buyer Class**:  All persons and entities who bought shares of Sigma on any day, during the period from December 20, 2007 through March 12, 2008, listed on Schedule B hereto (the "Buyer Class Period").

Plaintiffs also seek appointment as Class representatives, and appointment of their Co-Lead

Counsel -- Shapiro Haber & Urmy LLP ("Shapiro Haber & Urmy") and Brower Piven, A

Professional Corporation ("Brower Piven") -- as Class Counsel.

The Second Circuit emphatically favors the use of class actions to resolve securities

claims and has directed that Rule 23 be applied liberally.[4]  Movants overwhelmingly satisfy the

---

[1] Excluded from each proposed Class are: (1) Defendants (*see* Third Amended Class Action Complaint, Dkt. No. 105 ¶¶ 19-23); (2) members of the immediate family of the Individual Defendants; (3) any subsidiaries or affiliates of the Defendants; (4) any person or entity who is, or was during the relevant Class Period, an investor in or a partner, officer, director, employee, or controlling person of the Defendants; (5) any entity in which any of the Defendants has a controlling interest; and (6) the legal representatives, heirs, successors, or assigns of any of the excluded persons or entities.

[2] Although buyer classes are more common, courts also have certified seller classes asserting claims under the securities laws.  Indeed, the litigation that produced the seminal Supreme Court decision *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), involved a seller class.  *Levinson v. Basic Inc.*, 871 F.2d 562 (6th Cir. 1989) (affirming class certification).

[3] Each Class Period includes the days on which the Insider Trading Defendants bought or sold Sigma shares and, as to each such trade, the five immediately following trading days. Defendants previously conceded that courts in this Circuit view five to seven days as the period within which trades must occur to be "contemporaneous" under applicable law.  Defendants Sonar Capital Management LLC's And Neil Druker's Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Class Action Complaint, filed May 15, 2012 (Dkt. No. 43), at 22.

[4] *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d

requirements of Rule 23.  Common questions predominate over any conceivable issues affecting only individual Class members.  All Class members seek to prove the same wrongdoing by the same Defendants.  Plaintiffs' claims are based predominantly, if not entirely, on Defendants' conduct.  In addition, the proposed Class representatives' claims are typical, and they will continue, fairly and adequately, to protect the interests of the Classes they seek to represent. Through experienced counsel, Plaintiffs have resolutely pursued the Classes' interests by preparing and filing multiple pleadings, culminating in the current Third Amended Class Action Complaint (the "Complaint"); concluding a settlement with one Defendant, Noah Freeman, for his cooperation with the further prosecution of the case and other consideration; ultimately overcoming Defendants' motion to dismiss the Second Amended Complaint; and obtaining necessary discovery, including third-party discovery.  The proposed Class representatives have provided documents in response to Defendants' document requests and have appeared for deposition.[5]  Rule 23's "superiority" requirement also is readily met.  Certification will allow hundreds, if not thousands, of virtually identical claims to be litigated efficiently here, avoiding the burden to the courts of multiple lawsuits.

---

176, 179 (2d Cir. 1990) ("In light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally."); *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc*., 277 F.R.D. 97, 101 (S.D.N.Y. 2011) ("As courts have repeatedly found, suits alleging violations of the securities laws . . . are especially amenable to class action resolution."); *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) ("Given this favorable view of the class action device, courts have applied Rule 23 in liberal fashion when considering claims brought under the securities laws."); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.  It is well recognized that private enforcement of these laws is a necessary supplement to government regulation.").

[5] *See Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (plaintiffs "have demonstrated their commitment to pursue these claims on behalf of class members by responding to extensive written discovery requests and sitting for lengthy depositions").

Accordingly, Plaintiffs respectfully request that this action be certified as a class action.

## II.    STATEMENT OF FACTS

### A.    Summary of the Action[6]

Plaintiffs allege that, in violation of Sections 10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, Defendants Sonar Capital Management LLC ("Sonar"); Neil Druker, the CEO and primary manager of Sonar; and the Sonar Hedge Funds[7] (the "Insider Trading Defendants") engaged in a massive insider-trading scheme, which included trading in Sigma shares, allowing Defendants to reap tens of millions of dollars in illicit profits and avoided losses.  As detailed in the Complaint, the Insider Trading Defendants maintained an extensive network of sources that provided material, nonpublic information concerning Sigma and other publicly traded companies.  The Insider Trading Defendants used inside information, not yet revealed to the public, concerning Sigma's quarterly financial results to purchase more than 1.5 million shares of Sigma stock, earning them millions of dollars in illicit profits, and to sell 150,000 Sigma shares, avoiding losses of millions of dollars more.[8]  Complaint ¶¶ 7-8.  Thus, at the same time members of the Seller Class were selling Sigma shares, the Insider Trading Defendants were buying shares using

---

[6] For a fuller discussion of the facts and Plaintiffs' and the Classes' claims, Plaintiffs respectfully refer the Court to the Complaint.

[7] The Sonar Hedge Funds, investment vehicles managed by Sonar, are Sonar Partners, LP; Sonar Institutional Fund, LP; and Sonar Overseas Fund Ltd.  Also named as a Defendant is Primary Global Research, LLC, which has filed for protection under the federal Bankruptcy Act.  This action also was brought against Noah Freeman, but all of the claims of Plaintiffs and the Classes against him have been settled.  As discussed below, the Complaint also names as Investor Defendants numerous investors in the Sonar Hedge Funds who withdrew the profits from the insider trading at issue here.

[8] The Complaint also alleges that the Insider Trading Defendants made a profit of more than $4 million from short sale transactions in Sigma stock and a profit of more than $1.5 million on a put option or similar transaction in Sigma stock.  Complaint ¶ 8.

positive, non-public information that was not yet reflected in the share price and that ultimately caused the share price to rise when the information was disclosed to the market.  And, at the same time members of the Buyer Class were buying Sigma shares, the Insider Trading Defendants were selling shares using negative, non-public information that was not yet reflected in the share price and that ultimately caused the share price to drop when the information was disclosed to the market.  In addition, the Complaint asserts claims against certain persons and entities who were investors in the Sonar Hedge Funds and redeemed their interests in those Funds or who received dividends or other disbursements, through liquidation or otherwise, from those Funds after July 1, 2007 (the "Investor Defendants") to void the transfers as fraudulent under Mass. Gen. Laws Ch. 109A §§ 5, 6 and as constituting unjust enrichment at the expense of Plaintiffs and Class members.[9]

This litigation was commenced by the filing of an initial complaint by Plaintiff Gordon in December 2011 (Dkt. No. 1).  Thereafter, the Lead Plaintiffs filed an Amended Class Action Complaint (Dkt. No. 39), which was dismissed, without prejudice to repleading, upon Defendants' motions, after briefing and oral argument, by Order entered February 8, 2013 (Dkt. No. 63), and followed by an Opinion and Order entered June 13, 2013 (Dkt. No. 76).  Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), all discovery and other

---

[9] Plaintiffs named the Investor Defendants in their Third Amended Complaint, Dkt. No. 105, filed on December 30, 2014.  Plaintiffs are in the process of completing service upon the Investor Defendants. The Court indicated during a hearing on December 23, 2014 that it is inclined to bifurcate the claims against the Investor Defendants, although it has not yet done so.  Of course, if the Court grants this motion for class certification, the Investor Defendants will have the opportunity to seek alteration, amendment, or decertification of the class after they have been served.  *See* Fed. R. Civ. P. 23(c)(1)(C).  In the alternative, the Court may defer resolution of whether Plaintiffs' claims against the Investor Defendants should be certified as a class action until the Investor Defendants have been served and thus have the opportunity to be heard on Plaintiffs' motion.

proceedings in the case were automatically stayed during the pendency of Defendants' motions to dismiss.  15 U.S.C. § 78u-4(b)(3)(B).  Prior to repleading, Plaintiffs settled with Defendant Freeman for $550,000 in cash and his valuable cooperation with the further prosecution of the case.  The Court approved the partial settlement, entering a Final Judgment and Order of Dismissal as to Freeman on June 7, 2013 (Dkt. No. 73).  On July 2, 2013, Plaintiffs filed a Second Amended Class Action Complaint (Dkt. No. 79).  After briefing and oral argument, by Order, entered November 1, 2013 (Dkt. No. 90), the Court denied Defendants' renewed motion to dismiss, which the Court explained further in its August 1, 2014 Memorandum (Dkt. No. 103).  Upon the lifting of the PSLRA stay, Plaintiffs commenced discovery and, thus far, have secured production of more than 20,000 pages of documents from Sonar and Sigma.  Discovery is ongoing.  With leave of Court, on December 30, 2014, Plaintiffs filed their Third Amended Class Action Complaint (Dkt. No. 105), which names the Investor Defendants (previously identified as "John and Jane Does"), based on information obtained in discovery, and is now the operative pleading.

**B.    The Proposed Class Representatives**

The two Court-appointed Lead Plaintiffs -- Sidney Gordon and Jeffrey Tauber -- seek appointment as Class representatives.  The Lead Plaintiffs have amply demonstrated their commitment to the Classes by vigorously litigating this action over several years.  The proposed Class representatives traded Sigma shares during the Class Periods contemporaneously with Sonar's trades in those shares, and were damaged thereby as a result of Defendants' wrongdoing. *See* Complaint Exs. A-C (setting forth Insider Trading Defendants' and Plaintiffs' purchases and sales of Sigma stock).  Both Tauber and Gordon sold Sigma shares during the Seller Class

5

Period.[10]   Tauber also purchased Sigma shares during the Purchaser Class Period.[11]
Accordingly, both Tauber and Gordon seek to represent the Seller Class and Tauber also seeks to
represent the Buyer Class.

By Memorandum Order entered April 9, 2012 (Dkt. No. 34), the Court previously
approved the appointment of Gordon and Tauber to serve as Co-Lead Plaintiffs pursuant to the
PSLRA.  The Court found that "Gordon and Tauber collectively satisfy the requirements of Rule

---

[10] Defendants argued on their motion to dismiss the Second Amended Complaint that Plaintiff
Tauber was a net purchaser of Sigma shares.  Defendants' argument fails to take account that
Tauber had significant holdings of Sigma shares as of the beginning of each Class Period, and
ultimately suffered a loss. Further, netting purchases and sales is irrelevant here since Plaintiffs
are seeking "disgorgement" in connection with their insider trading claims rather than simply
"traditional out-of-pocket damages based on the true 'value' of the shares purchased or damages
claimed by reason of market erosion attributable to tippee trading."  *Elkind v. Liggett & Myers,
Inc*., 635 F.2d 156, 172 (2d Cir. 1980).  *See also Pidcock v. Sunnyland Am., Inc*., 854 F.2d 443,
446 (11th Cir. 1988) (same).  Moreover, courts have flatly rejected arguments for netting gains
and losses in a securities case.  *See In re CIGNA Corp. Sec. Litig*., 459 F. Supp. 2d 338, 350
(E.D. Pa. 2006) (citing cases that "have refused to allow alleged gains to cancel out purported
losses, and [that] have rejected arguments that a plaintiff who was a 'net seller' and made money
during the class period could not proceed with claims under federal securities laws"; "a
frequently cited justification for adopting a transaction-based methodology is that aggregation
(i.e., offsetting) undermines a major goal of the securities laws -- namely deterrence of fraud").
*See also* Memorandum, filed August 1, 2014, at page 6 (Dkt. No. 103) (addressing Defendants'
motion to dismiss).

[11] Any argument concerning the volume of Tauber's trading lacks merit.  Although his trading
records appear to show multiple trades on certain days, in each instance, as Tauber's trade
confirmations clearly evidence, these were partial executions of a single order and were all
identified with the same order number.  Also, even though on two occasions during the Class
Periods Tauber bought and sold Sigma shares on the same day, virtually all his buying and
selling was not on the same day and his trades were spread out over time.  Moreover, courts
repeatedly have held that allegations of "day trading" do not render a proposed representative
atypical.  *See*, *e.g., Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474 (SHS), 2000 U.S. Dist.
LEXIS 11931, at *10-11 (S.D.N.Y. Aug. 17, 2000); *Andrada v. Atherogenics, Inc.*, 05 Civ.
00061 (RJH), 2005 U.S. Dist. LEXIS 6777, at *17 n.2 (S.D.N.Y. Apr. 18, 2005); *Pirelli
Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc*., 229 F.R.D. 395,
415 (S.D.N.Y. 2004); *In re Host Am. Corp. Sec. Litig*., 236 F.R.D. 102, 108 & n.9 (D. Conn.
2006).

23." Mem. Order at 4.  The Court also approved Gordon's and Tauber's choice of counsel,

Shapiro Haber & Urmy and Brower Piven, to serve as Co-Lead Counsel.  *Id.* at 5.

## III.    ARGUMENT

### A.    The Requirements Of Rule 23

Class certification turns solely on whether Rule 23's prerequisites are met:

> While, to be sure, a class certification motion may require "prob[ing] behind the pleadings," [*Comcast*, 133 S. Ct.] at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551), "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis . . . ." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re IPO*, 471 F.3d at 41).

*Megason v. Starjem Restaurant Corp.*, 12 Civ. 1299 (NRB), 2014 U.S. Dist. LEXIS 3910, at *19

(S.D.N.Y.  Jan. 13, 2014).  *See also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct.

1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits

inquiries at the certification stage.").

### B.    Rule 23(a) Is Satisfied

To certify a class, a plaintiff first must satisfy the "numerosity," "commonality,"

"typicality," and "adequacy" requirements of Rule 23(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As Plaintiffs will show, they more than meet these requirements.

#### 1.    Each Class Is So Numerous That Joinder Of All Members Is Impracticable

There can be no serious dispute that the members of each proposed Class are sufficiently

numerous to warrant certification, as joinder is plainly impracticable.  "Impracticable does not

mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (district court's conclusion "that numerosity was lacking because plaintiffs had not shown the class to be so large that joinder was 'impossible' . . . applied the wrong standard"). "'Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83-84 (S.D.N.Y. 2007) (quoting *In re Blech Sec. Litig.*, 187 F.R.D. at 103). *See also Robidoux*, 987 F.2d at 935 ("evidence of exact class size or identity of class members" not required); *Merino v. Beverage Plus America Corp.*, 10 Civ. 0706 (JSR) (RLE), 2011 U.S. Dist. LEXIS 94015, at *5 (S.D.N.Y. Apr. 12, 2011). "'In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *Vivendi*, 242 F.R.D. at 84 (citation omitted). In this Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). *See also Ebin*, 297 F.R.D. at 565; *Vivendi*, 242 F.R.D. at 83.

Throughout the Class Periods, Sigma common stock was actively traded on the NASDAQ Global Market under the ticker symbol SIGM. Complaint ¶ 25. According to Sigma's Annual Report on Form 10-K for the fiscal year ended February 3, 2007, Sigma had 22,903,930 shares of common stock outstanding on March 30, 2007, which were held by approximately 13,020 shareholders of record as of April 19, 2007,[12] and, according to Sigma's Annual Report on Form 10-K for the fiscal year ended February 2, 2008, Sigma had 26,537,317 shares of common stock outstanding on March 21, 2008, which were held by approximately 178

---

[12] Sigma Annual Report (Form 10-K), at 1, 22 (February 3, 2007), *available at* http://www.sec.gov/Archives/edgar/data/790715/000119312507086571/d10k.htm.

shareholders of record as of March 21, 2008.[13]  During the Seller Class Period, the average daily trading volume in Sigma stock was approximately 1.4 million shares. *See* Kerr Decl.[14] at ¶ 3. During the Buyer Class Period, the average daily trading volume in Sigma stock was approximately 3.3 million shares.  *See id.*   It is eminently reasonable to infer that each Class has many hundreds, if not thousands, of geographically dispersed members.   Complaint ¶ 149. Without any doubt, each Class has far more than 40 members and therefore, presumptively, satisfies numerosity.

**2.      There Are Questions Of Law And Fact Common To Members Of The Class**

Rule 23(a) requires only "questions of law *or* fact common to the class."  FED. R. CIV. P. 23(a)(2) (emphasis added).  "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "Commonality 'does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment.'"  *Damassia v. Duane Reade, Inc*., 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (citation omitted).  "Even a single common question of law or fact may suffice to satisfy the commonality requirement . . ."  *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 105.[15]

---

[13]  Sigma Annual Report (Form 10-K), at 1, 25 (April 2, 2008), *available at* http://www.sec.gov/Archives/edgar/data/790715/000126645408000232/sigma_10k-020208.htm.

[14]  "Kerr Decl." refers to the Declaration of Brian C. Kerr in Support of Plaintiffs' Motion For Class Certification, Appointment Of Class Representatives, and Appointment Of Class Counsel, submitted herewith.

[15]  *See also Damassia*, 250 F.R.D. at 156 ("'[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members.'") (citation omitted); *In re Blech*, 187 F.R.D. at 104 ("The commonality requirement . . . has been applied permissively by courts in the context of securities fraud litigation.").

Here, the factual and legal bases for all Class members' claims, whether in the Buyer Class or the Seller Class, are exactly the same.  All Class members suffered damages as a result of the identical fraudulent conduct in violation of the federal securities laws.  All Class members assert claims under the same legal theories.  In this case, common legal and factual issues include:  (i) whether the federal securities laws were violated by the Insider Trading Defendants; (ii) whether, by trading in Sigma securities while in possession of material, non-public information, the Insider Trading Defendants engaged in manipulative or deceptive devices or schemes to defraud in violation of § 10(b) of the Exchange Act and Rule 10b-5; (iii) whether the Insider Trading Defendants are liable to Plaintiffs and the Classes for insider trading pursuant to § 20A of the Exchange Act; (iv) whether Druker is liable to Plaintiffs and the Classes as "controlling person" of Sonar and the Sonar Hedge Funds pursuant to § 20(a) of the Exchange Act; (v) whether the Sonar Hedge Funds' payments to the Investor Defendants for their redemptions of their equity interests in the Sonar Hedge Funds are voidable as fraudulent transfers; (vi) whether the Investor Defendants were unjustly enriched by receiving and retaining the profits made by the Sonar Hedge Funds through their insider trading scheme in Sigma stock; and (vii) the relief to which Plaintiffs and the members of the Classes are entitled.  Complaint ¶ 151.  In short, virtually all the legal and factual issues to be litigated in this case are common to all Class members, and are susceptible to common proof on a class-wide basis.

### 3.    Plaintiffs' Claims Are Typical Of The Claims Of The Other Class Members

Rule 23(a)(3) requires that the claims asserted by a proposed class representative be typical of the claims of the other class members.[16]  Typicality "'is satisfied when each class

---

[16] The commonality and typicality requirements "'tend to merge' because '[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so

member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A.*, 126  F.3d at 376).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37.[17] "'[T]ypicality refers to the nature of the claim of the class representatives and not to the specific facts from which the claims arose . . .'" *Ebin*, 297 F.R.D. at 566 (citation omitted).  "[T]ypical," therefore, does not mean "identical."  *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 1992).[18]

The proposed Class representatives' claims in this case clearly are typical of the Class members' claims because they arise out of the very same, uniform pattern of conduct -- *i.e.*, the Insider Trading Defendants' insider trading scheme and the subsequent fraudulent transfers to

---

inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (alterations in original) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  *See also Pub. Employees' Ret. Sys.*, 277 F.R.D. at 106.

[17] *See also Caridad*, 191 F.3d at 293 (typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members"); *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 106; *Damassia*, 250 F.R.D. at 157-58 ("As with commonality, typicality need not be complete."); *Merino*, 2011 U.S. Dist. LEXIS 94015, at *7; *Trief*, 144 F.R.D. at 201 ("It is well settled that the 'mere existence of individualized factual questions with respect to the class representative's claim will not bar certification.'") (quoting *Gary Plastic*, 903 F.2d at 180).

[18] *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007) ("A plaintiff's sophistication as an investor generally is irrelevant to whether or not his claims are typical of the class where subjective reliance is not an issue in the case.") (citation omitted); *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (plaintiff's "relative sophistication and the particulars of his investment strategy do not suffice to render [the investor] inadequate or atypical of the class").

the Investor Defendants.  Thus, the proposed Class representatives are in precisely the same position as other Class members, all of whom have been injured by the same illegal conduct.  In addition, Plaintiffs and other Class members all seek recovery under the same legal theories. The typicality requirement is met.

### 4.        Plaintiffs Will Fairly And Adequately Protect The Classes' Interests

Plaintiffs also must show that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To do so, Plaintiffs must show: (i) that their interests are not antagonistic to the other members of the Classes; and (ii) that their attorneys are qualified, experienced, and generally able to conduct the litigation.[19]

First, Plaintiffs and other Class members all have been injured by the same wrongful course of conduct of Defendants and assert the same claims.  "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158.  *See also Merino*, 2011 U.S. Dist. LEXIS 94015, at *8 ("their typicality is evidence that they will adequately represent the interests of other class members"); *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 109.  It is in the proposed Class representatives' interests to prosecute this action vigorously on behalf of all Class members.  They have no interests or goals in this litigation that differ from those of all other Class members.  By their determined efforts, Plaintiffs have proven their dedication to the vigorous pursuit of this action on behalf of all Class members.  "Courts generally interpret this requirement to mean that the named plaintiffs must be similarly situated to the proposed class in terms of interests and injury . . . and they have no interests adverse to those of the putative class."  *In re Celestica Inc. Sec.*

---

[19] *See Marisol A.*, 126 F.3d at 378; *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *Ebin*, 297 F.R.D. at 566.

*Litig.*, 07 Civ. 0312 (GBD), 2014 U.S. Dist. LEXIS 116562, at *14 n.3 (S.D.N.Y.  Aug. 20, 2014).

Second, proposed Class Counsel -- Brower Piven and Shapiro Haber & Urmy -- are experienced class action attorneys who have qualified as lead counsel in numerous nationwide class actions (including this one).  The proposed Class Counsel have substantial experience and expertise in the investigation and prosecution of complex class actions, especially those involving violations of the federal securities laws.  Their credentials and experience and the appropriateness of appointing them as Class Counsel are addressed below.

### C.    This Action Meets The Requirements Of Rule 23(b)(3)

As shown, Plaintiffs meet all the requirements of Rule 23(a).  They also satisfy Rule 23(b), which provides that "an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition" the movant shows (pertinent here) "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).  Thus, Rule 23(b)(3) has two elements: "predominance" and "superiority."  Both are easily shown here.

### 1.    Common Questions Of Law And Fact Predominate

The Second Circuit has explained:

> The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Eli Lilly & Co.*, 620 F.3d at 131 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196, 185 L. Ed. 2d 308 (2013) (in securities fraud class action, explaining that "Rule 23(b)(3) . . . does ***not*** require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof[,]" but rather, requires "that common questions ***predominate*** over any questions affecting

only individual class members" (internal quotation marks and alterations omitted)).

*Catholic Health Care West v. US Foodserv.*, 729 F.3d 108, 118 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1938 (2014) (emphasis in original).  *See also Ebin v. Kangadis Family Mgmt. LLC*, 14-cv-1324 (JSR), 2014 U.S. Dist. LEXIS 132129, at *10 n.3 (S.D.N.Y. Sept. 18, 2014). "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."  *In re Prudential Sec. Inc. Ltd.. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995) (quoting *Dura-Bilt Corp.*, 89 F.R.D. at 93).  In *Amchem*, the Supreme Court stated: "Predominance is a test readily met in certain cases alleging consumer or securities fraud."  *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (U.S. 1997).  The focus of this litigation is Defendants' insider trading scheme, which is the basis for all Class members' claims.

After resolving the common liability issues, all that will remain will be the mechanical task of computing individual Class members' damages using a common arithmetic formula. That individual Class members will be entitled to different amounts of damages under such a formula does not affect predominance.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment").  With regard to their individual damages, Class members likely will have to submit basic documentary evidence only as to the number of Sigma shares traded, the trade dates, and the price paid or received, pursuant to a customary proof of claims process, after trial.

2.    **Class Members Are Entitled To A Presumption Of Reliance Under**
*Basic v. Levinson*

While Class members' § 10(b) claims may require a showing of reliance, that does not defeat predominance because that showing can be made here on a class-wide basis. In *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), the Supreme Court held that "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id.* at 247. The Supreme Court explained:

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements."

*Id.* at 241-42 (citation omitted). Just last year, in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), the Supreme Court reaffirmed *Basic*'s presumption of reliance: "[W]henever the investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 247).

To trigger the presumption of reliance under *Basic*, a plaintiff need show only: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton*, 134 S. Ct. at 2408. All of these prerequisites -- publicity, materiality, market efficiency, and market timing -- are easily satisfied here.

First (publicity), Plaintiffs allege that Defendants improperly traded on non-public information concerning Sigma's quarterly results that ultimately was disclosed to the market.

*See*, *e.g.*, Complaint ¶¶ 64-71, 73-128.  Second (materiality), although in *Amgen* the Supreme Court held, and in *Halliburton* it confirmed, that materiality need not be established at the class certification stage,[20] the materiality of the non-public information about Sigma's performance from which the Insider Trading Defendants profited handsomely is beyond dispute.  Among other things, upon the public disclosure of the inside information, Sigma's stock price moved significantly.  *See* Complaint ¶¶ 100, 115, 123.  Third (market efficiency), as shown below, Sigma stock clearly traded in an efficient market during the Class Periods.  Fourth (market timing), Lead Plaintiffs and other Class members all traded Sigma stock during the time that the Insider Trading Defendants were trading on the inside information about Sigma and before that information was released to the investing public.

Courts in this Circuit routinely weigh multiple factors to assess whether the market for a particular security is sufficiently "efficient" to warrant *Basic*'s presumption of reliance, including the factors first articulated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).  *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 200 (2d Cir. 2008); *McIntire v. China Mediaexpress Holdings, Inc.*, 11-cv-0804 (VM), 2014 U.S. Dist. LEXIS 113446, at *31 (S.D.N.Y. Aug. 15, 2014) ("When assessing the Market Efficiency Requirement, courts consider the factors laid out in *Cammer v. Bloom* . . ."); *Billhofer v. Flamel Tech., S.A.*, 281 F.R.D. 150, 159-60 (S.D.N.Y. 2012).

---

[20] "Because the question of materiality is common to the class, and because a failure of proof on that issue would not result in questions 'affecting only individual members' predominating, Fed. Rule Civ. Proc. 23(b)(3), [the plaintiff is] not required to prove the materiality of [the defendant's] alleged misrepresentations and omissions at the class-certification stage." *Amgen*, 133 S. Ct. at 1197.  *See also Halliburton*, 134 S. Ct. at 2416 ("a failure to prove materiality would necessarily defeat every plaintiff's claim on the merits; it would not simply preclude invocation of the presumption and thereby cause individual questions of reliance to predominate over common ones") (citations omitted).

16

The *Cammer* factors include:  the security's average weekly trading volume; the number of securities analysts following and reporting on the issuer; the existence of market makers and arbitrageurs in the security; the issuer's eligibility to file a  Form S-3 registration statement (for a shelf-registration of its securities); and the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the price of the security.  *Teamsters Local 445*, 546 F.3d at 200; *McIntire*, 2014 U.S. Dist. LEXIS 113446, at *31; *Cammer*, 711 F. Supp. at 1287; *Billhofer*, 281 F.R.D. at 160.  "[T]he *Cammer* factors are meant to be an analytical tool to assist in the evaluation of market efficiency, not a rigid checklist."  *McIntire*, 2014 U.S. Dist. LEXIS 113446, at *33 ("The Court has found nothing indicating that every factor be established, or that the list is necessarily exclusive.").  *See also Billhofer*, 281 F.R.D. at 160.  Courts in this Circuit also have considered additional factors set forth in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001):  the issuer's market capitalization; the relative size of the bid-ask spread for the security; and the size of the issuer's "public float."  *See McIntire*, 2014 U.S. Dist. LEXIS 113446, at *31; *Billhofer*, 281 F.R.D. at 160.

Consideration of even some of the *Cammer/Krogman* factors overwhelmingly establishes that Sigma shares traded in an efficient market during the Class Periods:

(1)  **Trading Volume.**  Sigma's average weekly trading volume[21] for the Seller Class Period was approximately 8.2 million shares (Kerr Decl. at ¶ 4), which represented about 33% of its outstanding shares.[22]  Sigma's average weekly trading volume during the Buyer Class Period was approximately 16.6 million shares, which represented about 62% of its outstanding shares

---

[21] The average weekly trading volume for each Class Period includes those weeks that have one or more days in the Class Period.

[22] As of August 31, 2007, there were 24,398,318 shares of Sigma issued and outstanding.  Sigma Quarterly Report (Form 10-Q), at 1 (September 13, 2007), *available at* http://www.sec.gov/ Archives/edgar/data/790715/000126645407000433/sigma_10q-080407.htm.

(Kerr Decl. at ¶ 5).[23]   These figures significantly exceed the parameter set forth in *Cammer*. Under *Cammer*, "average weekly trading of . . . one percent would justify a substantial presumption [of an efficient market]."   711 F. Supp. at 1286.

(2)  **Analyst Coverage.**   Significant analyst coverage implies that new information about a company was "closely reviewed by investment professionals, who would in turn make buy/sell recommendations to client investors."   *Cammer*, 711 F. Supp. at 1286.   "This factor is commonly met where multiple large brokerage firms produce and disseminate analysis reports on the financial condition of a company for the entirety of a Class Period."   *McIntire*, 2014 U.S. Dist. LEXIS 113446, at *33.   During both the Seller and Buyer Class Periods, at least 12 analysts followed and reported on Sigma stock.   Kerr Decl. at ¶ 6.

(3)  **S-3 Registration Statements.**   An issuer's eligibility to file a "short form" S-3 registration statement with the SEC "is an important factor weighing in favor of a finding that a market is efficient."   *Cammer*, 711 F. Supp. at 1285.   Indeed, "the SEC permits [use of Form S-3] only on the premise that the stock is already traded on an open and efficient market."   *In re NetBank, Inc.*, 259 F.R.D. 656, 671-72 (N.D. Ga. 2009) (quoting *Krogman*, 202 F.R.D. at 476). *See also Griffin v. GK Intelligent Sys.*, 196 F.R.D. 298, 303-304 (S.D. Tex. 2000) ("[o]nly corporations whose stocks are actively traded and widely followed are allowed to use the S-3 form by the SEC").   To file a Form S-3, among other things, a company must have timely filed SEC reports for twelve consecutive months and have a market capitalization of at least $75 million. *See* 17 C.F.R. § 239.13.   Based on a review of Sigma's SEC filings, it appears that Sigma was current with its filings at all relevant times.   Kerr Decl. at ¶ 7.   Further, during the

---

[23] As of March 1, 2008, there were 26,537,317 shares of Sigma issued and outstanding. Sigma Annual Report (Form 10-K), at 1 (April 2, 2008), *available at* http://www.sec.gov/Archives/edgar/data/790715/000126645408000232/sigma_10k-020208.htm.

Class Periods, Sigma's market capitalization ranged from $489.6 million to $1.7 billion. *Id.* at ¶ 8. This indicates that Sigma was eligible to file a Form S-3 during the Class Periods. Sigma's eligibility to use Form S-3 also is evidenced by the fact that it actually filed such Forms on January 27, 2005 and on November 25, 2009.

(4) **Market Capitalization.** "Market capitalization . . . may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *Krogman*, 202 F.R.D. at 478. Here, during the Class Periods, Sigma's market capitalization ranged from $489.6 million to $1.7 billion. Kerr Decl. at ¶ 8. Thus, this factor also weighs heavily in favor of efficiency. *See McIntire,* 2014 U.S. Dist. LEXIS 113446, at *37 (finding market capitalization of $292 million to $585 million indicative of market efficiency); *Pa. Ave. Funds v. Inyx Inc*., 08 Civ. 6857 (PKC), 2011 U.S. Dist. LEXIS 72999, at *28 (S.D.N.Y. July 5, 2011) (finding market capitalization in excess of $22.4 million indicative of market efficiency).

(5) **Shares Held By Non-Insiders ("Float").** "Because insiders may have private information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information about the security." *Krogman*, 202 F.R.D. at 478. Here, throughout the Class Periods, at least 94% of Sigma's outstanding shares were held by non-insiders.[24] This factor also supports a finding of efficiency.

---

[24] As of November 15, 2007, as a group, Sigma's directors and executive officers beneficially owned 6.0% of Sigma's outstanding shares. Sigma Definitive Proxy (Schedule 14A), at 12 (December 19, 2007) *available at* http://www.sec.gov/Archives/edgar/data/790715/000104746907010156/a2181779zdef14a.htm. As of May 1, 2008, Sigma's directors and executive officers as a group beneficially owned 5.52% of Sigma's outstanding shares. Sigma Definitive Proxy (Schedule 14A), at 26 (May 29, 2008) *available at* http://www.sec.gov/Archives/edgar/data/790715/000104746908007046/ a2186018zdef14a.htm.

Unquestionably, Sigma shares traded in a highly efficient market.  The presumption of

reliance under *Basic* plainly applies.  Indeed, Defendants recognize as much.  In their Answer to

the Second Amended Class Action Complaint (Dkt. No. 94, at ¶ 199), they assert as their Ninth

Affirmative Defense:

> The purported material, non-public information alleged in the SAC was publicly
> disclosed or in the public domain and, as such, was available to Plaintiffs and
> similarly situated putative class members, and was at all times reflected in the
> market price of Sigma stock.

### 3.   Class Members Are Also Entitled To A Presumption Of Reliance Under *Affiliated Ute*

This Court has correctly noted:

> [A]n insider trading case based, as this one is, on a "Dirks" theory of liability is an
> "omission" case, because it posits that the recipient (a "tippee") of material, non-
> public information from an insider (a "tipper") of a public company assumes the
> insider's fiduciary duty not to trade on the information at the expense of the
> public company's shareholders unless the information is first disclosed.

June 12, 2013 Opinion and Order (Dkt. No. 76), pages 4-5.  Under the Supreme Court's decision

in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972):

> In connection with a claim of material omission . . . "positive proof of reliance is
> not a prerequisite to recovery.  All that is necessary is that the facts withheld be
> material in the sense that a reasonable investor might have considered them
> important in the making of this decision."  *Affiliated Ute Citizens v. United States*,
> 406 U.S. 128, 153-54 . . . (1972); *see also duPont v. Brady*, 828 F.2d 75, 78 (2d
> Cir. 1987) ("'in instances of total non-disclosure, . . . it is of course impossible to
> demonstrate reliance'") (quoting *Titan Group, Inc. v. Faggen*, 513 F.2d 234, 239
> (2d Cir.), *cert. denied*, 423 U.S. 840 . . . (1975)).  Thus, "once the plaintiff
> establishes the materiality of the omission by a preponderance of the evidence, the
> burden shifts to the defendant to establish also by a preponderance of the evidence
> that the plaintiff did not rely on the omission in making the investment decision."
> *DuPont v. Brady*, 828 F.2d at 76 . . .

*Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992) (citations omitted).  *See also Black v.

Finantra Capital, Inc*., 418 F.3d 203, 209 (2d Cir. 2005) ("[I]n the case of omissions, reliance on

the omitted information may be presumed where such information is material.") (citing *Affiliated

*Ute*, 406 U.S. at 153-54).  Although, as noted above, the Supreme Court has held that materiality need not be established at the class certification stage, the non-public information from which the Insider Trading Defendants illegally profited obviously was material.  *Affiliated Ute* clearly applies.

Because all Class members are entitled to a presumption of reliance under both *Basic* and *Affiliated Ute*, reliance presents yet another common issue that predominates.

### 4.      A Class Action Is The Superior Method Of Adjudication

The superiority prong of Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication.  The class action device is particularly appropriate for addressing the claims in this case.  "'In general, securities suits . . . easily satisfy the superiority requirement of Rule 23.'"  *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 120 (*quoting Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 187 (S.D.N.Y. 2008)).  *See also Trief*, 144 F.R.D. at 200 ("The availability of class action status allows plaintiffs vigorously to guard their rights and concurrently has the effect of facilitating enforcement of the federal securities laws.").

The claims here involve a large number of geographically dispersed investors, whose relatively small claims make it prohibitively expensive to seek recovery through individual litigation.[25]  The four factors specified in Rule 23(b)(3) all strongly favor class certification in this case:

---

[25] *See Califano v. Yamasaki*, 442 U.S. 682, 690 (1979) (duplication of actions is the very "evil that Rule 23 was designed to prevent"); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ("the alternatives [to a class action] are either no recourse for thousands of [investors]" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake"); *Wagner*, 251 F.R.D. at 120 ("'Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.'") (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)).  *See also Pub. Employees' Ret. Sys.*, 277

- Individual Class members do not have an interest in controlling the prosecution of separate actions.  Although a few Class members may have suffered damages substantial enough to make it economically viable for them to sue on their own, that does not warrant a finding that Class members have an interest in individually controlling the litigation so that the action may not be certified under Rule 23(b)(3).

- Plaintiffs are not aware of any other individual or class litigation seeking recovery from Defendants based on the same misconduct alleged in this case.

- It clearly is desirable to litigate all Class members' claims in this forum to avoid the risk of inconsistent adjudications and promote the fair and efficient use of the judicial system.  In addition, "'the Southern District of New York is well known to have expertise in securities law.'"  *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 121 (citation omitted).

- The management of this litigation as a class action presents no unusual difficulties.  Plaintiffs' counsel and the Court have handled numerous similar actions and the appropriate procedures and techniques for the management of such actions, including providing appropriate notice to Class members, are well established.

Moreover, the flexibility provided to the Court under Rule 23 will enable it to address and resolve any management difficulties if they should arise.  *See* FED. R. CIV. P. 23(c); FED. R. CIV. P. 23(d).  *See also Visa*, 280 F.3d at 140-41 ("failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule"; "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action") (internal quotation marks omitted; citation omitted); *Pub. Employees' Ret. Sys.*, 277 F.R.D. at 121("To the extent management issues arise, this Court has the ability to 'utilize the available case management tools to see that all members of the class are protected . . .'") (quoting *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 37 (2d Cir. 2009)).

---

F.R.D. at 120 ("Multiple actions by multiple plaintiffs could also significantly reduce the prospects for recovery as it would decrease plaintiffs' bargaining power.").

Without a class, most Class members will have no practical recourse to seek recovery.  In addition, even a handful of duplicative suits would needlessly burden the courts.  *See Pub. Employees' Ret. Sys.*, 277 F.R.D. at 120-21 ("It is therefore highly unlikely that all or even most of the absent class members would have sufficient resources or economic incentives to fund individual lawsuits . . ."; "trying this as a class action, as opposed to multiple individual actions . . ., cannot help but result in a huge savings of judicial resources").

### D.      Class Counsel Should Be Approved Pursuant To Rule 23(g)

Rule 23(g) requires that a court certifying a class also appoint Class Counsel.  In making this determination, a court "must consider":

- The work counsel has done in identifying or investigating potential claims in the action;

- Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- Counsel's knowledge of the applicable law; and

- The resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g).  In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).  *See also Jones v. Ford Motor Credit Co*., No. 00-CV-8330, 2005 U.S. Dist. LEXIS 5381, at *81 (S.D.N.Y. Mar. 31, 2005).

The history of this litigation and the successful prosecution of it thus far by Shapiro Haber & Urmy and Brower Piven, without more, demonstrate that Shapiro Haber & Urmy and Brower Piven more than adequately meet the requirements to be appointed Class Counsel in this action.  Court's prior appointment of Lead Counsel pursuant to the PSLRA would appear to obviate the need to re-evaluate counsel under Rule 23(g).  *See In re Enron Corp. Sec. Deriv. &*

*ERISA Litig.*, 529 F. Supp. 2d 644, 674-75 (S.D. Tex. 2006) (counsel met adequacy requirement under Rule 23(g) where counsel already had been appointed as "lead counsel" under PSLRA). Furthermore, the credentials of Brower Piven and Shapiro Haber & Urmy, which already have been submitted to the Court in connection with Plaintiffs' motions for appointment as Lead Plaintiff (Dkt. No. 24, Ex. 2; Dkt. No. 27, Ex. C), further demonstrate that they are fully willing and able to pursue the interests of the Classes and should be appointed Class Counsel pursuant to Rule 23(g).

## IV.    CONCLUSION

Accordingly, Plaintiffs respectfully request that their Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel be granted in its entirety.

Dated January 29, 2015                    Respectfully submitted,

                                                      BROWER PIVEN
                                                       A Professional Corporation

                                                     */s/ David A.P. Brower*
                                                     David A.P. Brower
                                                     Brian C. Kerr
                                                       Richard H. Weiss
                                                     475 Park Avenue South, 33rd Floor
                                                     New York, NY 10016
                                                     Telephone: (212) 501-9000
                                                     Facsimile: (212) 501-0300
                                                     brower@browerpiven.com
                                                       kerr@browerpiven.com
                                                     weiss@browerpiven.com

24

SHAPIRO HABER & URMY LLP
Edward F. Haber *(pro hac vice)*
Patrick J. Vallely *(pro hac vice)*
2 Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
pvallely@shulaw.com

*Co-Lead Counsel for the Classes*

**Schedule A:  Days in Seller Class Period**

| **July 2007** | 13, 16-20, 23-27, 30, 31 |
|---|---|
| **August 2007** | 1-3, 6-9, 15-17, 20-24, 27, 28 |
| **September 2007** | 11-14, 17-21, 24-28 |
| **October 2007** | 1-5, 8-11, 17-19, 22-26, 29-31 |
| **November 2007** | 1, 2, 5-7, 9, 12-16, 20, 21, 23, 26-28 |

**Schedule B:  Days in Buyer Class Period**

| | |
|---|---|
| **December 2007** | 20, 21, 24, 26-28, 31 |
| **January 2008** | 2-4, 7-11, 14, 15, 31 |
| **February 2008** | 1, 4-8, 11, 12-15, 19-22, 25-29 |
| **March 2008** | 3-7, 10-12 |