UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SIDNEY GORDON and JEFFREY TAUBER, | |
| Plaintiffs, | |
| v. | |
| SONAR CAPITAL MANAGEMENT LLC; NEIL DRUKER; PRIMARY GLOBAL RESEARCH, LLC; SONAR PARTNERS, LP; SONAR INSTITUTIONAL FUND, LP; SONAR OVERSEAS FUND, LTD.; AURORA HEDGED EQUITY LP; AURORA HEDGED EQUITY OFFSHORE FUND, LTD.; AURORA LIMITED PARTNERSHIP; AURORA OFFSHORE FUND LTD. II; AZIMUTH DIVERSIFIED FUND, LLC; AZIMUTH SELECT FUND, LLC; BARFIELD NOMINEES LIMITED A/C 18818; CHICAGO PATRIOT, LLC; CONTINENTAL CASUALTY COMPANY; DAVID E. SEMMEL; DELOS FUND, LTD; DELOS FUND II, LTD.; DOREL, LLC; FQR ALTERNATIVES II, LP; JOANNE MACKINNON; JOCELYN BOWIE; IFC (A) TRUST; IFC (E) TRUST; LESLIE SEMMEL; LOEWS CORPORATION; MWV EMPLOYEE RETIREMENT PLAN GROUP TRUST; THE ORRINGTON FUND, LTD.; THE ORRINGTON FUND, LP; THE ORRINGTON PLUS MASTER FUND, LTD.; PANGAEA PARTNERS, LP; PAROS FUND TRUST; Q-BLK ALPHA ENGINE, LTD.; Q-BLK EQUITY EDGE PORTFOLIO, LP; Q-BLK EQUITY EDGE PORTFOLIO, LTD.; QIP LTD.; QPA LTD.; ROBECO-SAGE CAPITAL INTERNATIONAL II, LTD.; ROBECO-SAGE CAPITAL, LP; ARDEN SAGE MULTI-STRATEGY FUND, LLC; ARDEN SAGE TRITON FUND, LLC; ROBECO-SAGE UNIT TRUST; SEMMEL FAMILY TRUST; STEINBERG FAMILY INVESTMENTS, LTD.; THE WEATHERLOW FUND, LP, | Case No. 11-CV-9665 (JSR)  JURY TRIAL DEMANDED |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

I. THE CLASS REPRESENTATIVES ARE ADEQUATE ...................................................... 1

II. THE CLASS REPRESENTATIVES ARE TYPICAL ........................................................... 6

III. COMMON ISSUES OF LAW AND FACT PREDOMINATE ............................................ 8

IV. CONCLUSION ................................................................................................................... 10

**TABLE OF AUTHORITIES**

**CASES**

*Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) ........................................................5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195-1197 (2013)...................10

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972)..........................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-61(2d Cir. 2000) ...............1, 7

*Bao v. SolarCity Corp.*, No. 14-01435, 2014 U.S. Dist. LEXIS 111869, at *8-9, *12 (N.D. Cal. Aug. 11, 2014).......................................................................................................4

*Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988) ..................................................................8, 9

*Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)...................................................................10

*Cross v. Dickstein Partners*, 172 F.R.D. 108, 114 (S.D.N.Y. 1997).......................................3, 5, 8

*DuPont v. Brady*, 828 F.2d 75, 76, 78 (2d Cir. 1987)...................................................................10

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) ...........................................................9

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ................................................3

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)...........................................10

*Farley v. Baird, Patrick & Co.*, No. 90 Civ. 2168 (MBM), 1992 U.S. Dist. LEXIS 16435, at *11-12 (S.D.N.Y. Oct. 29, 1992) ...................................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)...............................1

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132-33 (S.D.N.Y. 2014)....................................................................................................................8

*In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 43-44, 46 (E.D.N.Y. 1997)..............3, 5

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014)............................................9

*Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004).........................................................6

*In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155-56 (S.D.N.Y. 2010)..................................................5

*In re IMAX Secs. Litig.*, No. 06 Civ. 6128 (NRB), 2011 U.S. Dist. LEXIS 41709, at *21-22 (S.D.N.Y. Apr. 14, 2011).....................................................................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 483 (S.D.N.Y. 2002)...................3

*Kelen v. World Fin. Network Nat'l Bank*, 295 F.R.D. 87, 93 (S.D.N.Y. 2013)..........................1, 3

*Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-7281, 2008 U.S. Dist. LEXIS 95506,
    at *25-26 (S.D.N.Y. Nov. 24, 2008).................................................................................5

*Lapin v. Goldman Sachs & Co*., 254 F.R.D. 168, 179 (S.D.N.Y. 2008) .........................................8

*In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 1998 U.S. Dist. LEXIS 1199,
    at *37 (S.D.N.Y. Feb. 6, 1998) .........................................................................................2

*Malcham v. Davis,* 761 F.2d 893, 898-900 (2d Cir. 1985)..............................................................5

*In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. 2008) ................1, 2

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc*., 277 F.R.D. 97,
    107 & n.16 (S.D.N.Y. 2011).............................................................................................7

*In re Refco Inc. Secs. Litig.*, 07-MDL-1902, 2013 U.S. Dist. LEXIS 116700, at *37-38
    (S.D.N.Y. July 31, 2013) ..................................................................................................6

*In re SLM Corp. Sec. Litig.*, No. 08-1029, 2012 U.S. Dist. LEXIS 8158, at *24
    (S.D.N.Y. Jan. 24, 2012)...................................................................................................4

*Sosna v. Iowa*, 419 U.S. 393, 399-402 (1975) ................................................................................6

*In re Star Gas Sec. Litig*., No. 3:04-1766, 2005 U.S. Dist. LEXIS 5827, at *14
    (D. Conn. Apr. 8, 2005) ....................................................................................................4

*Surowitz v. Hilton Hotels Corp*., 383 U.S. 363 (1966) ...................................................................1

*TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 443 (1976) .....................................................10

*Vannest v. Sage, Rutty & Co.*, 960 F. Supp. 651, 658 (W.D.N.Y. 1997) ........................................7

*Wendt v. Keenan & Clarey, Inc.*, No. 3-85-1029, 1986 U.S. Dist. LEXIS 17378, at *4-6
    (D. Minn. Nov. 21, 1986) .................................................................................................7

**STATUTES AND RULES**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(2)(A)(iv).........................5

## I. THE CLASS REPRESENTATIVES ARE ADEQUATE

Plaintiffs' deposition testimony irrefutably demonstrates their adequacy.[1] Nevertheless, Defendants contend Gordon and Tauber are "ignorant of key facts, issues and developments in this case." Defs. Br. at 1. The Second Circuit, however, has expressed its "general disfavor of 'attacks on the adequacy of a class representative based on the representative's ignorance.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000)). In *Baffa*, the Second Circuit rejected a challenge to a proposed class representative's adequacy:

> [T]here is no showing that he is unwilling or unable to pursue the litigation on behalf of the class . . . . [H]e understood the nature of his proposed role in the litigation and demonstrated his willingness to carry it forward. When he was shown his signature on the certificate, he was able to explain that it indicated his willingness to accept the responsibility to 'represent a class during the court for Rickel's, the bonds. I would be a representative, a plaintiff of a class . . . .' The record shows that he understood that the Rickel investments were the subject of this litigation; he understood that he and others had sustained a loss due to the alleged fraud . . . . The acknowledgment of advice and support from . . . his attorneys cannot support a conclusion that Brett is unable to pursue the litigation on behalf of the class. Far from showing Brett's ignorance of the litigation or his inability to serve as class representative, it demonstrates Brett's ability to appreciate the limits of his knowledge and rely on those with the relevant expertise.

222 F.3d at 61-62. *See also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966); *Kelen v. World Fin. Network Nat'l Bank*, 295 F.R.D. 87, 93 (S.D.N.Y. 2013) ("a class representative's ignorance alone does not prove inadequacy").

Defendants erroneously rely on this Court's decision in *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. 2008). However, in that case, the plaintiff fund's representative: (i) did not know the name of the stock at issue; (ii) did not know the name of

---

[1] Plaintiffs filed their class certification motion prior to the completion of expert analysis of damages. Consistent with that analysis, Plaintiffs now have determined that the dates Defendants identify as not "contemporaneous" with Sonar's "relevant" trades (Defs. Br. at 25) should be excluded from the Class Periods. An amended Schedule A and Schedule B setting forth the trading dates remaining in each Class Period are attached hereto.

either individual defendant; (iii) did not know whether the fund ever owned Monster stock; (iv) did not know if an amended complaint had been filed; (v) did not know whether he had ever seen any complaint in the action; and (vi) did not know that one of the defendants had moved to dismiss the complaint. 251 F.R.D. at 135. The Court concluded the plaintiff was "simply the willing pawn of counsel." *Id.* at 136. By contrast, Tauber's testimony demonstrates:

-- Tauber, who is currently a member of the Assigned Judges Program of the Administrative Office of the Courts in California (Tauber Dep. 37:23-38:10, 278:16-280:7), is aware he is a proposed class representative along with Mr. Gordon (*id.* at 6:23-8:5, 208:21, 209:3, 210:13);[2]

-- He understands the Classes he is seeking to represent (*id.* at 9:23-10:10, 10:24-11:4, 12:21-13:2, 216:11-19), and knows the Class Periods (*id.* at 10:11-10:23, 12:21-13:2, 203:15-204:9, 216:11-19);

-- He understands his obligation to supervise class counsel (*id.* at 16:6-7), and he has done so extensively (*id.* at 15:24-17:21, 18:16-19, 19:2-21, 164:10-20, 177:13-20, 185:7-11, 192:16-193:11, 193:17-19, 197:12-15, 203:15-204:9, 206:9-18, 222:17-224:8);

-- He knows the action is against Sonar and Druker (*id.* at 155:7-16), and understands the nature of the alleged insider information (*id.* at 9:5-22) and the harm suffered by Plaintiffs and Class members (*id.* at 208:11-210:21, 211:2-213:14);

-- He is knowledgeable about Sigma and its business (*id.* at 66:2-67:14);

-- He participated in the discussions concerning Plaintiffs' partial settlement with Noah Freeman, and understood the benefits obtained (*id.* at 231:21-233:14); and

-- He understands the differences in the various pleadings (*id.* at 207:3-17).[3]

Defendants challenge Gordon's adequacy by cherry-picking a few memory lapses during his six and a half hour deposition and criticizing him for not having the knowledge of this case that would be expected of counsel, not a lay plaintiff. Gordon himself made this point. Gordon

---

[2] The full Tauber and Gordon deposition transcripts are Exs. A and B to the Declaration of Richard H. Weiss ("Weiss Dec.").

[3] Tauber's inability to recall Gordon's name hardly renders him inadequate. *See, e.g.*, *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262 (RWS), 1998 U.S. Dist. LEXIS 1199, at *37 (S.D.N.Y. Feb. 6, 1998) (inability to recall co-plaintiff's name "is not sufficient to render him an inadequate representative"). Nor is it significant that he could not recall David Brower's last name. The majority of Tauber's dealings with counsel have been with Brian Kerr (Tauber Dep. 15:24-17:14), and he is familiar with Plaintiffs' other lead counsel, Mr. Haber (*id.* at 8:17-18).

Dep. 151:25-152:4, 162:9-163:8. Gordon's deposition testimony clearly shows: his knowledge and understanding of what this case is about (*id*. 20:17-21:7, 86:24-87:17, 117:4-19, 121:16-122:13, 146:19-22, 147:18-148:11); his understanding of the damages claimed in the case and what he is seeking to recover for Class members (*id*. 23:25-24:15, 83:23-84:7, 124:12-125:4, 236:21-237:1, 240:13-16); his understanding that he is seeking to represent the Seller Class (*id*. 245:8-19); his understanding of his duties as Co-Lead Plaintiff (*id*. 97:5-23); and his fulfillment of those duties, including: his approval of the class settlement with Noah Freeman (*id*. 115:7-18), his reviewing filings in this case, which his counsel have routinely provided him (*id*. 146:6-147:6), and his communications with Co-Lead Plaintiff Tauber (*id*. 99:3-20, 115:7-18).

Defendants' hyperbolic attacks notwithstanding, Tauber and Gordon are far more knowledgeable, and adequate, than the plaintiffs the Second Circuit approved in *Baffa* and the Supreme Court approved in *Surowitz*. *See also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). Defendants do not come close to showing that "the class representative[s] [have] 'so little knowledge that [they] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Kelen*, 295 F.R.D. at 93.

Defendants' assertions, pointing to procedural errata and minor inconsistencies, that Tauber provided "false statements" (Defs.' Br. at 11) also are unfounded. "[S]peculation and generalized attacks on credibility are insufficient to defeat class certification." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 483 (S.D.N.Y. 2002). *See also In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 46 (E.D.N.Y. 1997) ("attacks . . . based on the representatives' ignorance or credibility are rarely appropriate"). Defendants criticize Tauber for not disclosing in his interrogatory responses: (1) A 2006 lawsuit against the California State Bar Association for failure to pay fees owed to Tauber (a "relatively minor matter" that was settled in his favor on confidential terms) (Tauber Dep. at 76:5-79:8); (2) A 2006 lawsuit against Pacific

3

Gas & Electric Co. for damage to his property caused by the utility's damming of water (also settled confidentially in his favor) (*id*. 83:11-85:9, 280:8-12); and (3) A 2010 US Tax Court proceeding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ At his deposition, Tauber did not conceal these proceedings (none of which relates to this case or involved securities or fraud), nor did he refuse to answer questions about them. When Tauber answered the interrogatories, he did so to the best of his knowledge at the time (they have now been amended). The proceedings Defendants now focus on simply did not come to mind. *Id*. 83:1-3.

Equally baseless are Defendants' complaints about Tauber's PSLRA certification. First, Tauber explained that when preparing the certification he did not appreciate the difference between the settlement date and the trade date as it related to the certification (Tauber Dep. 122:21-123:7),[4] and did not have available the trading records that showed trade dates, which his brokerage firm had archived (*id*. at 268:9-269:23). Second, Tauber's trading records have since been produced to Defendants. Third, "Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp. Sec. Litig.*, No. 08-1029, 2012 U.S. Dist. LEXIS 8158, at *24 (S.D.N.Y. Jan. 24, 2012). Accordingly, courts have found plaintiffs adequate where the PSLRA Certification listed settlement dates prices instead of trade dates. *See In re Star Gas Sec. Litig.*, No. 3:04-1766, 2005 U.S. Dist. LEXIS 5827, at *14 (D. Conn. Apr. 8, 2005).[5]

---

[4] It is hypocritical for Defendants to attack Tauber's confusion about the trade and settlement dates. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[5] *See also Bao v. SolarCity Corp.*, No. 14-01435, 2014 U.S. Dist. LEXIS 111869, at *8-9, *12 (N.D. Cal. Aug. 11, 2014) (appointing lead plaintiff who listed incorrect prices for certain trades

Defendants also complain they did not learn about the referral fee agreement between attorneys Haber and Spirt until Gordon's deposition.[6] That was due to a mistake by Haber's firm. The non-privileged portion of Haber's December 26, 2011 email to Spirt (on which Gordon was copied[7]), which set forth the referral fee arrangement, inadvertently was not produced to Defendants. *See* Weiss Dec. Ex. E. There never was any intention to hide this completely proper arrangement. Indeed, Haber sought Defendants' agreement for Spirt to attend (but not participate in) Gordon's deposition. *See id.* Ex. F. Further, that Spirt is Gordon's wife's cousin and Gordon's personal attorney creates no issue. "[T]here is no per se rule against relatives of class counsel serving as class representatives . . . ." *In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. 31, 43-44 (E.D.N.Y. 1997). *See also Malcham v. Davis,* 761 F.2d 893, 898-900 (2d Cir. 1985) (brother of class counsel, sister of class counsel's chauffeur, and mother-in-law of class counsel deemed adequate class representatives). Here, the familial relationship is not with Class counsel, or any counsel of record in the case.[8]

---

on his certification); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-7281, 2008 U.S. Dist. LEXIS 95506, at *25-26 (S.D.N.Y. Nov. 24, 2008) (excusing certification that failed to list securities class action). Notably, the PSLRA does not specify disclosure in the certification of "trade dates" or "settlement dates" nor does it require price information. Rather, plaintiff must set forth "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv).

[6] In connection with Gordon becoming a plaintiff in this action, Haber agreed to pay Gordon's regular lawyer, Mr. Spirt, a referral fee of 5% of any fees awarded by the Court to Haber's firm.

[7] Thus, Gordon has known about the referral fee arrangement from the outset. Although, at his deposition, Gordon initially did not so recall, he later did. Gordon Dep. 194:4-195:8.

[8] *In re IMAX Sec. Litig.*, 272 F.R.D. 138 (S.D.N.Y. 2010), on which Defendants rely, only highlights the lack of any conflict here. In *IMAX*, the proposed class representative, an investment fund, had an extensive business relationship with its attorney that suggested a financial *quid pro quo*. *Id.* at 155-56. Here, there is no suggestion that Gordon will receive any benefit from Spirt's role in this case. He testified explicitly that he expects only his proportional share of any Class recovery. Gordon Dep. 20:3-16, 41:7-21.

**II.    THE CLASS REPRESENTATIVES ARE TYPICAL**

Defendants' arguments that Tauber has no losses and cannot demonstrate loss causation have no merit. Defs. Br. 16-20. In claiming Tauber has no losses, Defendants employ a fundamentally flawed and unreliable methodology, among other things, that does not comport with the statutory formula for damages and inappropriately offsets Tauber's losses with trading profits unrelated to the alleged wrongdoing that were earned well before the Class Periods.[9] *See* Declaration of Professor Steven P. Feinstein, Ph.D., CFA ("Feinstein Dec.") (Weiss Dec. Ex. F) ¶¶ 10, 18-21. Yet, Defendants' own defective analysis concludes Tauber suffered net losses in the first Seller Class Period and the Buyer Class Period. *Id.* ¶ 22; Hyland Aff. Ex. K. In addition, Defendants do not contend Gordon, who sold shares during the second Seller Class Period, suffered no losses. Thus, Defendants effectively concede Lead Plaintiffs incurred net losses in each of the three Periods. It is not necessary that each Plaintiff have a claim relating to each Period. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004). *See also Sosna v. Iowa*, 419 U.S. 393, 399-402 (1975).

Among other fundamental errors Defendants make, whether or not Tauber realized a profit when he sold shares he bought long before the Seller Class Period is irrelevant because he still lost the upside he would have received had he not sold before the market reflected the undisclosed inside information. *See* Feinstein Dec. ¶ 20. In addition, Defendants show Tauber enjoyed an overall net profit by, improperly and illogically, lumping together all his purported gains and losses (calculated using their erroneous methodology) for both Seller Class Periods

---

[9] *See Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) ("This is not to say, however, that a plaintiff may recover for losses, but ignore his profits, **where both result from a single wrong**.") (emphasis added); *In re Refco Inc. Secs. Litig.*, 07-MDL-1902, 2013 U.S. Dist. LEXIS 116700, at *37-38 (S.D.N.Y. July 31, 2013) ("plaintiffs cannot claim damages **where the same fraud alleged to be the cause of a loss also permitted a countervailing gain**") (emphasis added).

6

and the Buyer Class Period. *Id*. ¶ 23. Yet, reflecting the underlying realities of Plaintiffs' insider trading claims, each of the three distinct Periods must be analyzed separately. Each Period involved different inside information and ended with a different public disclosure. Each Period could have given rise to a separate lawsuit, with its own distinct class. There will be persons in the first Seller Class Period who are not in the second Seller Class Period and persons in the Buyer Class Period who did not sell in either Seller Class Period. Thus, any "netting" of the gains and losses of a plaintiff who traded in two or more of the three Periods is inconsistent with how a plaintiff is damaged by insider trading.[10]

Calculating damages appropriately, consistent with the applicable statute, and properly considering only trades contemporaneous with Sonar's insider trades, Plaintiffs' expert has determined Tauber had a net loss in each of the three Periods, including losses associated with shares Tauber purchased during the Buyer Class Period and still held when the inside information was disclosed to the market on March 12, 2003. *See* Feinstein Dec. ¶¶ 13-17, 24.

Defendants' "unique defense" argument also has no merit.[11] A unique defense defeats certification only if it "'***threaten[s] to become the focus of the litigation***.'" *Baffa*, 222 F.3d at 59-60 (citation omitted; emphasis added). *See also Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 107 & n.16 (S.D.N.Y. 2011). "[T]he unique defense rule 'is intended to protect [the] plaintiff class—not to shield defendants from a potentially meritorious

---

[10] By contrast, netting profits and losses might be appropriate for determining damages in a typical securities fraud case involving consistent and interrelated misrepresentations or omissions over a continuous class period. Here, the focus must be on the periods in which the defendant was trading on specific inside information.

[11] Defendants are wrong that each Lead Plaintiff has a standing problem because he traded through an IRA or 401(k) account. *See Vannest v. Sage, Rutty & Co.*, 960 F. Supp. 651, 658 (W.D.N.Y. 1997); *Wendt v. Keenan & Clarey, Inc.*, No. 3-85-1029, 1986 U.S. Dist. LEXIS 17378, at *4-6 (D. Minn. Nov. 21, 1986). Moreover, one of the accounts through which Tauber traded was not a retirement account. Tauber Dep. 70:14-17.

7

suit.'" *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132-33 (S.D.N.Y. 2014) (citation omitted). "'[T]he court should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate.'" *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (citation omitted).

Defendants do not show Lead Plaintiffs are subject to any unique defense that would "threaten to become the focus of the litigation." That Tauber may have sold shares because he became nervous holding a large position or just changed his mind has no relevance to whether he relied on the integrity of the market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988) ("'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'") (citation omitted); *In re IMAX Secs. Litig.*, No. 06 Civ. 6128 (NRB), 2011 U.S. Dist. LEXIS 41709, at *21-22 (S.D.N.Y. Apr. 14, 2011) (that class members "'have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making'"; citing cases). Defendants cannot point to any testimony from Tauber that he did not care if he invested in a rigged game.[12] It also is not important that Gordon might have purchased stock based on a relative's recommendation. *See Cross v. Dickstein Partners*, 172 F.R.D. 108, 114 (S.D.N.Y. 1997) ("reliance on third parties such as . . . knowledgeable family members is likely to be typical"); *Farley v. Baird, Patrick & Co.*, No. 90 Civ. 2168 (MBM), 1992 U.S. Dist. LEXIS 16435, at *11-12 (S.D.N.Y. Oct. 29, 1992) (same).

### III. COMMON ISSUES OF LAW AND FACT PREDOMINATE

Plaintiffs' Opening Brief showed (at pages 15-20), and, based, among other things, on an

---

[12] Defendants proffer no reason why it matters to Tauber's reliance that he might have had difficulty articulating how call options work (which in any event are not even securities included in the proposed class definition).

event study and other tests of statistical significance, Plaintiffs' expert, Professor Steven P. Feinstein, Ph.D., CFA, confirms, that "Sigma common stock traded in an efficient market over the course of the Combined Class Period and that earnings information was observably treated by the market as highly material information." Feinstein Report (Hyland Aff. Ex. Q) ¶¶ 134-37. He determined that Sigma's earnings announcements that revealed the inside information on which Defendants had illicitly traded all "caused statistically significant movements in the price of Sigma stock." Feinstein Report ¶¶ 109-33. The Class clearly enjoys a presumption of reliance under *Basic*, 485 U.S. 224, and *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014).

In response to Plaintiffs' overwhelming showing of price impact and market efficiency, Defendants offer nothing of substance. Their argument that Prof. Feinstein fails to disentangle the material non-public information at issue from "other confounding information in the same earnings reports" (Defs. Br. at 23) has nothing to do with whether Sigma shares reacted promptly to new Company-specific information as it entered the market, or whether Sigma shares reacted as would be expected in response to the disclosure of the inside information from which Defendants illegally profited. Instead, Defendants are quarrelling with exactly what information caused the share price to move on the days in question and by how much. As is clear from the report of Defendants' expert, that argument relates to the assessment of damages, which is not relevant to class certification. *See* Hyland Aff. Ex. P. Defendants' expert does not dispute market efficiency. Also, Defendants do not explain why general increases in Sigma's share price during the Seller Class Period or decreases during the Buyer Class Period are inconsistent with market efficiency.[13] Indeed, such arguments relate to loss causation which may not be considered at

---

[13] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) ("When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the

9

class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011).

Defendants' claim that public disclosure of the inside information had no price impact, supported by no evidence or analysis, flies in the face of Prof. Feinstein's conclusive showing of market efficiency, including event study results. *See* Feinstein Decl. ¶¶ 8-9, 15-18. And, any argument concerning materiality is not appropriate in addressing class certification. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1197 (2013).

Defendants' assertion that *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), requires individualized proof misstates the law. To invoke the presumption of reliance under *Affiliated Ute*, plaintiff need establish only that the omitted information was material. *Id.* at 153-54; *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992). "Because '[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class." *Amgen*, 133 S. Ct. at 1195-96 (quoting *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 443 (1976)).

To rebut the presumption of reliance, defendant must establish "by a preponderance of the evidence that the plaintiff did not rely on the omission in making the investment decision." *DuPont v. Brady*, 828 F.2d 75, 76, 78 (2d Cir. 1987) ("proof of nonreliance will generally be quite difficult"). As shown, Defendants fail to raise any genuine question regarding the reliance.

## V.   CONCLUSION

Accordingly, Plaintiffs respectfully request that their Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel be granted.

---

earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.").

Dated: February 20, 2015                Respectfully submitted,

                                        BROWER PIVEN
                                         A Professional Corporation

                                        */s/ David A.P. Brower*
                                        David A.P. Brower
                                        Brian C. Kerr
                                        Richard H. Weiss
                                        475 Park Avenue South, 33rd Floor
                                        New York, NY 10016
                                        Telephone: (212) 501-9000
                                        Facsimile: (212) 501-0300
                                        brower@browerpiven.com
                                        kerr@browerpiven.com
                                        weiss@browerpiven.com

                                        SHAPIRO HABER & URMY LLP
                                        Edward F. Haber *(pro hac vice)*
                                        Patrick J. Vallely *(pro hac vice)*
                                        2 Seaport Lane
                                        Boston, MA 02210
                                        Telephone: (617) 439-3939
                                        Facsimile: (617) 439-0134
                                        ehaber@shulaw.com
                                        pvallely@shulaw.com

                                        *Co-Lead Counsel for the Classes*

## Schedule A:  Days in Seller Class Period

| **July 2007** | 13, 16-20, 23-27, 30, 31 |
|---|---|
| **August 2007** | 1-3, 6, 7, 21-24, 27, 28 |
| **September 2007** | 11-14, 17-21, 24-28 |
| **October 2007** | 1-5, 8-11, 31 |
| **November 2007** | 1, 2, 5-7, 9, 12-16, 20, 21, 23, 26-28 |

## Schedule B:  Days in Buyer Class Period

| | |
|---|---|
| **December 2007** | 20, 21, 24, 26-28, 31 |
| **January 2008** | 2-4, 7-11, 14, 15, 31 |
| **February 2008** | 1, 4-8, 11, 12-14, 25-29 |
| **March 2008** | 3-7, 10-12 |