UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY GORDON AND JEFFREY TAUBER,<br><br>                              Plaintiffs,<br><br>v.<br><br>SONAR CAPITAL MANAGEMENT LLC, ET AL.<br><br>                              Defendants. | 11-cv-09665 (JSR) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SONAR CAPITAL MANAGEMENT LLC'S, SONAR PARTNERS, LP'S, SONAR INSTITUTIONAL FUND, LP'S, SONAR OVERSEAS FUND, LTD.'S AND NEIL DRUKER'S MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

**Page No.**

Table of Authorities ................................................................................................................ ii
Preliminary Statement ............................................................................................................. 1
Supplemental Facts ................................................................................................................. 2
Argument ................................................................................................................................ 5
Conclusion .............................................................................................................................. 5

## Table of Authorities

**Page No.**

**Cases**

*Dirks v. Sec. Exch. Comm'n*, 463 U.S. 646 (1983)..........................................................................5

*United States v. Newman,* 773 F.3d 438 (2d Cir. 2014) ........................................................5, 5 n. 3

**Statutes & Rules**

Fed. R. Civ. P. 56.........................................................................................................................1

Defendants Sonar Capital Management LLC, Sonar Partners, LP, Sonar Institutional Fund, LP, Sonar Overseas Fund, Ltd. and Neil Druker (together, the "Sonar Defendants") supplement their motion, pursuant to Fed. R. Civ. P. 56, for an order granting summary judgment ("Motion for Summary Judgment" or "Mot.") (Dkt. No. 134) dismissing the Third Amended Class Action Complaint ("TAC").

**Preliminary Statement**[1]

Because Plaintiffs have not presented and will never be able to present any facts that Tai Nguyen obtained material non-public information ("MNPI") concerning Sigma Designs, Inc. ("Sigma") from a relative who worked at Sigma, let alone that he provided a benefit for such information, this case should be dismissed once and for all. Plaintiffs' allegations that Noah Freeman ("Freeman") obtained Sigma MNPI from Tai, who had obtained MNPI from a "Disloyal Sigma Employee" who was his relative (TAC ¶¶ 28, 51, 60) are baseless. Freeman has admitted that (i) he did not know the source, if any, of Tai's Sigma information, (ii) he did not know whether Tai even had a relative at Sigma, (iii) he did not know whether the purported source received a benefit, (iv) the information Freeman did receive was not necessarily confidential or non-public (and the Motorola contract was public), and (v) he simply "guessed" that Tai's source could have been a relative. (Mot. at 2-3).

Plaintiffs now have deposed Tai's brothers, Hao and Hien, who worked at Sigma during the relevant period. The result: nothing except evidence of good, hardworking people whom Plaintiffs seem intent on harassing. Freeman's wild, unsubstantiated "guess" was wrong, costing the Sonar Defendants dearly, and tarnishing Hao's and Hien's reputation.

Hao and Hien were Tai's only relatives employed by Sigma; there were numerous

---

[1] References are to the Affidavit of Julia C. Spivack in Support of the Sonar Defendants' Supplement to their Motion for Summary Judgment sworn to March 16, 2015 ("Spivack Aff.") and its exhibits ("Ex."). References are to the first names of the Nguyen siblings.

1

other unrelated "Nguyens" employed during the relevant time. (Ex. 1 at 34:22-35:14; Ex. 2 at 55:25-56:16). As software engineers, Hao and Hien simply did not have access to the type of financial and customer order information alleged to have been passed on here, and they vigorously denied obtaining such information or passing it on to Tai. (Ex. 1 at 159:6-160:24; 198:9-22; 224:16-20; Ex. 2 at 82:6-83:15; 85:6-20). Sigma, Hao and Hien each received subpoenas from the Government, and each cooperated and complied with the subpoenas. Hao and Hien were cleared: no charges were threatened, suggested or brought, and no action was taken by the Government, the SEC, Sigma or anyone else. They rightly believed that the matter had been put behind them. They were appalled and angered to learn that Plaintiffs had recklessly accused them of being the "Disloyal Sigma Employee." They are extremely credible, earnest people, who appeared *pro se* at their deposition because they did not think they needed an attorney – indeed, they have done nothing wrong. (Ex. 1 at 33:17-19; Ex. 2 at 11:9-14). For Plaintiffs to continue to accuse them of any wrongdoing now would represent the acts of people who operate unburdened by any professional obligation. Because there is no evidence that Tai obtained MNPI from a relative at Sigma in exchange for any benefit, summary judgment should be granted in favor of the Sonar Defendants.

## Supplemental Facts

Hao, Hien, their siblings and parents arrived in the United States in 1975 as refugees from Vietnam, settling in Cheyenne, Wyoming. (Ex. 1 at 37:11-15; Ex. 2 at 16:21-17:11). Hao earned a B.S. in Electrical Engineering from University of Wyoming, and attended graduate school while he was working at General Electric, pursuing a Masters in Engineering. (Ex. 1 at 37:16-38:23). Hien earned a B.S. in Engineering from Iowa State University, and a M.S. in Computer Engineering from Santa Clara University. (Ex. 2 at 18:6-19:11). Hao and Hien worked as engineers at a succession of technology companies before founding their own

consulting firm, Jovian, with others. (Ex. 1 at 38:14-42:18; Ex. 2 at 19:23-20:9, 20:20-21:20, 21:22-22:18, 23:17-26:11). Hao and Hien worked on software development while at Jovian, designing products for clients, including Sigma. (Ex. 1 at 42:19-43:21; 49:7-12; 50:18-51:13; Ex. 2 at 24:13-16; 25:9-26:11).

Hao joined Sigma full-time in 1997 with the title Director of Applications, and remains employed today. (Ex. 1 at 61:4-10, 96:17-20; 194:17-19). Hien joined Sigma as a part-time Senior Software Engineer in 1999. (Ex. 2 at 28:24-29:5). He accepted a severance package as part of a restructuring, along with other Sigma employees, at the end of 2012. (*Id*. at 42:3-22). Both Hao and Hien received copies of Sigma's company policies and procedures including a code of business conduct and ethics and insider trading policy, signed annual acknowledgement forms evidencing receipt of these policies, and complied with these policies. (Ex. 1 at 98:18-102:12, 110:6-112:12, 117:10-120:17; Ex. 2 at 43:21-50:18). Neither Hao nor Hien have ever been the subject of discipline at Sigma. (Ex. 1 at 194:12-16; Ex. 2 at 43:18-20).

Hao's and Hien's main role has been troubleshooting "bugs" within Sigma's chipset software for Sigma customers, that is, assisting the customer in its integration of Sigma's chips into the customer's products after the customer had purchased Sigma chips. (Ex. 1 at 63:2-9; Ex. 2 at 31:1-21). Hien also assisted in writing code. (Ex. 2 at 35:3-7). Neither Hao nor Hien ever worked in Sigma's Finance Department, or had access to any non-public financial information concerning Sigma, including revenues.[2] (Ex. 1 at 140:22-141:1, 201:4-12, 224:16-20; Ex. 2 at 38:5-39:17). Their contact with individuals in accounting or finance was limited to getting invoices signed and compensation related matters. (Ex. 1 at 91:8-92:18; Ex. 2 at 38:5-39:17). Their access to information on Sigma's computer server was limited to email, human

---

[2] REDACTED

resources information and "Bugzilla" – a database of troubleshooting issues.  (Ex. 1 at 67:1-69:1, 73:20-74:1, 88:7-22; Ex. 2 at 138:5-140:11).  They did not have information regarding customer orders, let alone any orders from Motorola.  (Ex. 1 at 141:2-6, 143:5-13, Ex. 2 at 38:5-39:17).

Both Hao and Hien emphatically denied ever providing Tai with advance quarterly revenue figures or other non-public financial information (Ex. 1 at 198:9-14; Ex. 2 at 80:17-23), or information regarding orders from Sigma customers generally or Motorola in particular.  (Ex. 1 at 198:17-22; Ex. 2 at 82:6-83:8; 84:1-12; 85:6-9).  They each also denied ever having received a gift or any other favor or benefit from Tai in exchange for any Sigma information.  (Ex. 1 at 205:25-206:5; Ex. 2 at 80:24-81:21).  They did not know who Tai was working for, what he was doing, or who his clients were.  (Ex. 1 at 149:9-14; 159:6-13; Ex. 2 at 57:15-58:24).  They knew that Tai created financial models as an analyst and that he had expertise in semiconductors.  (Ex. 1 at 196:3-6, 202:18-203:22; Ex. 2 at 56:25-57:6).

About three years ago, agents of the Federal Bureau of Investigation ("FBI") arrived at Hao's home.  (Ex. 1 at 161:25-162:19).  They questioned him about Sigma and Tai.  (*Id.* at 164:25-166:8).  At or about the same time, Hien was contacted by the FBI by telephone, and he, too was questioned along the same lines.  (Ex. 2 at 89:14-24).  Hao and Hien later retained counsel.  (Ex. 1 at 162:22-163:23; Ex. 2 at 162:20-25).  The siblings each received a subpoena from the U.S. Attorney's Office seeking documents in connection with the Government's investigation of Tai, and produced documents in response, including financial records and emails.  (Ex. 1 at 190:16-193:6; Ex. 2 at 86:21-91:6).  They cooperated fully with the Government's investigation, and never refused to answer questions or provide documents.  (Ex. 1 at 25:5-26:3, 190:22-192:13; Ex. 2 at 88:16-89:12, 90:17-20).  They later came to understand that the Government would not take action against them, and, indeed, no action has been taken

by the Government, the SEC, or anyone else. (Ex. 1 at 192:14-193:6; Ex. 2 at 90:21-91:6).[3]

**Argument**

Plaintiffs today are further from proving the existence of a "Disloyal Sigma Employee" than they were four complaints and three and half years ago. This is because such person does not exist. Neither the FBI, the SEC, nor Sigma concluded that Hao or Hien did anything wrong, and Plaintiffs have no evidence that suggests otherwise. There is no evidence that any relative or other employee at Sigma provided MNPI to Tai in exchange for a benefit. Plaintiffs thus cannot prove their predicate Section 10(b) and Rule 10b-5 claim. *See Dirks v. Sec. Exch. Comm'n*, 463 U.S. 646, 661-62 (1983); *United States v. Newman*, 773 F.3d 438, 447-49, 52 (2d Cir. 2014). Indeed, *Newman* instructs that absent evidence that the original insider both disclosed confidential information and received a meaningful benefit for the information, no insider trading violation exists. *Newman*, 773 F.3d at 452. As there is no evidence of an original insider or any benefit, the Sonar Defendants' Motion for Summary Judgment should be granted, and Hao and Hien should be left alone.

**Conclusion**

For the reasons set forth here, in addition to the reasons set forth in the Motion for Summary Judgment, the Sonar Defendants respectfully request the Court grant their motion for summary judgment and dismiss the TAC in its entirety.

---

[3] Plaintiffs deposed Tai on March 4, 2015. As Tai's counsel had previously stated he would (*see* Ex. 4), Tai asserted the Fifth Amendment in response to all substantive questions because Tai intends to seek to vacate his guilty plea in *United States v. Nguyen*, 12-cr-00495 (NRB) in light of *United States v. Newman*, and the Government's express admission in connection with Freeman's sentencing that no benefit was given to the insider at Abaxis. (Spivack Aff. ¶5; *see* Dkt. No. 135, Ex. 3 at 4, n.2). Any inference Plaintiffs may seek based on Tai's assertion of the Fifth Amendment must be viewed in light of Hao's and Hien's denials of any wrongdoing here, the absence of any action taken against them, Tai's vigorous denial at his sentencing of ever having obtained or passed any Sigma MNPI, and the fact that Tai was never charged with any wrongdoing concerning Sigma.

| | |
|---|---|
| New York, New York<br>March 16, 2015 | Respectfully submitted,<br>SEWARD & KISSEL LLP<br><br>By:   /s/ Mark J. Hyland<br>         Mark J. Hyland<br>         Julia C. Spivack<br>         Michael W. Broz<br>One Battery Park Plaza<br>New York, New York 10004<br>(212) 574-1200<br><br>*Attorneys for Sonar Capital Management LLC,*<br>*Sonar Partners, LP, Sonar Institutional Fund, LP,*<br>*Sonar Overseas Fund, Ltd.  and Neil Druker* |