```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SIDNEY GORDON,                      :
                                    :
               Plaintiff,           :
                                    :         11-cv-9665 (JSR)
          - v -                     :
                                    :         OPINION AND ORDER
SONAR CAPITAL MANAGEMENT LLC,       :
et al.,                             :
                                    :
               Defendants.          :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Sidney Gordon[1] brings this suit against defendants Sonar Capital Management ("Sonar"), the hedge funds for which Sonar served as investment adviser (Sonar Partners, LP, Sonar Institutional Fund, LP, and Sonar Overseas Fund, Ltd. (collectively, the "Sonar Funds")), and former Sonar President and CEO Neil Druker.[2] Plaintiff alleges that the Sonar Defendants traded in securities issued by Sigma Designs, Inc. ("Sigma") while in possession of Sigma's material nonpublic information, in violation of the federal securities laws.

---

[1] Co-lead plaintiff Jeffrey Tauber reached a separate settlement with the Sonar Defendants. ECF No. 198.

[2] Druker, Sonar, and the Sonar Funds are referred to collectively as the "Sonar Defendants." Plaintiffs have also named as defendants various investors in the Sonar Funds (the "Investor Defendants"). The Court bifurcated proceedings in this case, with trial against the Sonar Defendants to proceed first.

1

The Sonar Defendants moved for summary judgment on the ground, inter alia, that plaintiff had insufficient evidence that the Sonar Defendants knew or should have known that the allegedly material nonpublic information about Sigma was disclosed in breach of a fiduciary duty. The Court, by "bottom line" Order dated July 23, 2015, granted their motion on that ground. This Opinion and Order sets forth the reasons for that ruling and, as a consequence (as explained below), directs the entry of final judgment dismissing the Third Amended Complaint in its entirety.

The nature of plaintiff's allegations and the procedural history of this action are set forth in the Court's previous opinions in this case, familiarity with which is here presumed. See Gordon v. Sonar Capital Mgmt. LLC, No. 11-CV-9665, 2015 WL 1283636 (S.D.N.Y. Mar. 19, 2015); Gordon v. Sonar Capital Mgmt. LLC, No. 11-CV-9665, 2014 WL 3900560 (S.D.N.Y. Aug. 1, 2014); Gordon v. Sonar Capital Mgmt. LLC, 962 F. Supp. 2d 525 (S.D.N.Y. 2013); Gordon v. Sonar Capital Mgmt. LLC, No. 11-CV-9665, 2012 WL 1193844 (S.D.N.Y. Apr. 9, 2012). In brief, plaintiff alleges that, from 2006 to 2008, former Sonar Managing Director Noah Freeman obtained nonpublic information regarding Sigma's advance quarterly revenue figures from a consultant named Tai Nguyen, who in turn obtained that information from a relative who worked at Sigma (the "Disloyal Sigma Employee"). Plaintiff further

2

alleges that Freeman then shared that information with Druker, who caused the Sonar Funds to trade on it.

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court must "resolve all ambiguities and draw all factual inferences in favor of the nonmovant." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation and internal quotation marks omitted).

Under the law of this Circuit, a remote tippee, in order to be held liable for securities fraud, must know that the original tipper disclosed market-sensitive information in breach of a fiduciary duty and received some personal benefit from the disclosure. See United States v. Newman, 773 F.3d 438, 450 (2d Cir. 2014); United States v. Whitman, 904 F. Supp. 2d 363, 371 (S.D.N.Y. 2012), as corrected (Nov. 19, 2012), aff'd, 555 F. App'x 98 (2d Cir. 2014). In a civil case such as this one, a plaintiff may satisfy the latter part of this requirement by proving that the defendant "knew or had reason to know" of the benefit to the tipper. S.E.C. v. Obus, 693 F.3d 276, 288 & n.2 (2d Cir. 2012); S.E.C. v. Jafar, No. 13-CV-4645, 2015 WL 3604228, at *4 & n.2 (S.D.N.Y. June 8, 2015). Moreover, the

3

benefit may consist of giving a gift to a relative. Dirks v. S.E.C., 463 U.S. 646, 664 (1983).

Defendants argue that plaintiff has no evidence that Nguyen's information came from a Disloyal Sigma Employee, no evidence of who any such person might have been (much less that he or she was Nguyen's relative), and no evidence that any person received any benefit from the disclosure of the information. They rely on Freeman's deposition testimony, in which he stated that Nguyen never told him who his contact at Sigma was, or even that he had such a contact, see Affidavit of Mark J. Hyland dated February 27, 2015 ("Hyland Aff.") Ex. 2, 53; that he merely "surmised" that Nguyen's information came from a single contact and that he "guessed" that that contact worked at Sigma, id. at 320-24; that, regarding Nguyen's contact at Sigma, he "never knew who he was or what he did," id. at 51; that he did not know whether Nguyen had a relative who worked at Sigma, id. at 196; that he was "unaware" of any benefit received by any Sigma insider, id. at 51-52; and that he had "no idea" whether Nguyen obtained the Sigma information in an improper manner, id. at 214-15.

Defendants further argue that the only evidence in the record is contrary to the suggestion that the information was improperly disclosed. Although Nguyen was convicted of insider trading based on his trading on and sale to Sonar of inside

4

information regarding a company called Abaxis — information that Nguyen obtained from his sister, Thanh Ha Bao, an Abaxis employee — he was never charged with any illegal activity relating to Sigma. See Hyland Aff. Ex. 4, at 6-7. Moreover, in connection with his sentencing on that charge, Nguyen, through counsel, denied having procured illegal tips from any company other than Abaxis. Id. at 7; Hyland Aff. Ex. 5, at 9.

Plaintiff makes two arguments in an effort to rebut defendant's showing.

First, plaintiff argues that Freeman's guilty plea in his criminal insider trading case establishes defendants' liability via the doctrine of collateral estoppel. That doctrine holds that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). As a general matter, a criminal conviction can have preclusive effect in a subsequent civil proceeding relating to the same issues. See United States v. Podell, 572 F.2d 31, 35 (2d Cir.1978).

In order to apply offensive collateral estoppel on the basis of a prior criminal proceeding, a court must find that: "'(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and

5

actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" In re Adelphia Commc'ns Corp., No. 03-MD-1529, 2006 WL 2463355, at *3 (S.D.N.Y. Aug. 23, 2006) (quoting United States v. Hussein, 178 F.3d 125, 129 (2d Cir.1999)). Trial courts have "broad discretion" in applying offensive collateral estoppel and should decline to do so where it "would be unfair to a defendant." S.E.C. v. Mattera, No. 11-cv-8323, 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

In this case, the relevant background is as follows. On February 7, 2011, Freeman was charged with (1) conspiracy to commit securities fraud and wire fraud, and (2) securities fraud. See Information, United States v. Freeman, 11-CR-116, ECF Dkt. No. 1 (S.D.N.Y. Feb. 7, 2011) (the "Information"). The Information described an insider trading conspiracy pursuant to which Freeman and others "obtained material, nonpublic information ('Inside Information') from certain co-conspirators … who worked at publicly traded companies or hedge funds, for the purpose of executing profitable trades on the basis of the Inside Information." Id. ¶ 3. It further charged that Freeman "obtained Inside Information from independent research consultants who had obtained Inside Information from employees

6

at public companies," id. ¶ 4, and that the Inside Information had been "disclosed or misappropriated in violation of: (i) fiduciary and other duties ... [and] (ii) expectations of confidentiality ..." Id. ¶ 5. The Information charged that the conspiracy occurred "[a]t various times from in or about 2006 through in or about 2010." Id. ¶¶ 7-8.

The Information further charged that one of the overt acts in furtherance of the conspiracy was the following:

> On or about October 11, 2006, Hedge Fund A [Sonar] purchased over 600,000 shares of a technology company that trades over the NASDAQ ("Technology Company A") [Sigma] based on Inside Information received from CC-2 [Tai Nguyen].

Id. ¶ 11. It charged that Freeman "commit[ed] securities fraud," including by "caus[ing] Hedge Fund A [Sonar] ... to execute securities transactions based in part on Inside Information obtained about publicly traded companies." Id. ¶ 13.

Also on February 7, 2011, Freeman pled guilty to both counts charged in the Information. In his allocution, he admitted that:

> In 2005 through 2010 I worked at two hedge funds. While I was there, on several occasions I received information from insiders at various companies. I caused those insiders to be paid for their information. The information was often detailed financial information including revenues and, on some occasions, gross margins and earnings per share that I understood constituted confidential information of the companies and was information it ... would not want disseminated. The insiders were often supplied by network firms... I often purchased or sold securities or recommended that hedge

7

> funds at which I worked make such purchases or sales based at least, in part, on the inside information I received.

United States v. Freeman, No. 11-CR-116 (S.D.N.Y.), transcript dated Feb. 7, 2011, at 17-18.

Plaintiff argues that, if Freeman were still a defendant in this civil case, his guilty plea would estop him from contesting his own liability for securities fraud. Because Freeman was a Managing Director of Sonar at the relevant times, plaintiff argues, his intent is imputed to Sonar, thereby establishing Sonar's liability.

However, on the basis of the above, the Court is unable to conclude either that that "the issues in both proceedings are identical" or that "the issue previously litigated was necessary to support a valid and final judgment on the merits." This determination depends on a comparison between the facts set forth in the Indictment and those alleged in the civil Complaint. Mattera, 2013 WL 6485949, at *8.

Here, the criminal Information to which Freeman pleaded guilty set forth only general allegations that Freeman engaged in insider trading during the period of about 2006 to 2010. With one pertinent exception, it does not provide sufficient detail for the Court to determine whether the conduct that Freeman admitted pertained to Sigma. The same is true of his plea allocution. See supra. Moreover, the letter submitted by the

8

Government at Freeman's sentencing pursuant to Section 5K1.1 of the United States Sentencing Guidelines makes clear that Freeman traded in the securities of numerous companies on the basis of tips from at least eight people.[3] Declaration of Richard H. Weiss dated May 12, 2015 ("Weiss Decl.") Ex. M. Thus, for the most part, it is impossible to determine whether Freeman's plea was based on the specific trades alleged here.

The exception is one of the three overt acts charged, which refers to a trade that Sonar made on October 11, 2006. See Information ¶ 11. Although the Third Amended Complaint ("TAC") does allege, as background, that Sonar purchased Sigma shares on October 11, 2006, TAC ¶ 80, plaintiffs do not assert any claims based on that trade. See TAC ¶¶ 146-47 (defining "Seller Class" as persons who sold shares of Sigma on certain dates between July 13, 2007 and August 29, 2007, and between September 11, 2007 and November 28, 2007, and the "Buyer Class" as persons who

---

[3] In fact, the Government's 5K1.1 letter stated that the parties agreed not to include the dollar amounts attributable to Freeman's trades in Sigma and Abaxis for the purpose of calculating Freeman's Sentencing Guidelines range or criminal forfeiture amount. Weiss Decl. Ex. M, at 4. The Government explained: "Freeman accepted responsibility for engaging in insider trading described here with respect to the trades in Sigma Design and Abaxis. In the course of this conduct, however, Freeman was unaware whether the tippers, who he believed were Nguyen's relatives, received any benefit from Nguyen." When asked about the latter sentence at deposition, Freeman clarified that he knew that Nguyen's source at Abaxis was Nguyen's sister, but he was not aware of the identity of Nguyen's source at Sigma. Hyland Aff. Ex. 2, at 52-53.

sold shares of Sigma on certain dates between December 20, 2007 and March 12, 2008). Therefore, at most, Freeman's guilty plea could estop defendants from denying liability for the October 11, 2006 trade, which is not relevant to plaintiff's claims. See Podell, 572 F.2d at 36 ("The collateral estoppel effect of a finding of guilt on a general conspiracy count is limited to the essence of the conspiracy when it cannot be determined which means were used to carry out the unlawful purpose of the conspiracy.").

Second, plaintiff argues that the evidence in the record is sufficient for a reasonable jury to find that Freeman knew or should have known of the benefit received by the Disloyal Sigma Employee. Regarding the identity of the Disloyal Sigma Employee, plaintiff relies on a consensual recording that Freeman made in January 2011, long after the conduct at issue in this case concluded, as part of his cooperation with the U.S. Attorney's Office. In that recording Nguyen stated that the "original Sigma guy" was "a cousin of [his]." Declaration of Edward F. Haber dated May 12, 2015 ("Haber Decl.") Ex. D. Asked at deposition whether the Sigma source was a relative, Nguyen invoked his Fifth Amendment privilege against self-incrimination. Weiss Decl. Ex. K at 85.

In fact, Nguyen's first cousin has a son named Phuong Vu. Id. Ex. D at 16-17. Sigma's personnel files show that Phuong Vu

10

began working as a Staff Engineer at Sigma around April 2006, reporting to Tai Nguyen's brother, Hao Nguyen, and was employed there until at least December 2009. Id. Ex. A. Plaintiff contends that this evidence is a sufficient to infer that Phuong Vu was the Disloyal Sigma Employee who disclosed Sigma's confidential revenue figures to Tai Nguyen.[4]

Plaintiff concedes that there is no evidence that Freeman actually knew the identity of the Disloyal Sigma Employee or that the Disloyal Sigma Employee received any benefit in exchange for the inside information, urging instead that the record evidence is sufficient to infer that Freeman should have known these facts. Plaintiff further argues that Freeman knew that the information he received from Nguyen was highly accurate, that it always came in the same format, and that it was of the type that companies usually keep confidential. Plaintiff argues that these facts indicate that Freeman was aware that the information likely originated from a source inside Sigma.

It is true that the Second Circuit, in Newman, recognized that "information about a firm's finances could certainly be

---

[4] Plaintiff originally believed that the Disloyal Sigma Employee was one of Tai Nguyen's brothers, Hao and Hien Nguyen, both of whom worked at Sigma. However, having deposed both brothers, plaintiff was unable to uncover any evidence that either of them disclosed inside information to Tai Nguyen. See Affidavit of Julia C. Spivack dated March 16, 2015 ("Spivack Aff.") Exs. 1-2.

11

sufficiently detailed and proprietary to permit the inference that the tippee knew that the information came from an inside source." Newman, 773 F.3d at 455. However, the court further observed that "even if detail and specificity could support an inference as to the nature of the source, it cannot, without more, permit an inference as to that source's improper motive for disclosure." Id. Thus, the evidence regarding the nature of Nguyen's tips, even if it could support an inference that Freeman knew that the information originated from inside Sigma, is not a sufficient basis for a jury to conclude that he knew it was disclosed in breach of a fiduciary duty.

For the latter proposition, plaintiff relies on two assertions. First, Freeman testified that he knew that Nguyen obtained inside information about Abaxis from his sister who was employed there. Hyland Aff. Ex. 2, at 52-53. Plaintiff argues that a jury could infer from this fact that Freeman knew that Nguyen's business model was to procure inside information from his relatives. Based on this, plaintiff argues, the jury could further infer that Freeman should have known that Nguyen's information about Sigma also came from a relative. That mental state, plaintiff argues, supports the inference that Freeman should have known that Nguyen's relative received some benefit from disclosing the information to Nguyen. But this building of

12

inference upon inference, none of them more than speculative, cannot meet plaintiff's burden.[5]

The second assertion that plaintiff argues raises a triable issue is that Freeman testified that, at some point, he "guessed" that Nguyen's source at Sigma might be a relative:

> Q. Did you have any reason to think that Tai Nguyen's source at Sigma was a relative of his?
> A. At one point - I don't remember when - I remember Neil and I looked on Bloomberg at the Sigma, like, employee list and noticed that lots of guys - lots of people in finance had the same last name, which led us to guess that it was - that one of those might be his contact.
> Q. Same last name as Tai Nguyen.
> A. Right. But a very common Vietnamese name in a company full of Vietnamese people.

Weiss Decl. Ex. B at 325. Plaintiff argues that, on the basis of this testimony, a jury could conclude that Freeman "had reason to know" that the Sigma source was Nguyen's relative, which, as stated, might be sufficient in a civil case. Cf. Obus, 693 F.3d at 288. However, Freeman's testimony amounts to no more than idle speculation that one of the many Nguyens who worked at

---

[5] Plaintiff's evidence that the Sigma source was in fact Nguyen's cousin Phuong Vu is also highly speculative. Although Nguyen told Freeman, years later, that the "original Sigma guy" was his cousin, there is no evidence that he was referring to Phuong Vu. Nor is there any evidence that Phuong Vu, a staff engineer, had access to detailed financial data of the sort that Nguyen provided to Freeman. To the contrary, the only evidence in the record indicates that he did not. Specifically, Nguyen's brother Hao Nguyen, who was Phuong Vu's manager, testified unequivocally that he did not have access to financial data. Spivack Aff. Ex. 1, at 67, 160, 201.

13

Sigma could have been the inside source. Moreover, if Freeman believed that one of the Nguyens listed on Sigma's website was the source, then, by plaintiff's own account, he was wrong. Plaintiff argues that the source was Phuong Vu, who worked not "in finance" but in the engineering department. Accordingly, the above-quoted testimony cannot support the inference that Freeman knew or should have known that the Sigma source was Nguyen's relative.[6]

Accordingly, the Court finds that there is no genuine issue of material fact as to Freeman's (and by extension, any of the Sonar Defendants') knowledge that the allegedly material nonpublic information was disclosed in exchange for any benefit.

As discussed above, proceedings against the Investor Defendants have not yet begun and therefore the Investor Defendants did not have occasion to join in the Sonar Defendants' summary judgment motion. However, plaintiff's claims against the Investor Defendants are predicated entirely on his claims against the Sonar Defendants. Specifically, plaintiff asserts two causes of action: fraudulent transfer in violation

---

[6] Because there is insufficient evidence to infer that Freeman knew the original tipper and tippee were relatives, the Court does not address the question of whether, under Newman, that knowledge, standing alone, would support an inference that Freeman knew that the tipper received some benefit. Compare Newman, 773 F.3d at 452 with United States v. Salman, No. 14-10204, 2015 WL 4068903, at *6 (9th Cir. July 6, 2015).

14

of Sections 5 and 6 of Chapter 109A of the Massachusetts General Laws, and unjust enrichment under Massachusetts state law. Both of these causes of action require plaintiff to prove the Sonar Defendants' liability as an element of his claims against the Investor Defendants. Specifically, plaintiff's fraudulent transfer claim asserts that the transfers from the Sonar Funds to the Investor Defendants were fraudulent because they failed to account for the Sonar Defendants' liabilities to plaintiff and the putative class. TAC ¶¶ 182-91. Plaintiff's unjust enrichment claim asserts that the Investor Defendants received unlawful profits from insider trading. TAC ¶¶ 193-98. Because the Court has determined that plaintiff cannot prove the Sonar Defendants' liability for insider trading, his claims against the Investor Defendants must also fail.

For the foregoing reasons, the Court, by Order dated July 23, 2015, granted the Sonar Defendants' motion for summary judgment dismissing the Third Amended Complaint. In addition, because that ruling forecloses plaintiff's fraudulent transfer and unjust enrichment claims, the Court now dismisses plaintiff's claims against the Investor Defendants as well. Accordingly, the Clerk of the Court is directed to enter final judgment dismissing the Third Amended Complaint in its entirety, with prejudice, and to close the case.

SO ORDERED.

Dated:   New York, NY
         July 30, 2015

                                                  JED S. RAKOFF, U.S.D.J.

16